

*IN THE UNITED STATES DISTRICT COURT*
*FOR THE NORTHERN DISTRICT OF ILLINOIS*
*EASTERN DIVISION*

FILED
JUN 18 2008
Mar 18 2008
W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| **WILLIE BROWN**<br>601 Theodore Avenue<br>Joliet, Illinois 60435<br>(815) 740-1467<br><br>Plaintiff,<br><br>- vs -<br><br>**VILLAGE OF ROMEOVILLE**, sued in<br>its official capacity as a home rule municipal<br>corporation organizing and existing under the<br>Laws of the State of Illinois and located in<br>the County of Will,<br>**POLICE OFFICER ZAKULA**, Star # 374,<br>sued in his individual and personal capacy as<br>an agent, servant and/or employee of the<br>Village of Romeoville Police Department,<br>**POLICE OFFICER,** Star # 348, sued in his<br>individual and personal capacity as an agent,<br>servant, and/or employee of the Village of<br>Romeoville Police Department,<br>**K. SHOWERS**, sued in her individual and<br>personal capacity as an agent, servant and/or<br>employee of the Village of Romeoville,<br>10-30 Montrose Drive<br>Romeoville, Illinois 60446<br><br>Defendants. | 08cv1577<br>JUDGE HOLDERMAN<br>MAG. JUDGE ASHMAN<br><br><br>**JURY TRIAL DEMANDED** |

## V E R I F I E D   C O M P L A I N T

The Plaintiff **WILLIE BROWN** ("Brown") by and through himself, Willie Brown

and complaining of defendants Village of Romeoville (the "Village"), and Village of

Romeoville Police Officer D. Zakula Jr. Star # 374 ("Zakula"), and Police Officer

Star # 348 (the "Officer"), and Village of Romeoville Records Supervisor, K. Showers

("Showers").

## P R E L I M I N A R Y    S T A T E M E N T

1.    This    action    is    brought    forth    pursuant    to    Title    42    U.S.C.    Section    1981,

Title    42    U.S.C.    Section    1983    and    Title    42    U.S.C.    Section    1985(3)    seeking    Actual,

Compensatory,    General    and    Punitive    judgment    damages    for    deprivation    of    rights    and

conspiracy    to    interfere    with    rights,    while    acting    "Under    Color    of"    state    law    as    Police

Officers    for    the    Village    of    Romeoville,    and    of    rights    guaranteed    under    the    4th,    8th,    and

14th    Amendments    of    the    Constitution    of    the    United    States,    as    well    as    rights    under

Article I    Section 20    of    the    Constitution of the State of Illinois,    and of rights under the

Freedom    of    Information    Act    of    the    State of Illinois,    Illinois Compiled Statutes Ch.    5,

Act 140.    Plaintiff    Brown    contend    that the stop, questioning    of him,    physical search of

him    and    the    seizure    of    him,    along    with    the    seizure    and towing of his vehicle, and the

deprivation    of being    afforded    an    equal    opportunity    to    make    a    contract    to    acquire

information    requested    pursuant    to    the    Freedom    of    Information    Act,    were committed

without    probable    cause    or    other lawful justification,    and    represented overt acts performed

pursuant    to    and    in    the    furtherance of a scheme to use the two individual defendant police

officers    to    abuse    the    proper use    of the State of Illinois Judicial System    to    intimidate,

oppress    and    interfere    with    Plaintiff    Brown's    citizenship    rights    because    of    his

socio-economic    class    status    and because of his racial nationality,    African American, and

Plaintiff    Brown    honestly    and    in    good    faith    believe    that    he    is    entitled    to    federal    court

remedial action.

## II.    J U R I S D I C T I O N

2.    This    action    is    brought    pursuant    to    Title 42 U.S.C. Section 1981(a), and    Title 42

U.S.C.    Section    1983,    Title    42    U.S.C.    Section    1985(3)    and    the    First,    Fourth,    Eighth

2.

Section 20 of the Constitution of the State of Illinois. Jurisdiction is founded upon Title 28 U.S.C. Section 1331 and 1341(3) and (4) and 1343, and the aforementioned constitutional and statutory provisions.

### III.   V E N U E

3.    Venue is proper in this district pursuant to Title 28 U.S.C. Section 1391(b) because this is a civil action that is not founded solely on diversity of citizenship, and this district is where a substantial part of the events giving rise to this claim accrued, as well as is the district where the individual defendant police officers and the individual defendant records supervisor whom are the subjects of this action reside and are employed.

### IV.   P A R T I E S

4.    The Plaintiff, **WILLIE BROWN,** (sometimes hereinafter referred to as Plaintiff "Brown" at all relevant times mentioned hereinafter) is a 53 year old African American citizen of the United States, and a life long resident of the State of Illinois whose current address is 601 Theodore Avenue in the City of Joliet. Plaintiff Brown is the owner of the unlawfully impounded and towed 1991 Civic Wagon vehicle. Also, since June 2007, Plainitff Brown has been on prescription medication for medical treatment of a buldging disc injury in his back affecting his nerves which cause numbness and pain in his right leg if allowed to be placed and left in a cramped position for an extended amount of time, and Plaintiff Brown walks with the aid of a cane.

5.    The Defendant, **VILLAGE OF ROMEOVILLE,** (sometimes hereinafter referred to as defendant "Village" at all relevant times mentioned hereinafter) is a home rule municipal corporation organized and existing under the Laws of the

State of Illinois. Defendant Village is the employer of the individual defendant police officers, and, as such, is totally liable for the conduct of the individual defendant police officers, and is totally liable for the conduct of the defendant records supervisor. Defendant Village is being sued in its offical capacity as a home rule municipal corporation.

6.    The defendant, **D. ZAKULA JR.** (sometimes hereinafter referred to as defendant "Zakula" Star # 374, at all relevant times mentioned hereinafter) is a duly appointed and sworn police officer of the Village of Romeoville. On the 30th day of October, 2007 when engaging in conduct complained of, did so while acting in excess of the course and scope of his employment as an agent, servant and/or employee of defendant Village of Romeoville. Defendant Zakula is being sued in his individual and personal capacity as an agent, servant and/or employee of defendant **VILLAGE OF ROMEOVILLE.**

7.    The Defendant, **POLICE OFFICER** Star # 348, (sometimes hereinafter referred to as defendant "Officer, Star # 348" at all relevant times mentioned hereinafter) is a duly appointed and sworn police officer of the Village of Romeoville. On the 30th day of October, 2007, when engaging in conduct complained of, did so while acting in excess of the course and scope of his employment as an agent, servant and/or employee of defendant Village of Romeoville. Defendant Officer Star # 348 is being sued in his individual and personal capacity as an agent, servant, and/or employee of defendant **VILLAGE OF ROMEOVILLE.**

8.    The Defendant, **K. SHOWERS** (sometimes hereinafter referred to as defendant "Showers" at all relevant times mentioned hereinafter) is the duly appointed and sworn

4.

Records Supervisor of the Village of Romeoville. When engaging in conduct complained of, did so while acting in excess of the course and scope of her employment as an agent, servant and/or employee of defendant Village of Romeoville. Defendant Showers is being sued in her individual and personal capacity as an agent, servant and/or employee of defendant **VILLAGE OF ROMEOVILLE.**

9.    At all times material to this Verified Complaint, the individual defendant police officers and the defendant records supervisor were acting "Under the Color of" the statutes, ordinances, regulations, customs and usage of the State of Illinois, Village of Romeoville and the Village of Romeoville Police Department and Records Department.

## V.    FACTS COMMON TO ALL COUNTS

10.    I, **WILLIE BROWN**, being duly sworn and upon oath if called upon could competently testify to the following facts from my own personal knowledge.

11.    That on or about the 30th day of October, 2007, Plaintiff Brown was driving his 1991 Civic Wagon vehicle traveling eastbound on Airport Road in the Village of Romeoville.

12.    A white automobile was traveling in the same eastbound direction about 2 to 3 car lengths ahead of Plaintiff Brown.

13.    That on three (3) separate occasions, the white automobile came to an abrupt stop, as to indicate some change in direction other than the eastbound direction the white vehicle had been traveling.

14.    Plaintiff Brown attempted a left passing move around the white vehicle, and as he attempted to pass the white vehicle, the driver, a seemly Caucasain-American female, glanced over at him while acellerating the speed of the white vehicle as so to interfere with Plaintiff Brown's attempt to safely manuver around

the white vehicle.

15.    After the driver of the white vehicle's third abrupt stopping and acelleration. Plaintiff Brown managed to safely manuver to get around in front of the white vehicle, and as Plaintiff Brown was passing the white vehicle, the driver began exhibiting abrasive facial and middlefinger jestures and loudly shouted racial epithets - i.e., "Fucking Nigger, Fucking Nigger" - toward Plaintiff Brown.

16.    That at the stop light at the intersection of Airport Road & Weber Road, while Plaintiff Brown was talking with his wife over his cell telephone, he observed through his vehicle's rear view mirror, the approaching of two of defendant Village's Police Department patrol squad cars with their emergency lights flashing.

17.    That after Plaintiff Brown manuvered over to allow defendant Villages's Police Department patrol squad cars to pass. The two squad cars pulled up behind Plaintiff Brown's vehicle.

18.    That after the two individual defendant police officers emerged from their squad cars they approached Plaintiff Brown's vehicle. After which Plaintiff Brown rolled down his vehicle's window and raised his hands in the air while informing the two individual defendant police officers that his wallet was under his seat and further suggested to the individual defendant police officers that they should refrain from getting excited.

19.    The individual defendant police officers informed Plaintiff Brown that the driver of the white vehicle had called in a complaint against Plaintiff Brown.

20.    After Plaintiff Brown tendered over his valid drivers license, car registration, and current automobile insurance card. The two (2) individual

6.

defendant police officers asked Plaintiff Brown what had occurred between him and the driver of the white vehicle.

21.    That after Plaintiff Brown explained what had occurred between him and the driver of the white vehicle. The two individual defendant police officers informed Plainitff Brown that the driver of the white vehicle had called in a complaint against Plaintiff Brown. After which the two individual defendant police officers informed Plaintiff Brown that they were placing him under arrest for committing the offense of "Disorderly Conduct."

22.    That without first asking to acquire Plaintiff Brown's permission to search his vehicle. The two individual defendant police officers conducted an interior search of Plainitff Brown's vehicle, after which Plainitff Brown was informed that his vehicle was going to be impounded and towed.

23.    That after Plaintiff Brown asked the two individual defendant police officers if he could call his wife to come and pick up his vehicle to prevent it from being impounded and towed. Defendant Zakula refused Plainitff Brown's request and stated that defendant Village has a policy authorizing the impounding and towing of Plaintiff Brown's vehicle under the conditions and circumstances of his arrest.

24.    That defendant Village does not have any such written policy authorizing the impounding and towing of an individual's vehicle under the particular set of conditions and circumstances underlining Plaintiff Brown's arrest and detention (A true and accurate copy of defendant Village's policy authorizing the impounding and towing of vehicles is attached hereto and made part of this complaint, labeled "Exhibit 1").

25.    While being transported to defendant Village's Police Station. Plaintiff

7.

Brown inquired about what the driver of the white vehicle had to say to the two individual defendant police officers to warrant his arrest. Defendant Zakula turned up the volume of his radio to drown out listening to what Plaintiff Brown was asking, and defendant Zakula did not respond to Plaintiff Brown's question.

26.    While Plaintiff Brown was being transported to defendant Village's Police Station, his right leg became very numb and very painful from being placed and left in a cramped position.

27.    As Plaintiff Brown was moving around in an effort to gain some comfort and relief from the emerging numbness and pain in his leg. Defendant Zakula finally turned down the volume on his radio, and asked Plaintiff Brown whether he had any other handcuff keys other than the set of keys seized from him by the other individual defendant police officer.

28.    Upon arrival at defendant Village's Police Station. The numbness and pain in Plaintiff Brown's leg and back, from sitting in a cramped position, had became so severe that defendant Zakula had to physically assist Plaintiff Brown with getting out of the back seat of defendant Zakula's patrol squad car.

29.    During the period of time Plaintiff Brown was sitting in defendant Village's Police Department. Defendant Zakula and another one of defendant Village's Police Department Patrol Officers, while laughing, began comparing their individual effort to make their monthly quotas for issuing citations and making arrests.

30.    After subjecting Plaintiff Brown to the booking procedures, he was coerced into paying a $100.00 cash bond as oppose to being afforded a personal recognizance bond. The preliminary hearing date of December 10, 2007 was set,

8.

Case No. 07 OV 8956. (A true and accurate copy of the $100.00 cash bond is attached hereto and made part of this verified complaint, labeled "Exhibit 2").

31.    While at defendant Village's Police Department. Plaintiff Brown was coerced into paying $300.00 as an Administrative Towing Fee, and he immediately asked for an adminstrative hearing to contest the unwarranted and unlawful impounding and towing of his vehicle. (A true and accurate copy of the Romeoville Police Department Tow Report, as well as a copy of Village of Romeoville Police Department Vehicle Post Tow/Impoundment Notice, and a copy of the Village of Romeoville Police Department Post Tow Hearing notice of November 21, 2007 are attached hereto and made part of this verified complaint, labeled "Exhibit 3").

32.    Upon Plaintiff Brown's arrival at the requested administrative hearing, and without first requesting permission to conduct a search of Plaintiff Brown's person. One of defendant Village's Police Department Lt. imposed a full body search upon Plaintiff Brown's person.

33.    As oppose to being afforded the right to have an impartial party from defendant Village Manager's office to conduct the administrative hearing. One of defendant Village's Police Department's Lt. conducted the adminstrative hearing.

34.    After Plaintiff Brown explained the nature of the transaction which occurred between himself and the driver of the white vehicle. The Lt. claimed that the two individual defendant police officers had acted properly and that Plaintiff Brown would not be reimbursed with his $300.00 paid out to cover the administrative tow fee.

35.    Neither before, nor during, nor immediately after the circuit court's preliminary hearing of December 10, 2007, was Plaintiff Brown afforded a personal copy

9.

of Case No. 07 OV 8956 complaint against him. January 14, 2008 was set as the scheduled trial date.

36.    That prior to the preliminary hearing of December 10, 2007. Plaintiff Brown submitted two (2) written Freedom of Information Act Request to defendant Village, seeking to acquire a copy of the Police Incident Report and a copy of the Complaint against him, as a means to become knowledgable of the bases for the charge which he was being called upon to defend himself against. Plaintiff Brown equally indicated that he was willing to pay defendant Village's schedule of fees to acquire copies of the requested information.

37.    After Plaintiff Brown verbally informed defendant Showers, that he was proceeding *pro se*, and that he was entitled to access the requested information in order to prepare his defense against the charge. Defendant Showers deprived affording Plaintiff Brown with a right to make a contract to obtain FOIA requested information, as accorded to Cauacsian American citizens (A true and accurate copy of defendant Showers' denial notice is attached hereto and made part of this verified complaint, labeled "Exhibit 4").

38.    Prior to the January 14, 2008 scheduled trial date. Plaintiff Brown submitted a Request For Production Of Document requesting the audio & video recordings from the two individual defendant police officers' squad cars, as well as requested the video tape recordings from defendant Village's Police Department area, and requested a copy of the Police Incident Report and Complaint against him concerning the occurrence of October 30, 2007.

39.    That on or about the 8th day of January, 2008, six (6) days prior to the

10.

January 14, 2008 scheduled trial date. Defendant Village's attorney Lawerence M. Kaschak mailed Plaintiff Brown a copy of defendant Village's Police Incident Report, Arrest Report, Complaint and Bail Bond against Plaintiff Brown in reference to the occurrence of October 30, 2007. (A true and accurate copy of the documents mailed out by defendant Village's attorney, Lawrence M. Kaschak are attached hereto and made part of this verified complaint, labeled "Exhibit 5").

40.     During the scheduled trial of January 14, 2008. Neither did either one of the two individual defendant police officers appear, nor did the alleged victims, Mary R. Sanders & Amy M. Bova appear. Nor did defendant Village's attorney Lawrence M. Kaschak afford the court with any justifiable reasons for the two individual defendant police officers and the alleged victims' failure to appear. Nor did defendant Village's attorney Lawrence M. Kaschak tender the requested audio/video tape recordings in reference to the occurrence of October 30, 2007, over to Plaintiff Brown.

41.     While standing before Associate Judge Raymond Nash. Defendant Village's attorney Lawrence M. Kaschak informed the court that the charges against Plaintiff Brown concerning the occurences of October 30, 2007, were being voluntarily dismissed.

42.     On or about the 24th day of January, 2008. Plaintiff Brown received a $100.00 check from defendant Village as a reimbursement of the cash bond posted on October 30, 2007.

43.     That as of the date of the filing of this verified complaint. Plaintiff Brown has not received a $400.00 check from defendant Village as a reimbursement of the administrative towing fee paid out on October 30, 2007.

44.   The attempted prosecution of the offense of Disorderly Conduct has been wholly terminated and determined in favor of Plaintiff Brown indicative of his innocence. Plaintiff Brown, by means of being falsely accused, falsely arrested, unwarrantly searched, having his vehicle unlawfully impounded and towed, having his physical injury severely aggravated, deprived of information entitled to under FOIA, and being subjected to having prosecution proceedings commenced against him, suffered loss of his individual freedom, and suffered loss of possession of his personal property, and suffered great agitation and pain of body and mind.

45.   At the time the two individual defendant police officers stopped, questioned, searched and arrested Plaintiff Brown, they did not have any probable cause or other lawful justification to stop, question, search and arrest Plaintiff Brown.

46.   At the time the two individual defendant police officers caused Plaintiff Brown's vehicle to be unlawfully impounded and towed, they did not have probable cause or other lawful justification to cause the impounding and towing of Plaintiff Brown's vehicle, and they did not have probable cause or other lawful justification to impose a $100.00 cash bond upon Plaintiff Brown to re-secure his personal liberty and freedom for unwarranted detainment, and they did not have probable cause or other lawful justification to impose a $300.00 administrative towing fee upon Plaintiff Brown to re-gain personal possession of his vehicle.

47.   Moreover, prior to the arrest of Plaintiff Brown and the impounding and towing of his vehicle. The two individual defendant police officers knew or reasonable should have known that they did not have any reasonable basis

/2.

either to stop, or to question, or to arrest Plaintiff Brown, or to cause the impounding and towing of Plaintiff Brown's vehicle.

48.    Moreover, the two individual defendant police officers knew or reasonable should have known that they did not have any probable cause or other lawful justification to cause the commencing of prosecution proceedings against Plaintiff Brown for allegedly committing the offense of Disorderly Conduct.

49.    Plaintiff Brown, did not at any time on October 30, 2007 engage in any form of anti-social behavior which would have given the two individual defendant police officers a reason either to stop, or to question, or to arrest Plaintiff Brown, or would have given them a reason to cause the unlawful impounding and towing of Plaintiff Brown's vehicle, or would have given them a reason to cause the commencing of prosecution proceedings against Plaintiff Brown for allegely committing the offense of Disorderly Conduct.

50.    The conduct of the two individual defendant police officers, as above described, was so arbitrary that it shocks the conscience and violates the decencies of civilized conduct and was done intentionally, maliciously, willfully and wantonly and/or with reckless disregard and gross negligence toward respecting and honoring Plaintiff Brown's citizenship rights under the First, Fourth, Eighth and Fourteenth Amendments of the Constitution of the United States, and Title 42 U.S.C. Section 1983, and Article I Section 20 of the Constitution of the State of Illinois. The two individual defendant police officers' unlawful conduct of October 30, 2007 was also unreasonable under the First, Fourth, Eighth, and Fourteeth Amendments of the Constitution of the United States, and was also unreasonable under Article I Section 20 of the Constitution of the State of Illinois.

*13.*

51.    As a direct and proximate result of the above actions of the two individual defendant police officers. Plaintiff Brown was damaged, including the loss of his personal freedom, loss of his vehicle, loss of his $400.00, suffered painful agitation to his pre-existing physical injury, was subjected to arbitrary and capricious prosecution proceedings, and suffered loss of financial resources used to prepare for trial, and his public reputation and character was wrongfully criminalized within the rightthinking mind of Will County Associate Judge Raymond Nash.

52.    As a direct and proximate result of the scheme between the two individual defendant police officers. Plaintiff Brown was deprived of the full and equal benefits of his citizenship rights guaranteed under the First, Fourth, Eighth, and Fourteenth Amendments of the Constitution of the United States and rights guaranteed under Article I Section 20 of the Constitution of the State of Illinois.

53.    As a direct and proximate result of defendant Showers' refusal to honor Plaintiff Brown's requests under Illinois Compiled Statutes Ch. 5, Act 140. Plaintiff Brown was deprived of his right to make contract as accorded to white citizens guaranteed under Title 42 U.S.C. Section 1981(a).

54.    Defendant Village's adopted "policy and practice" of condoning constitutional abuse on the part of its duly sworn police officers, as described above, shows gross negligence and/or reckless disregard toward honoring and respecting the federal and state citizenship rights of racial minority citizens in general and Plaintiff Brown, in particular. Defendant Village's adopted "policy and practice" is also unreasonable under the First, Fourth, Eighth, and Fourteenth Amendments of the Constitution of

14.

the United States, and is also unreasonable under Article I  Section 20 of the Constitution of the State of Illinois.

55.    Plaintiff  Brown  declares  under  penalty  of  perjury  under  the  Laws  of  the United  States, and under the Laws of the State of Illinois that the foregoing facts are true and correct.

56.    Plantiff  Brown  further  declares  under  penalty  of  perjury  that the attached documents  cited  as  exhibits  are  genuine copies of the official public records which they purport to be.

## C O U N T    I

### *Section 1983 Monell Claim Against Defendant Village of Romeoville For Failure To Properly Train, Supervise,  Control And Discipline The Individual Defendant Police Officers And Record Supervisor*

1 - 56 .    Plaintiff  Brown  repeats  and  realleges  paragraphs  1 - 56  of his verified complaint  as  though  fully  set  forth  as  paragraphs  1 - 56  and made paragraph 57 of Count I of his verified complaint.

58.    The  Constitutional  violations  detailed  above  were  only  possible  for  the individual  defendant  police  officers  and record supervisor to commit because of the customs, policies, and practices of the Village of Romeoville, whereby the VILLAGE, acting through the Village of  Romeoville Police Department, and Records Department failed  utterly  to  properly  train,  supervise,  control  and  discipline  the  individual defendant police officers and the defendant records supervisor.

59.    These  failure  include  (1)  failure  to  take  any  steps to discipline, supervise or control  the  individual defendant police officers, and record supervisor, thus maintaining an  atmosphere  and  climate  where  constitutional  violations  are  not  punished  or prosecuted, encouraging police officers and the record supervisor to  violate  rather than

*15*

respect the constitutional rights of citizens, particularly Plaintiff Brown; (2) failure to track, notice, act upon, or correct patterns of constitutional abuse by police officers with multiple complaints lodged against them, and failure to track, notice, act upon or correct patterns of abuse of judicial proceedings by police officers whose arrestees received a nolle prosequi or acquittal from the charged criminal and/or local ordinance violation offenses, thus encouraging a climate of constitutional abuse; and (3) failuire to instruct its police officers in what type of conduct constitutes infringement upon a citizens rights guaranteed under the 1st, 4th, 8th & 14th Amendments of the Constitution of the United States and rights guaranteed under Article I Section 20 of the Constitution of the State of Illinois, and failure to properly instruct it police officers in what constitutes conspiracy to interfere with rights, racial discrimination, defamation of character, abuse of process, intimidation, oppression, and malicious prosecution, and, as such, is tantamount to a violation of Title 42 U.S.C. Section 1983 (A true and accurate copy of the Times Weekly's Investigative Reporting News articles citing the examples and patterns of constitutional abuse by Village of Romeoville Police Officers condoned by defendant Village of Romeoville is attached hereto and made part of this Verified Complaint, labeled "Exhibit 6").

60.     In the alternative, said conduct on the part of defendant Village was, at all time relevant hereto, consistent with, and in accordance with the directives of its Chief of Police who is vested with final policy-making and decision-making authority, and as such, is tantamount to a violation of Title 42 U.S.C. Section 1983.

61.     Moreover, said conduct on the part of the individual defendant police officers was pursuant to the decision and conduct of defendant Village of Romeoville which

/6.

having had actual or constructive knowledge that defendant Village's own constitutional injuries upon citizens like Plaintiff Brown created the atmosphere for defendant Village's duly appointed and sworn police officers to engage in conduct that posed pervasive and unreasonable risk of constitutional injury to citizens like Plaintiff Brown. Defendant Village of Romeoville response to that knowledge was so inadequate as to show a tacit authorization of the alleged offensive practices, and, as such, is tantamount to a violation of Title 42 U.S.C. Section 1983.

62.    As a direct and proximate result of the constitutional abuses and discriminatory treatment, Plaintiff Brown was injured, including having his vehicle unlawfully impounded and towed, was falsely arrested, detained and was falsely charged with committing a local ordinance violation which never occurred, and suffered aggravated pain to his pre-existing physical injury, and was wrongfully subjected to prosecution proceedings being commenced against him, and was deprive of his right to be afforded a copy of the Complaint against him during the Circuit Court's preliminary hearing of December 10, 2007, and was deprived of his right to be afforded an equal opportunity to make contract to acquire requested information pursuant to the State of Illinois Freedom of Information Act, all to his damage.

**WHEREFORE,** Plaintiff Brown respectfully request this Honorable Court to adjudge and decree that defendant Village of Romeoville has engaged in the conduct alleged herein, in violation of Title 42 U.S.C. 1983, order a formal apology by the individual defendant police officers to Plaintiff Brown, and order defendant Village to suspend the individual defendant police officers from duty for two (2) weeks without pay, and order defendant Village to restrict the two individual defendant

17.

police officers to desk duty for two (2) years upon return to duty from suspension, and order defendant Village to direct the individual defendant police officers to perform 140 public service work hours while on suspension from duty, and order defendant Village to arrange additional individual training for the individual defendant police officers in a two (2) year interpersonal-intercultural communications, social psychology, behavior modification, constitutional law, and civil rights law academic retraining courses at the individual defendant police officers' personal expense to be completed before being allowed to return to patrol duty, plus award Plaintiff Brown **TWO HUNDRED THOUSAND DOLLARS** ($200,000.00) in compensatory and general damages incurred as a result of defendant defendant Village's condoning the individual defendant police officers' interference with and deprivation of Brown's rights guaranteed under the First, Fourth, Eighth, and Fourteenth Amendments of the Constitution of the United States, and of his rights guaranteed under Article 1 Section 20 of the Constitution of the State of Illinois.

## COUNT   II

### *Section 1983 and Fourth Amendment Search & Seizure Violation*

### (THE TWO INDIVIDUAL DEFENDANT POLICE  OFFICERS)

1- 7, 9 -35, 40 - 52 & 54 - 56.  Plaintiff Brown repeats and realleges paragraphs 1 - 7, 9 - 35, 40 - 52 & 54 - 56 as though fully set forth as paragraphs 1 - 7, 9 - 35, 40 - 52 & 54 - 56 of his verified complaint and made paragraph 63 of Count II of his verified complaint.

64.    The stop, questioning, arrest, search and detention of  Plaintiff Brown's person, by the two (2) individual defendant police officers, described above was

*18.*

in violation of Title 42 U.S.C. Section 1983 et seq., and Plaintiff Brown's right to be free of unreasonable searches and deprivation of liberty under the Fourth Amendment of the Constitution of the United States, in that there was no probable cause or lawful justification for the two (2) individual defendant police officers either to stop, or to question, or to search, or to arrest and detain Plaintiff Brown.

65.    The search, impounding and towing of Plaintiff Brown's vehicle described above was in violation of Plaintiff Brown's citizenship right to have his personal property to be free of unreasonable search and seizure under the 4th Amendment of the Constitution of the United States, in that there was no probable cause or other lawful justification for the search, impounding and towing of Plaintiff Brown's vehicle, and, as such, is tantamount to a violation of Title 42 U.S.C. Section 1983 et seq.

66.    As a direct and proximate result of the foregoing, Plaintiff Brown, as well as his vehicle was unlawfully searched and seized, and Plaintiff was falsely accused of committing an offense which never occurred, and was involuntarily detained at defendant Village's Police Station, and suffered temporary loss of $100.00 paid in the form of a Cash Bond, and suffer the continue loss of $400.00 paid in the form of the Administrative Towing Fees, and suffered great physical pain from having his pre-existing physical injury severely agitated, and was greatly injured in his public reputation and character, and was deprived of his constitutional rights as described above, all to his damage.

    **WHEREFORE,** Plaintiff **WILLIE BROWN,** demands judgment against the individual defendant police officers, jointly and severally for compensatory and general damages in the sum **TWENTY FIVE THOUSAND DOLLARS**

($25,000.00), and further demands judgment against the individual defendant police officers, jointly and severally, for punitive damages in the amount of **SEVENTY FIVE THOUSAND DOLLARS** ($75,000.00), and reasonable rate of interest on his continued withheld $300.00 Administrative Towing Fee reimbursement payment, and the costs of this action, and such other and further relief as allowable for violation of Title 42 U.S.C. Section 1983.

## COUNT   III

### *Section 1983 and Eighth Amendment Excessive Bail Violation*

### (POLICE OFFICER D. ZAKULA JR. Star No 374)

1- 6, 9, 10, 30, 40 - 42, 46, 50, 52 & 54 - 56. Plaintiff Brown repeats and realleges paragraphs 1- 6, 9, 10, 30, 40 - 42, 46, 50, 52 & 54 - 56 of his verified complaint as though fully set forth as paragraphs 1 - 6, 9, 10, 30, 40 - 42, 46, 50, 52 & 54 - 56 of his verified complaint and made paragraph 67 of Count III of his verified complaint.

68.     By participating in the conspiracy as described above, defendant Zakula Star No. 374, sought to and did in fact impose a $100.00 excessive bail bond upon Plaintiff Brown in an attempt to punish him for expressing his personal opinion about that which seemed to be unlawful discrimination, and, as such, is tantamount to a violation of Title 42 U.S.C. Section 1983 et seq., and the Eighth Amendment of the Constitution of the United States.

69.     As a direct and proximate result of these statutory and constitutional violations, Plaintiff Brown was damaged, including the temporary loss of his $100.00 excessive bail bond paid out to reacquire his personal liberty and freedom from being involuntarily detained at defendant Village's Police

Department.

**WHEREFORE,** the Plaintiff,**WILLIE BROWN,** demands judgment against

defendant D. Zakula Jr. Star No. 374, individually, for **THREE THOUSAND**

**DOLLARS** ($3,000.00) for punitive damages because defendant D.Zakula Jr.

Star No. 374 conduct was intentional, malicious, wilful and wanton and/or showed

a reckless disregard  toward  honoring and respecting Plaintiff Brown's citizenship

rights  guaranteed  under  the  Eighth Amendment of the Constitution of the United

States,  and the costs of this action, and such other and further relief as allowed for

violation of Title 42 U.S.C. Section 1983.

## C O U N T   IV

### *Section  1985(3) Conspiracy To Intimidate And Oppress  And Fourteenth Amendment Equal Protection Of The Laws Claim*

#### (THE TWO INDIVIDUAL DEFENDANT POLICE OFFICERS)

1- 7, 9 - 25, 40, 44, 45, 48 - 52, 55 & 56.  Plaintiff  Brown  repeats  and  realleges

paragraphs 1 - 7, 9 - 25, 40, 44, 45, 48 - 52, 55 & 56 of  his  verified complaint as

though fully set forth as paragraphs 1 - 7, 9 - 25, 40, 44, 48 -52, 55 & 56  and made

paragraph 70 of Count IV of  his verified complaint.

71.    As  detailed  above,  the  individual  defendant police officers conspired and

agreed  among  themselves  to  falsely arrest and commence arbitary and capicious

prosecution  proceedings  against Plaintiff Brown pursuant to and in the furtherance

of  Caucasian  American  citizen  Mary R.Sanders and Caucasian American citizen

Amy M. Bova's scheme to wrongfully subject Plaintiff Brown to  oppression and

intimidation and deprived him of the equal protection of  the laws guaranteed under

the  Fourteenth  Amendment  of the Constitution of theUnited States, and, as such,

21.

is tantamount to a violation of Title 42 U.S.C. Section 1985(3).

72.    In doing so, the individual defendant police officers were motivated by discriminatory-based racial animus.

73.    As detailed above, the two individual defendant police officers committed overt acts in furtherance of the conspirary and scheme.

74.    As a direct and proximate result thereof, Plaintiff Brown was severely injured, including the value of his lost liberty, suffered frustration and the loss of time to apply toward acquiring meaningful and gainful results from ideas relevant to improving his life chances and prospects, and was deprived of his citizenship rights to be free from arbitrary and capricious criminal prosecution proceedings guaranteed under the Fourteenth Amendment of the Constitution of the United States, and, as such, is tantamount to a violation of Title 42 U.S.C. Section 1985(3).

   *WHEREFORE,* the Plaintiff, **WILLIE BROWN** demands judgment against the two individual defendant police officers jointly and severally, for compensatory and general damages in the sum of **SIXTY THOUSAND DOLLARS** ($60,000.00), and further demand judgment against the two individual defendant police officers, jointly and severally, for punitive damages in the sum of **ONE HUNDRED AND EIGHTY THOUSANDDOLLARS** ($180,000.00), and the costs of this action, and such other and further relief as allowed for violation of Title 42 U.S.C. Section 1985(3).

## C O U N T   V

### *Section 1983 and Article I Section 20 Individual Dignity Claim*

### (DEFENDANT POLICE OFFICER D. ZAKULA JR. Star No. 374)

1- 6, 9, 10, 19, 21, 25, 29, 34, 39 - 42, 44, 48 - 51 & 54 - 56. Plaintiff Brown repeats

and realleges paragraphs 1 - 6, 9, 10, 19, 21, 25, 29, 34, 39 - 42, 44, 48 - 51 & 54 - 56 of his verified complaint as though fully set forth as paragraphs 1 - 6, 9, 10, 19, 21, 25, 29, 34, 39 - 42, 44, 48 - 51 & 54 - 56 and made paragraph 75 of Count V of his verified complaint.

76.   Said reason for the arrest of Plaintiff Brown, and the said reason for the arrest being used as the bases to commence prosecution proceedings against Plaintiff Brown for allegedly committing the local ordinance offense of Disorderly Conduct, deprived Plaintiff Brown of his rights to individual dignity guaranteed under Article I Section 20 of the Constitution of the State of Illinois, and, as such, is tantamount to a violation of Title 42 U.S.C. Section 1983, and Article I Section 20 of the Constitution of the State of Illinois.

77.   As a direct and proximate result of defendant police officer D. Zakula Jr. Star No. 374 written communication to the state court that protrayed criminality toward Plaintiff Brown's public reputation and character, Plaintiff Brown was injured, including being wrongfully subjected to prosecution proceedings, and the creditibility and respectability of his public reputation and character was wrongfully diminished within the estimation of the rightthinking mind of Will County Associate Judge Raymond Nash.

   **WHEREFORE,** the Plaintiff, **WILLIE BROWN** respectfuly request that this Honorable Court adjudge and decree that defendant police officer D. Zakula Jr. Star No. 374 engaged in the conduct complained of and direct defendant police officer D. Zakula Jr., to publicly apologize to Plaintiff Brown before Will County Associate Judge Raymond Nash and before defendant Village's attorney, with the

apology to be presented at the Courthouse located in the Village of Bolingbrook, and further demand that defendant police officer D. Zakula Jr. Star No. 374 pay the costs of this action, and order such other and further relief allowable for violation of Article I Section 20 of the Constitution of the State of Illinois.

## C O U N T   VI

### *Section 1983 - Abuse of Process Claim*

### (THE TWO INDIVIDUAL DEFENDANT POLICE OFFICERS)

1 - 7, 9 - 25, 29 - 31, 35, 38 - 52 & 54 - 56. Plaintiff Brown repeats and realleges paragraphs 1 - 7, 9 - 25, 29 - 31, 35, 38 - 52 & 54 - 56 of his verified complaint as though fully set forth as paragraphs 1 - 7, 9 - 25, 29 - 31, 35, 38 -52 & 54 - 56 and made paragraph 78 of Count VI of his verified complaint.

79.    By participating in the above-described conspiracy & scheme, the individual defendant police officers sought to, and did in fact, cause Disorderly Conduct prosecution proceedings to be commenced against Plaintiff Brown for the improper purpose to misuse the proper use of the Illinois Judiciary to intimidate and oppress Plaintiff Brown in the exercising of his right to life, liberty and the pursuit of happiness, and to commit perjury and other fraudulent acts in an attempt to procure the wrongful remanding of Plaintiff Brown to the custody of the Will County Sheriff's Office for involuntary confinement at the Will County Adult Detention Facility, for allegedly committing an offense which had never occurred, and, as such, is tantamount to a violation of Title 42 U.S.C. Section 1983 et seq.

80.    As a direct and proximate result of these constitutional and statutory violations, Plaintiff Brown was damaged, including the loss of his personal liberty and freedom, loss of his personal property, suffered mental anguish, and was

24.

subjected to arbitrary and capricious prosecution proceedings, all to his damage.

**WHEREFORE,** the Plaintiff **WILLIE BROWN,** demands judgment against defendant Village of Romeoville, as well as against the two individual defendant police officers, jontly and severally, for actual, general, and compensatory damages in the sum of **NINETY THOUSAND DOLLARS** ($90,000.00), and further demand judgment against the two individual defendant police offficers, jointly and severally, for punitive damages in a sum of **SIXTY THOUSAND DOLLARS** ($60,000.00), plus the costs of this action, and for such other further relief as allowable for violation of Title 42 U.S.C. Section 1983.

## C O U N T   VII

### *Section 1981(a) Discrimination Claim*

### (DEFENDANT K. SHOWERS)

1 - 5, 8, 10, 36, 37, 53, 55 & 56. Plaintiff Brown repeats and realleges paragraphs 1 - 5, 8, 10, 36, 37, 53, 55 & 56 of his verifed complaint as though fully set forth as paragraphs 1 -5, 8, 10, 36, 37, 53, 55 & 56, and made paragraph 81 of Count VII of his verified complaint.

82.    At all times relevant hereto, the careless and diiscriminatory conduct of defendant Showers, some of which is described above, raises a plausible inference that defendant Showers acted in accordance with and was motivated by racial animus toward Plaintiff Brown when she failed to afford him with the right to make a contract under the Illinois Freedom of Information Act to acquire requested and available public information, as accorded to "white citizens".

83.    That when defendant Showers deprived Plaintiff Brown of his rights under the

Illinois Freedom of Information Act to entered into a contract with defendant Village to acquire requested available public information, shewas acting in access of her individual and personal capacity as an agent, servant and/or employee of defendant Village of Romeoville. Therefore, defendant Village of Romeoville is fully liable for the actions/or omissions of defendant Showers when she deprived Plaintiff Brown of his right to enter into a contract with defendant Village of Romeoville to acquire requested avilable public information under the State of Illinois Freedom of Informantion Act.

84. As a direct and proximate result of defendant Showers race based discriminatory conduct. Plaintiff Brown was deprived of his rights guaranteed under Title 42 U.S.C. Section 1981(a).

*WHEREFORE,* the Plaintiff, **WILLIE BROWN**, demands judgment against defendant Village of Romeoville and defendant Showers, jointly and severally, for General damages in the amount of **ONE THOUSAND DOLLARS** ($1,000.00) plus the cost of this action, and for such other and further relief allowable for violation of Title 42 U.S.C. Section 1981(a).

## JURY DEMAND

. Plaintiff Brown hereby demand a trial before a petit jury on all triable issues in this Verified Complaint.

## RESERVATIONS OF RIGHTS

. Plaintiff Brown's investigation is ongoing, Brown reserves the right to amend this verified complaint to include additional claims and include additional defendants should his jnvestigation so merit.

26.

FURTHER AFFIANT SAITH NOT.

*Respectfully submitted*

By _____

WILLIE BROWN

**Plaintiff in *Pro se***

SUBSCRIBED and SWORN to before me
this _18_ th day of _March_, 20_08_

_____
Notary Public

OFFICIAL SEAL
MARIA E MARTINEZ
COMMISSION EXPIRES 02/20/11

Willie Brown
601 Theodore Avenue
Joliet, Illinois 60435
(815) 740-1467

27.

# EXHIBIT
# 1

ROMEOVILLE POLICE DEPARTMENT

| SUBJECT:<br><br>TOWING AND IMPOUNDMENT OF VEHICLES | AMENDS:<br>07/19/94<br>G.O. 4-605 | RESCINDS: | SECTION CODE: |
|---|---|---|---|
| | | | DISTRIBUTION:<br>ALL PERSONNEL |

I.   PURPOSE:  To provide direction related to towing, seizure and/or impoundment of vehicles.

II.   POLICY:

A.   The Romeoville Police Department, in cooperation with the policy of the Village of Romeoville, finds that abandoned vehicles:

   1.   Constitute a safety hazard and a public nuisance.

   2.   Are detrimental to the health, safety and welfare of the general public by harboring disease, providing breeding places for vermin, inviting plundering, creating fire hazards, and presenting physical dangers to children and others.

   3.   Produce scenic blights which degrade the environment and adversely affect land values and the proper maintenance and continuing development of the Village of Romeoville.

   4.   Require the Village of Romeoville's attention in order to assure the expeditious removal and recycling of these abandoned vehicles.

B.   Officers are encouraged to provide assistance to motorists when the need arises for towing services, and institute enforcement action when they observe illegally parked vehicles, traffic obstructions and abandoned vehicles. The towing of vehicles from village streets, or streets, roadways, or highways within our jurisdiction, is done in accordance with applicable state statutes (Chapter 625, Section 5/4-203, "Removal of Motor Vehicles or Other Vehicles – Towing or Hauling Away") and Village Ordinances.

C.   Motor vehicles operated with the permission, express or implied, of the owner of record, that is used in connection with violations enumerated in Chapter 81.251 of the Code of Ordinances, shall be subject to seizure and impoundment, and the owner of record of said vehicle shall be liable to the Village for a $500 **administrative** fee, in addition to any towing and storage fees. Authorized towing agencies must sign a contract with the Village of Romeoville and must meet all requirements set forth in Chapter 81 of the Romeoville Code of Ordinances.

By Order of _Andrew J Barto_
ANDREW J. BARTO
CHIEF OF POLICE

## DEFINITIONS:

Abandoned Vehicle: A vehicle in disrepair, rendering the vehicle incapable of being driven in its condition; or any vehicle that has not been moved or used for seven (7) consecutive days or more and is apparently deserted (Illinois Vehicle Code 5/1-101.05; see also Village Code Chapter 81.01). Abandoned vehicles are entitled to pre-tow notice and hearing.

Administrative Fee: A $500.00 fee charged to the owner of a vehicle which is used in the connection with the commission of specified offenses set forth in Appendix A of this policy.

Impoundment: The practice of towing and thereafter restricting the release of a motor vehicle used in connection with the commission of specified offenses set forth in Appendix A of this policy, until an administrative fee is paid to the Village, or a hearing determines that the vehicle in question should not have been impounded.

Inventory: An inventory of property inside the impounded or towed vehicle prior to the towing of the vehicle. An inventory conducted of the entire car and its contents and all compartments to protect the owner's property and to protect the police from claims of loss, stolen or vandalized property, and to guard the police from danger.

Pre-Tow Notice: Placement of a 72-hour tow notice sticker on the vehicle notifying interested persons of the earliest date on which the vehicle can be towed, which date must be 72 hours from the placement of the sticker (Village Code Chapter 81.23)

Pre-Tow Hearing: A hearing held within fifteen (15) days of placing the pre-tow 72-hour tow notice on a vehicle. Request for pre-tow hearing must be made within the 72-hour pre-tow time frame, if such request is not made, any hearing rights under the provisions of 81.24 of the Romeoville Code of Ordinances will be deemed waived and the vehicle may be towed.

Post-Tow Notice: Notice shall consist of a mailed or personally delivered notification of the tow to the last registered owner of the vehicle, sent within 2 days of the determination of the identity of such owner. If a post tow hearing is to be held, it must be requested in person or by mail within 15 days of the date of the mailing of the notice of tow or before the vehicle is released, whichever occurs first.

Post-Tow Hearing: A hearing held at the request of the owner receiving a notice regarding the towing of their vehicle. The hearing will determine the validity of such tow and any towing storage and charges accrued.

Towing Agency: A firm engaged in the business of or offering the services of vehicle towing whereby motor vehicles are or may be towed or otherwise removed from one place to another by use of tow truck.

III.  PROCEDURE:  This policy creates a protocol by which police officers may impound, inventory and release vehicles coming into the custody of the Romeoville Police Department

A. MOTORIST ASSIST

1.  Anytime an officer encounters a motorist who requires the services of a tow company, the officer will:

   a.  Check with the motorist to ascertain if he has a preference for local tow company and request the telecommunications operator to make notification.

   b.  If the motorist has no preference, or the tow company cannot provide timely service, the officer will advise the motorist that the department has arrangements with local tow companies to provide services.   The officer will advise the telecommunications operator to contact the tow service assigned.

2.  While awaiting the arrival of the tow truck, the officer will provide protection for the disabled vehicle by either having a police unit, equipped with a push bar, push the vehicle to a safe location, or position his vehicle, with emergency lights activated, between the disabled vehicle, and approaching traffic.

3.  The officer will remain in such position until the tow truck arrives and the driver advises that the officer's presence is no longer required.  If the motorist has already made arrangements for a tow service, and the officer feels his presence is not necessary, he may place safety flares behind the disabled vehicle and resume patrol.  Telecommunications should be advised of the location and pending arrival of service for the disabled vehicle.

4.  The officer shall notify telecommunications upon the arrival of the tow truck so that its arrival may be logged in.

5.  If necessary, the officer will provide transportation for the motorist and passengers to a place of safety.

6.  Officers shall report to their immediate supervisor the name of any tow company who either renders poor service or is incapable of providing quality service because of inadequate equipment or personnel, the supervisor will then forward notice of this complaint to the Administrative Office.

7. All vehicles towed will be checked through L.E.A.D.S. and N.C.I.C. at the time of towing.

B. ABANDONED VEHICLE PROCEDURES

1. A police officer who observes a vehicle which is abandoned as defined in Section III, A, 2, (a) will:

   a. Initiate an offense report indicating the location of the abandoned vehicle, a full description of the vehicle, including any license information or municipal sticker number, and any owner information obtained.

   b. Attach a tow sticker to the vehicle indicating the location of the vehicle, date and time sticker applied, offense report number, vehicle description, license number, officer's number making tow notice, and applicable time limit indicated in hours.

   c. Vehicles abandoned or left unattended along a highway, not considered an immediate hazard, may be towed after placement of a 24 hour tow sticker, pursuant to provisions of 625 ILCS 5/4-203.

2. The offense report written of an abandoned vehicle will be routed to the records section. A copy will then be forwarded to the radio room where it will be logged in as to:

   a. Date of original report.

   b. Offense report number

   c. Location of reported abandoned vehicle.

   d. Plate or vehicle identification number of abandoned vehicle.

   e. Description of abandoned vehicle.

   f. The officer assigned by the day shift patrol supervisor to check on vehicle's status after the designated time limit.

   g. Results of follow-up inquiry such as: moved, gone, or towed (when confirmed either by dispatching the requested tow or upon receiving the returned copy of the abandoned vehicle report).

3. The police officer towing the reported abandoned vehicle will:

    a. Complete the "tow report" form, indicating the original offense report number and, if necessary, the motor vehicle number.

    b. Complete a supplemental report indicating the continued status of the abandoned vehicle, along with the date and time of this removal and which agency towed the vehicle.

    c. All vehicles towed will be checked through L.E.A.D.S. and N.C.I.C.    The officer shall document this check on the "tow report" form and within the supplemental report written.

4. The supplemental report, upon approval, with the tow report will be routed to the records section where, by certified mail, the "notice to last registered owner" will be sent to the last registered owner and a copy also sent to the known lien holder of the vehicle towed. Of this "notice" sent, it will advise the location and method of reclaiming the vehicle.

5. If all attempts to contact the owner fail, the vehicle will be disposed of according to the law, by completing the application for a "junk" title/certificate along with the submission of the "certificate of purchase transferring ownership of abandoned, lost, stolen or unclaimed vehicles" form.

C. Traffic hazards. Such situations include cases where the vehicle is illegally parked on a village street or traffic way so as to create an immediate traffic hazard and the driver is not present to remove the vehicle. Such vehicles are "hazardous" under Chapter 81 of the Village Code and may be towed with no pre-tow notice or hearing. Post tow notice and hearing must be provided in accordance with Chapter 81.

D. Unsafe vehicles. These situations could involve any vehicle operated with faulty or unsafe equipment where its continued operation will constitute an immediate safety hazard to others on the public streets and highways, the vehicle cannot be safely and legally left where found or stopped, and the owner cannot offer a reasonable alternative. Such vehicles are "hazardous" under Chapter 81 of the Village Code and may be towed with no pre-tow notice or hearing. Post tow notice and hearing must be provided in accordance with Chapter 81.

E. Illegally parked vehicles. This includes vehicles that are illegally parked and unattended on a village street, village parking lot, or village property, where the owner and/or driver fails or refuses to comply with the applicable laws and/or ordinances within 72 hours after the first parking citation was issued to the same vehicle for the same violation at the same location, or the vehicle was marked for towing. If the vehicle is not removed after 72 hours, place a 72 tow tag sticker on the vehicle to be removed from the street. Thereafter, post tow notice and hearing should be provided as for hazardous or unsafe vehicles. Note that illegally parked vehicles as described above should only

be subject to towing and/or impound where an ordinance has established the parking prohibition or regulation at issue, and where signage has been posted advising of such parking prohibition and the potential for vehicles in violation to be towed.

F. PROCEDURES FOR VEHICLE TOW AND INVENTORY

    1. When a vehicle is to be towed or seized pursuant to Village Ordinance or the Illinois Compiled Statutes (ILCS), an eligible towing company shall be utilized in accordance with the provisions of Chapter 81. Seized vehicles shall be towed to the appropriate seizure lot. In conducting the tow and inventory, the impounding officer(s) shall:

        a. Make every effort to ascertain the identity and address of the registered owners, run a stolen check on the V.I.N. and plate through N.C.I.C/L.E.A.D.S.

        b. Determine if there should be a "hold" placed on the vehicle for further investigation. Examples of grounds for the placement of a hold include but are not limited to 12-hour DUI hold, Evidence Processing hold, Narcotics Seizures, etc.

        c. Conduct an inventory of the vehicle contents listing the articles located therein and opening any closed containers and listing their contents. The contents inventory is for the purposes of protecting the officer and /or department from liability based upon claims of damaged or missing property, and to protect against dangerous instrumentalities. Any items, which may be contraband, evidence, or instrumentalities of a crime, shall be removed. The contracted towing company shall be responsible for the custody and safekeeping of all other property left in the vehicle. Any property taken into custody by the officer should be entered into property for safekeeping.

        d. Submit the complete Tow Report through routine report review channels by the end of the tour of duty.

    2. Nothing in this procedure shall be construed to enhance or diminish the law of search and seizure. Searches based on probable cause, consent, warrants, or incident to arrest may still be conducted regardless of whether a waiver of tow is obtained, circumstances permitting.

G. WAIVER OF TOW

    1. When the operator of a vehicle has been arrested and removed from control of the vehicle, a police officer is authorized, although not required, to waive towing of the vehicle if the following conditions exist.

a. The arrested person is the owner or authorized possessor of the vehicle and will assume responsibility for the safety of the vehicle and its contents.

b. The arrested person is capable of making a rational decision concerning the disposition of the vehicle or a co-owner or other person entitled to possession can be readily notified for the purpose of determining disposition.

c. The vehicle is or can be legally parked or the lawful owner/possessor desires to allow another licensed driver to take control of the vehicle.

d. Impoundment would interfere with the provision of police services and adversely affect public safety.

H. ADMINISTRATIVE TOWING REQUIREMENTS

1. Under Chapter 81 of the Village Code of Ordinances, vehicles that are used in connection with the commission of certain offenses may be impounded. For purposes of Chapter 81 and this policy, impoundment means the practice of towing and thereafter restricting the release of a motor vehicle used in connection with the commission of specified criminal offenses unless and until an administrative fee of $500.00 is paid to the Village, or a Village hearing officer determines after a hearing that the vehicle in question should not have been impounded. Motor vehicles may only be impounded when used in connection with the criminal offenses set forth in Appendix A to this policy.

2. Impoundment of a vehicle should be distinguished from a towing of a vehicle. While all impounded vehicles will be towed, not all towed vehicles are or should be considered to be impounded. Only those vehicles used in connection with the offenses listed in Appendix A may be or are subject to impoundment and the $500.00 administrative fee. The fee does not apply to towed vehicles that are not impounded.

a. Whenever a police officer has probable cause to believe that a vehicle is subject to seizure the police officer shall provide for the towing of the vehicle to a facility authorized by the department.

b. Vehicles may be towed for multiple reasons; Abandoned, Accident, Owners request, Obstructing a roadway (10-46), Drug impoundment, Evidentiary impoundment, Arrest (non-administrative) or Administrative under Chapter 81.251. Note the reason for the tow and the holds on the tow report.

c. Vehicles shall not be impounded under Chapter 81.251 or this procedure when held for evidence in conjunction with a felony

or when being held pending asset forfeiture proceeding (including drug seizures). Upon eligibility of release of the vehicle, Chapter 81 then applies.

d.  The supervisor may occasionally waive an impoundment, if in their reasonable judgment; the impoundment would materially interfere with the efficiency of police operations or services or adversely affect public safety, **and** the vehicle is either legally parked at the time, or will be driven from the scene by a licensed driver upon the effective consent of the vehicle owner.

e.  Before or at the time the vehicle is towed and impounded, the police officer may notify any person identifying himself as the owner of the vehicle, or any person who is found to be in control of the vehicle at the time of the alleged violation, of the fact of the seizure, and of the availability of a post impoundment hearing to be conducted in accordance with the provisions of Village Code Chapter 81.25 and 81.26. Where a vehicle is to be towed and impounded under the provisions of Chapter 81.251, no prior notice or hearing shall be required to the validity of the tow and impoundment, but officers are nonetheless encouraged to do so when to do so is practicable in the exercise of their reasonable judgment.

f.  At the time the vehicle is towed, the officer shall inform the tow company that this is a vehicle towed and impounded under administrative ordinance and is eligible for release by the tow company only after a verbal release is obtained from the Romeoville Police Department. A tow report shall be completed by an officer and submitted to the tow company with reason for the tow and impoundment and hold. The officer must note the applicability of the $500 Administrative Fee on the tow sheet and all tow reports should be handed in with the full report by the end of the officers' tour of duty unless the supervisor authorizes otherwise. The officer preparing the tow report should ensure that the reasons for impound are clearly documented in the tow report.

g.  Police officers towing vehicles shall complete an inventory search of the entire vehicle including any closed or locked containers, in accordance with Article III of this policy.

h.  The officer impounding the vehicle will ensure that the passengers of the impounded vehicle are provided transportation to the police station for purposes of securing alternative transportation if they are elderly, disabled, a minor,

or special circumstances dictate. The passenger(s) of the impounded vehicle may decline transportation to the police station. The police officer impounding the vehicle shall relay to telecommunications all necessary information regarding the impounded vehicle. The telecommunicator receiving such information shall ensure same is recorded in the CAD system as an abandoned, towed or impounded vehicle and when necessary, the Leads number placed on the original report filed by the officer. Special circumstances may apply and the officer can have the telecommunicator enter the vehicle into L.E.A.D.S. and place the L.E.A.D.S. number on the original report.

i.   Records personnel or authorized personnel as designated from time to time by the Chief of Police or his designee will receive the posting of a $500 fee for the administrative fee from the owner of the vehicle, or a person acting on the owner's behalf. Upon receiving the fee and required proofs and related documentation, personnel will provide a receipt and call the authorized towing agency advising them to release the vehicle upon presentation of receipt of paid administrative fee. Under extenuating circumstances and in accordance with the conditions hereinabove set forth in this policy, Romeoville Police Department Sergeants (and above) may authorize release without the posting of the fee. No cash shall be taken on the street. The fee must be posted at the Police Station. Fees will be accepted only during normal Records business hours. Only cash or credit cards will be accepted as payment.

I.   HEARING

1.   Owners of impounded vehicles shall be given a post impoundment notice. This notice shall include information indicating the availability of and process for requesting a post impoundment hearing. This notice shall be provided in accordance with Chapter 81.25.

2.   Impounded vehicle owners have the right to request a hearing on the impoundment within 15 days from the date of the above mentioned notice, whether in person at the Police Department or by mail as indicated on the notice. Failure to request the hearing in this manner waives the right to the hearing. If the impounded vehicle owner requests an impoundment hearing within the above 15 day period, the Department shall then notify the owner of the time, date and place of the hearing. Such notice shall be sent by certified mail, return receipt requested.

3. It is the responsibility of the Operation Lieutenant to compile the hearing cases on a weekly basis and ensure that certified mailings are sent as required. When not available, a designated person from Administration will back up that position.

4. The hearing will be held at a facility designated by the police department, and shall be conducted in accordance with the provisions of Chapter 81.26.

5. At the conclusion of the hearing, the Operation Lieutenant or other officer designated to conduct impoundment or tow hearings will file the necessary papers for action for default orders or immediate return of the vehicle or administrative fee. Such papers shall include a written decision based upon such evidence as is advanced at the hearing by the vehicle owners, and the Police Department or its personnel. The decision shall be attached to the original tow/impound report, and shall also be provided to the vehicle owner by personal delivery, or by mail within 7 days from the hearing.

6. It shall be an affirmative defense if the vehicle in question was stolen and was reported stolen within 24 hours of discovery.

J. RELEASE OF IMPOUNDED VEHICLES UNDER CHAPTER 81.251

1. All vehicles towed and/ or impounded pursuant to Chapter 81.251 of the Village of Romeoville Ordinances will only be released after meeting the following conditions, and after all towing and storage fees are paid directly to the towing company:

   a. Satisfactory proof of ownership (title OR a notarized letter from registered owner authorizing release OR proof of rental / lease (contract).

   b. Photo Identification.

   c. Valid proof of insurance for the vehicle if it has an insurance hold.

   d. Payment of $500 administrative fee and issuance of verbal release by the Department.

2. Motorists charged with the offense of Driving Under the Influence of Alcohol, Other Drug or Drugs, Intoxicating Compound or Compounds or any combination thereof may only have their vehicles released after a 12-hour hold unless circumstances dictate otherwise. Police Officers should NOT release a vehicle until the vehicle no longer falls under a D.U.I hold. Such a vehicle may be released earlier than 12 hours if

the vehicle was not owned by the person charged, and the lawful owner requesting the vehicle release possesses a valid driver's license, proof of insurance and would not indicate a lack of ability to operate a vehicle in a safe manner; [625 ILCS 5/4-203(e)(1)] or the vehicle is owned by the person charged and the person gives permission to another person to operate such vehicle, provided however, that the other person possesses a valid driver's license, proof of insurance and would not indicate a lack of ability to operate a vehicle in a safe manner. [625 ILCS 5/4-203(e) (2)]

3. Impounded vehicles may be subject to other types of holds. Holds on vehicles subject to evidentiary processing shall only be released upon the approval of the investigations unit supervisor. Vehicles involved in traffic accidents subject to hold can only be released upon approval of the officer conducting the follow-up investigation.

4. Where impounded vehicles are entered into L.E.A.D.S and the vehicle has been released, telecommunications will insure that computer entries (L.E.A.D.S. and CADS) are canceled.

## APPENDIX A

<u>Impoundment Qualified Violations: (If the vehicle was used in the commission of the following offenses)</u>

<u>Forcible Felonies under the Illinois Criminal Code of 1961 (720 ILCS 5/2-8)</u>

| | |
|---|---|
| 720 ILCS 5/9-1 | First degree murder |
| 720 ILCS 5/9-2 | Second degree murder |
| 720 ILCS 5/10-1 | Kidnapping |
| 720 ILCS 5/10-2 | Aggravated kidnapping |
| 720 ILCS 5/12-4 | Aggravated battery (resulting in great bodily harm) |
| 720 ILCS 5/12-13 | Criminal sexual assault |
| 720 ILCS 5/12-14 | Aggravated criminal sexual assault |
| 720 ILCS 5/12-14.1 | Predatory criminal sexual assault of a child |
| 720 ILCS 5/18-1 | Robbery |
| 720 ILCS 5/19-1 | Burglary |
| 720 ILCS 5/19-3 | Residential burglary |
| 720 ILCS 5/20-1 | Arson |
| 720 ILCS 5/20-1.1 | Aggravated arson |
| 720 ILCS 5/30-1 | Treason |

<u>Additional Crimes</u>

| | |
|---|---|
| 720 ILCS 5/9-3 | Involuntary manslaughter and reckless homicide |
| 720 ILCS 5/11-14 | Prostitution |
| 720 ILCS 5/11-15 | Soliciting for a prostitute |
| 720 ILCS 5/11-15.1 | Soliciting for a juvenile prostitute |
| 720 ILCS 5/11-16 | Pandering |
| 720 ILCS 5/11-18 | Patronizing a prostitute |
| 720 ILCS 5/11-18.1 | Patronizing a juvenile prostitute |
| 720 ILCS 5/11-19 | Pimping |
| 720 ILCS 5/11-19.1 | Juvenile pimping |
| 720 ILCS 5/11-19.2 | Exploitation of a child |
| 720 ILCS 5/12-2 | Aggravated assault |
| 720 ILCS 5/12-4 | Aggravated battery |
| 720 ILCS 5/12-4.1 | Heinous battery |
| 720 ILCS 5/12-4.2 | Aggravated battery with a firearm |
| 720 ILCS 5/12-4.3 | Aggravated battery of a child |
| 720 ILCS 5/12-4.6 | Aggravated battery of a senior citizen |
| 720 ILCS 5/12-4.7 | Drug induced infliction of great bodily harm |
| 720 ILCS 5/20-2 | Possession of explosives or incendiary device |
| 720 ILCS 5/24-1 | Unlawful Use of Weapon |
| 720 ILCS 5/24-1.2 | Aggravated discharge of a firearm |
| 720 ILCS 5/24-2.1 | Unlawful use of firearm projectile (armor piercing bullets) |
| 720 ILCS 5/24-3.1 | Unlawful possession of firearms / ammunition |
| 720 ILCS 5/24-3.3 | Unlawful sale or delivery of firearms at school |
| 720 ILCS 5/32-5.1 | False impersonation of a peace officer |
| 720 ILCS 5/32-5.2 | Aggravated false impersonation of a peace officer |

| | |
|---|---|
| 720 ILCS 5/33 A-2 | Armed violence |
| 235 ILCS 5/6-16 | Prohibited Sales and Possessions of Alcohol |
| 235 ILCS 5/6-20 | Purchase or acceptance of alcohol by underage persons |
| 720 ILCS 5/31-1 et. seq. | Any offense defined and prohibited by Article 31 of the Criminal Code of 1961 |
| 720 ILCS 5/12-1 et. seq. | Any offense defined and prohibited by Article 12 of the Criminal Code of 1961 |
| 720 ILCS 5/16-1 et. seq. | Any offense defined and prohibited by Article 16 of the Criminal Code of 1961 |
| 720 ILCS 5/16A-1 et. seq. | Any offense defined and prohibited by Article 16A of the Criminal Code of 1961 |
| 720 ILCS 5/20.5-1 et. seq. | Any offense defined and prohibited by Article 20 of the Criminal Code of 1961 |
| 720 ILCS 5/21-1 et. seq. | Any offense defined and prohibited by Article 21 of the Criminal Code of 1961 |
| 720 ILCS 5/25-1 et. seq. | Any offense defined and prohibited by Article 25 of the Criminal Code of 1961 |
| 720 ILCS 5/26-1 et. seq. | Any offense defined and prohibited by Article 26 of the Criminal Code of 1961 |
| 720 ILCS 570/100 et. seq. | Any offense defined and prohibited by the Controlled Substance Act |
| 720 ILCS 550/1 et. seq. | Any offense defined and prohibited by the Cannabis Control Act |
| 720 ILCS 600/1 et. seq. | Any offense defined and prohibited by the Drug Paraphernalia Control Act |
| *720 ILCS 555/0.01 et. seq. | Any offense defined and prohibited by the Child Curfew Act **(Note - Child curfew is a discretionary tow regardless of whether a custodial arrest is made.)** |

Certain Traffic Offenses

| | |
|---|---|
| *625 ILCS 5/6-101 | Operating a motor vehicle with no valid drivers license |
| 625 ILCS 5/6-301 et. seq. | Any offense defined and prohibited by Chapter 6 Article III of the Illinois Motor Vehicle Code |
| 625 ILCS 5/11-204 | Fleeing and attempting to elude a peace officer |
| 625 ILCS 5/11-204.1 | Aggravated fleeing and attempting to elude a peace officer |
| *625 ILCS 5/3-701 et. seq. | Any offense defined and prohibited by Chapter 3, Article VII of the Illinois Motor Vehicle Code |
| *625 ILCS 5/6-303 (a) 1 | Operating a motor vehicle with suspended driver's license |
| 625 ILCS 5/6-303 (a) 2 | Operating a motor vehicle with revoked drivers license **(Note - MANDATORY tow under 625 ILCS 5/6-303 (e) & 5/6-101 (d) if driver suspended/revoked AND no insurance.)** |
| 625 ILCS 5/11-501 | D.U.I. alcohol, intoxicating compounds and/or other drugs **[Note - MINIMUM 12 hour tow & hold under 625 ILCS 4-203 (e)]** |
| *625 ILCS 5/3-702 | Operation when registration cancelled, suspended or revoked |

| | |
|---|---|
| *625 ILCS 5/3-703 | Operating with false, fraudulent, stolen or altered registration |
| *625 ILCS 5/3-708 | Operation while registration suspended for mandatory insurance |
| *625 ILCS 5/3-710 | Presenting or displaying a false, fraudulent insurance card |
| | |
| 625 ILCS 5/11-401 | Hit and run (personal injury) |
| *625 ILCS 5/11-402 | Hit and run (property damage) |
| *625 ILCS 5/11-403 | Hit and run (duty to render aid) |
| *625 ILCS 5/11-404 | Hit and run (unattended motor vehicle) |
| *625 ILCS 5/12-212 | Illegal use of flashing red lights front of vehicle |
| *625 ILCS 5/12-215 | Illegal use of oscillating, rotating or flashing lights |
| *625 ILCS 5/5-502 | Transportation or possession of open alcoholic liquor in a vehicle |
| 625 ILCS 5/5-503 | Reckless driving |
| 625 ILCS 5/5-504 | Drag racing |
| *625 ILCS 5/5-505 | Prohibited maneuver-squealing, screeching tires |
| *625 ILCS 5/12-611 | Loud sound amplification violation (75 feet) |
| *625 ILCS 5/12-602 | Loud / altered muffler |
| *625 ILCS 5/12-503 (a) | Tinted windows |

**\*Is considered to be a discretionary tow by the officer on the scene, unless a custodial arrest is made.**

**EXHIBIT**
**2**

# WILL COUNTY, ILLINOIS

| | | Court Case No. _____ |
|---|---|---|
| DCN # _____ | **BAIL BOND** | Offense: _____ |

THE PEOPLE OF ILLINOIS

Defendant Name: _____

**VS.**

Municipality _____

Case Report No. _____ Ticket No. _____

Bail Bond Type:
- ☐ CASH BOND ☐ 10% DEPOSIT ☐ DRIVER'S LIC
  Amount of Deposit: $ _____
- ☐ PERSONAL RECOGNIZANCE
  in the Amount of $ _____
  Approved: _____ Judge
- ☐ REAL ESTATE or STOCKS/BONDS per sworn statement
  and schedule in the amount of $ _____
  Approved: _____ Judge

Defendant Name: _____
(A.K.A. _____ )
Address _____ Phone _____
City/State/Zip _____
Sex: M/F DOB _____ Race _____
Eyes _____ Hair _____ Ht _____ Wt _____
SS# _____ DLN _____
Surety: _____
Amount of Bail: $ _____
Bond Rec'd. at: _____
Police Dept./Other

Defendant to Appear:
Date: _____ Time: _____
Court Location / Room No. _____

I, the undersigned, as Defendant, do hereby acknowledge myself to be indebted to THE PEOPLE OF THE STATE OF ILLINOIS in the sum of the amount indicated as bail. Said bail is deposited in the case now pending against me, and I, as Defendant acknowledge the conditions of the bail that follow.

## CONDITIONS OF BAIL BOND

1. **Defendant is not to leave the State of Illinois without permission of the Court.**
2. **Defendant is to give written notice to the Clerk of this Court of any change of address within 24 hours of such change.**
3. **Defendant shall not violate any criminal statute of any jurisdiction.**
4. **Failure to appear for trial shall result in the case being tried in absentia.**
5. **Defendant shall comply with any additional terms and conditions of this bail bond on domestic violence offenses.**
6. **Defendant shall not possess firearm.**
7. **Additional Conditions** _____
8. **No contact with:** _____

_____
Signature of Defendant

## CERTIFICATE OF DEFENDANT

I, the Defendant named above, do hereby state that I know and understand the terms and conditions of this bail bond as shown on the **FRONT AND REVERSE SIDES** of this bail form. I understand further that if at any time prior to the final disposition of the charge(s) I escaped or am released on bond and fail to appear in Court when required by the Court, the result of my failure to appear will be as follow: I hereby waive my right to confront the witnesses against me; the trial can proceed in my absence; I forfeit the security money posted; judgement will be entered against me for the full amount of this bond, plus costs; a warrant may be issued, in which event additional bond money may be required. I understand and accept the terms and conditions set forth above and on the reverse side of this bail bond.

Signature of Defendant: _____

## NOTICE TO PERSON PROVIDING BAIL MONEY OTHER THAN DEFENDANT

*I, the undersigned, have read and fully understand that if the defendant fails to comply with the conditions of the bail bond, the Court shall enter an order declaring the bail to be forfeited. Further I understand that in the event the defendant is convicted of a crime, the bail may be used to pay costs, attorney's fees, fines or for other purposes ordered by the Court. For bonds $10,000 or greater, a date of birth and social security number of the surety are necessary.* Social Security # _____ D.O.B. _____

Signature _____ Name: (Print) _____

Address: _____ City: _____ State: _____ Zip: _____

## ASSIGNMENT OF BAIL BOND BY THE DEFENDANT

I hereby authorize the return of the monies posted above to the person shown on this bail bond as having provided monies for my bail after all conditions of this bail have been met.

Signature of Defendant: _____

Issued on this date: _____
Signed before me and security received.

_____ Police Department _____
Judge/Police Officer

_____
Circuit Clerk

White - Circuit Court Clerk        Yellow - Defendant        Pink - Police Department

**CLERK OF THE 12TH JUDICIAL CIRCUIT COURT
JOLIET, ILLINOIS 60432-4359
PAMELA J. McGUIRE**

**EXHIBIT**
**3**

# ROMEOVILLE POLICE DEPARTMENT
## TOW REPORT

CASE NO. _____                    ACCIDENT NO. _____

When Reported _____ M. _____ 20 _____
Reported by _____ Phone _____
Address _____ City _____ State _____
Where was vehicle found _____

### DESCRIPTION OF MOTOR VEHICLE

COLOR _____ YEAR _____ MAKE _____ MFGS. TRADE NAME _____
MFGS. SERIES NAME _____ BODY STYLE _____
V.I.N. _____ LICENSE _____
                                                            (Year)                    (State)                    (Number)
Distinguishing marks and accessories _____

Abandoned _____ Wrecked _____ Driveable _____ Stolen _____
                (yes-no)   (How long)                          (yes-no)                          (yes-no)                    (yes-no)
Other reason for tow _____
Vehicle Owner, if known _____ Phone _____
Address _____ City _____ State _____
Eligible for Release _____ Reason for Holding _____
                                    (yes-no)
Owner Present _____ Doors Locked _____ Keys in Vehicle _____
                            (yes-no)                                  (yes-no)                                  (yes-no)
Trunk Locked _____ Odometer Reading _____ Sticker _____
                    (yes-no)                                                                              (type)           (number)
Parts Missing _____
List Personal Effects in Vehicle _____

TOWING AGENCY _____
                                    (Name)                                  (Address)                                  (Phone)
The information concerning the condition of the vehicle and the personal effects contained therein, as listed above, are true
and correct. _____
                                                (Tow Truck Operation)
DRIVER/OWNER OF VEHICLE (if present) _____
                                                                            (Name)

_____
            (Address)                                  (Phone)

I hereby authorize said towing agency to tow the above described vehicle to the specified location. The information concerning
the condition of the vehicle and the personal effects therein, as listed above, are true and correct.

_____
                                    (Driver/Owner)
Vehicle Towed to _____ Phone _____
Address _____ City _____ State _____
on _____ , 20 _____ ; at _____ o'clock _____ M.
The foregoing information is true and correct to the best of my knowledge. I hereby authorize the towing of this vehicle

_____ 20 _____
        (Officer)                                                        (I.D. No.)
Approval of Supervising Officer _____ 20 _____
                                                                (Officer)

POLICE - White        DRIVER/OWNER - Yellow        TOWING AGENCY - Pink

*07-6140*



# Village of Romeoville

**Police Department**

**Mayor**
Fred Dewald

**Clerk**
Raymond E. Holloway

**Trustees**
Linda S. Palmiter
Dr. Edward McCartan
Dennis Veselsky
John D. Noak
Andy Goitia
Michele Nelson

**Chief of Police**
Andrew J. Barto

Owner Name: _WILLIE BROWN_

Address: _601 THEODORE ST_

_JOLIET, IL. 60435_

Mail/Delivery Date: _10/30/07_

Mailed/Delivered By: _10/30/07_

## VEHICLE POST TOW/IMPOUNDMENT NOTICE

Per Village of Romeoville Code of Ordinance Chapter 81 "Motor Vehicle Towing", owners of vehicles towed and/or impounded shall be provided the opportunity for a post-tow hearing to determine the validity of such tow and any towing or storage charges. The hearing will not be determinative of, or adjudicate, any citation issued relative to any towed vehicle.

Hearings must be requested within 15 days of the mailing or personal delivery of this notification of tow, or release of the vehicle, whichever occurs first; otherwise, the right to a hearing shall be deemed waived.

Requests for post-tow hearings must be made in person or by mail to the Romeoville Police Department, 10 Montrose Drive, Romeoville, Illinois 60446.

Hearing Requested ☒

Date Hearing Request Received: _10/30/07_

Received By: _MM_

---

10 Montrose Drive     Romeoville, IL 60446     Tel. 815/886-7219     Emergency 9-1-1     Fax 815/886-2763



**Village of**
**Romeoville**

Police Department

**Mayor**
Fred Dewald

**Clerk**
Raymond E. Holloway

**Trustees**
Linda S. Palmiter
Dr. Edward McCartan
John D. Noak
Andy Goitia
Michelle Annerino

**Chief of Police**
Andrew J. Barto

November 6, 2007


Willie Brown
601 Theodore St.
Joliet, IL  60435


Dear Mr. Brown,

On October 30, 2007, you requested a hearing to dispute the imposition of the Administrative Towing Fee that was placed on your vehicle. The purpose of this hearing is to determine whether or not the officer acted within the village ordinance and according to department policy in towing and placing the fee on your vehicle. If it is found during the hearing that officer acted occurring to Village and Department policy, you will not receive a refund of the administrative tow fee. This hearing does not take the place of court nor does it give you the opportunity to discuss any citations you may have received.

Your hearing date, time and location are as follows:

Date:  November 20, 2007
Time:  11:00 A.M.
Location:  Romeoville Police Department, 10 Montrose Dr. Romeoville, Il.

Please be prepared to discuss your issues at this time.


Sincerely,

Mark Turvey
Operations Lieutenant



**Village of**
# Romeoville

**Police Department**

**Mayor**
Fred Dewald

**Clerk**
Raymond E. Holloway

**Trustees**
Linda S. Palmiter
Dr. Edward McCartan
John D. Noak
Andy Goitia
Michelle Annerino

**Chief of Police**
Andrew J. Barto

November 21, 2007

Willie Brown
601 Theodore St.
Joliet, IL 60435


RE: Post Tow Hearing


On November 20, 2007, a post tow hearing was held at the Romeoville Police Department to determine the validity of your vehicle impound. All evidence presented by the vehicle owner has been reviewed, and the Hearing Officer's finding is "***tow justified.***" Therefore, the administrative fee and all towing and storage charges are hereby upheld and are the responsibility of the vehicle owner.



Respectfully,

Andrew J Barto

Andrew J. Barto
Chief of Police

---

10 Montrose Drive        Romeoville, IL 60446        Tel. 815/886-7219        Emergency 9-1-1        Fax 815/886-2763

**EXHIBIT**
**4**



### Village of
# Romeoville

**Police Department**

**Mayor**
Fred Dewald

**Clerk**
Raymond E. Holloway

**Trustees**
Linda S. Palmiter
Dr. Edward McCartan
John D. Noak
Andy Goitia
Michelle Annerino

**Chief of Police**
Andrew J. Barto

Willie Brown
601 Theodore St.
Joliet, IL 60435

November 7, 2007

Mr. Brown:

Your request for a copy of Romeoville Police Records (07-6140) has been denied. This denial is based on the fact that you as a defendant in a still pending court action may only obtain a copy of this record with a proper court order. I can be contacted at 815- 886-7219 if you have any questions in regards to this matter.

K. Showers
Records Supervisor

Right to Appeal

If your request for records under the freedom of information act has been denied, in-whole or in-part, you have the right to appeal this decision in writing, within seven (7) days, to the Office of the Chief of Police.

**EXHIBIT
5**

# TRACY, JOHNSON & WILSON

First Community Bank Building, Second Floor
2801 Black Road
Joliet, IL 60435

Richard H. Teas
Raymond E. Meader
A. Michael Wojtak
Kenneth A. Carlson
John S. Gallo
Richard E. Vogel
Cory D. Lund
Lawrence M. Kaschak

TELEPHONE (815) 723-8500
FAX (815) 727-4846
e-mail address: jolietlaw@tracylawfirm.com

Louis R. Bertani (1928-1999)
Thomas R. Wilson (1929-2001)
Donald J. Tracy (1926-2003)

Wayne R. Johnson (retired)

January 8, 2008

Mr. Willie Brown
601 Theodore Street
Joliet, Illinois 60435

Re:    Village of Romeoville v. Willie Brown
       Will County Case No. 07 OV 8956

Dear Mr. Brown:

Enclosed please find a copy of the police report in regard to the above matter.

Sincerely,

TRACY, JOHNSON & WILSON

*Lawrence Kaschak/ka*

Lawrence M. Kaschak

LMK/kda
Enclosure

# POLICE INCIDENT REPORT

| ROMEOVILLE POLICE DEPARTMENT | 2. SUPPLEMENTAL REPORTS CIRCLE (ARREST) (TOW) PROPERTY CITATION OTHER | 3. INCIDENT REPORT # 07-46810 | 4. CASE REPORT # 07-6140 |
|---|---|---|---|

| 5. ZONE OF OCCURRENCE 5 | 6. ZONE OF ASSIGNMENT 4 | 7. DAY / DATE / TIME OCCURRED Tuesday 10/30/07 1605 Hrs. | 8. DAY / DATE / TIME REPORTED Tuesday 10/30/07 1608 Hrs. | 9. STATUS 03 |
|---|---|---|---|---|

| 10. UCR 2890 | 11 CA | 12.CIRC | 13. OFFENSE 1) Disorderly Conduct | 14. F | 15. LOCATION E/B Airport approaching Weber Road |
|---|---|---|---|---|---|
| | | | 2) | F | 16. TYPE OF PLACE OF OCCURRENCE Road | 17. CODE 311 |
| | | | 3) | F | 18. WEAPON / TOOL USED Motor Vehicle | 19. CODE 35 | 20. BIAS CODE 88 |
| | | | 4) | F | |

21. Was there a witness ☒ Y ☐ N   Can Suspect be named ☒ y ☐ N
Can Suspect be located ☒ Y ☐ N   Can Suspect be identified ☒ Y ☐ N

| NO 22 1 | 23. VOA/OTHER V | 24.TYPE I | 25 NAME Sanders, Mary R. | 26. SEX F | 27. RACE W | 28. DATE OF BIRTH 08/22/59 |
|---|---|---|---|---|---|---|

29. 1 2 3 4  30. INJURY N  31. EMP Y U N S M  32. USE A D C
33 ADDRESS 15127 Pinewood Road, Lockport, IL 60441    34. HOME TX 815-838-1480   WORK TX 708-227-3419
35. OV/RELATION 3   36. VO/RELATION ST   37 AGE 48   38. HEIGHT   39. WEIGHT   40. HAIR   41. EYES   42. SOCIAL SECURITY NO.   43. DRIVERS LICENSE NO. S536-5965-9839   44. STATE IL
45. GANG AFFILIATION   46. CODE   47. MISC. INFORMATION   49. PLACE OF EMPLOYMENT OR SCHOOL (unemployed)

| NO 22 2 | 23. VOA/OTHER V | 24.TYPE I | 25 NAME Bova, Amy M. | 26. SEX F | 27. RACE W | 28. DATE OF BIRTH 12/08/84 |
|---|---|---|---|---|---|---|

29. 1 2 3 4  30. INJURY N  31. EMP Y U N S M  32. USE A D C
33 ADDRESS 16748 Oconto Avenue, Tinley Park, IL 60477    34. HOME TX 708-444-7171   WORK TX 708-254-1385
35. OV/RELATION 3   36. VO/RELATION ST   37 AGE 22   38. HEIGHT   39. WEIGHT   40. HAIR   41. EYES   42. SOCIAL SECURITY NO.   43. DRIVERS LICENSE NO. B100-0138-4949   44. STATE IL
45. GANG AFFILIATION   46. CODE   47. CHARGES / MISC. COURT DATE & TIME   48. ARREST NO.   49. PLACE OF EMPLOYMENT OR SCHOOL Salon Salon Too

| NO 22 3 | 23. VOA/OTHER A | 24.TYPE 87 | 25 NAME Brown, Willie | 26. SEX M | 27. RACE B | 28. DATE OF BIRTH 05/29/54 |
|---|---|---|---|---|---|---|

29. 1 2 3 4  30. INJURY N  31. EMP Y U N S M  32. USE A D C
33 ADDRESS 601 Theodore Street, Joliet, IL 60435    34. HOME TX 815-740-1467   WORK TX 815-212-9615
35. OV/RELATION   36. VO/RELATION   37 AGE 53   38. HEIGHT 510   39. WEIGHT 185   40. HAIR BLK   41. EYES BRO   42. SOCIAL SECURITY NO. 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   43. DRIVERS LICENSE NO. B650-8805-4153   44. STATE IL
45. GANG AFFILIATION   46. CODE   47. CHARGES / MISC. COURT DATE & TIME 1, 12/10/07 0900 Hrs., Bolingbrook (local)   48. ARREST NO. 07-1569   49. PLACE OF EMPLOYMENT OR SCHOOL (self-employed)

| 50 TYPE O/T | 51 COLOR / COLOR Blue | 52 YEAR 1991 | 53. MAKE Honda | 54. MODEL (wagon) | 55. BODY STYLE 4 DR | 56. LICENSE 9286062 | 57. STATE IL | 58. YEAR 2008 |
|---|---|---|---|---|---|---|---|---|

59. VIN OR OTHER DISTINGUISHING MARKS JHMEE4861MS002212    60. VEHICLE FINANCED WHERE FINANCED   YES   NO   61. VALUE   62. TOWED/HOLD Heartbreak / Admin.
63. EVIDENCE INFORMATION   64. PROPERTY INV. #   MOTOR VEH INV. #   65. LEADS / ISPERN NO.

| 66 LOSS CODE | 67. OFF | 68. PROP | 69 DESCRIPTION OF PROPERTY | 70 MANUFACTURER | 71 MODEL / SERIAL NO. | 72 QUANTITY | 73 VALUE |
|---|---|---|---|---|---|---|---|

See page #2 for narrative.

75. OFFICERS AT SCENE - REPORTING OFFICER FIRST   D. Zakula Jr. 374, 348    76. REPORTING OFFICER SIGNATURE  [signature] D. Zakula Jr. 374   77. RELATED C.R. #   78. TIME CONSUMED 2.0 HRS

79. COPY TO: ☐ INVEST ☐ DISPATCH ☐ CODE   ☐ VILLAGE ATTY ☐ STATE'S ATTY   ☐ OTHER   80. ASSISTING AGENCIES   81. FIELD SUPERVISOR SIGNATURE [signature] #309   82. SUPERVISOR APPROVING [signature] #341

# NARRATIVE/PROPERTY CONTINUATION

| ROMEOVILLE POLICE DEPARTMENT | SUPPLEMENTAL REPORTS CIRCLE ARREST TOW PROPERTY CITATION OTHER | | INCIDENT REPORT # 07-46810 | CASE REPORT NO 07-6140 |
|---|---|---|---|---|
| PAGE # 2 | OFFENSE Disorderly Conduct | VICTIM/COMPLAINANT Sanders & Bova | DATE THIS REPORT 10/30/07 | STATUS 03 |

| LOSS CODE | OFF | PROP CODE | DESCRIPTION OF PROPERTY | MANUFACTURER | MODEL/SERIAL NO. | QUANTITY | VALUE |
|---|---|---|---|---|---|---|---|

On Tuesday 10/30/07 at approximately 1608 Hrs., I was dispatched to the area of Weber and Airport reference a road rage incident in progress. I was able to locate the two vehicles involved with direction from dispatch. The offending vehicle was described as a blue 4-door Honda (IL- 9286062). Dispatch relayed information from the victim who said the offender was slamming on his brakes trying to cause a crash. Next, I performed an investigative stop on the offending vehicle on Weber south of Airport, and the victim stopped behind me.

First, I spoke with the driver of the offending vehicle. He presented an IL driver's license identifying him as Willie Brown. Brown said he was being stopped because "he happened to get behind the only bitch on the road." He said that the victim's vehicle was traveling extremely slow on Airport so he passed her. He did not make any claims against the victim's vehicle at this time, but was clearly frustrated that I was stopping him. Brown did lead me to believe there was an incident that had taken place because he refered to the victim as a "bitch" several times. It was clear to me he was angry with the victim from my initial contact with him.

Next, I spoke with the occupants of the victim's vehicle. The driver, Mary R. Sanders, and the passenger, Amy M. Bova, both described the incident. I noticed that Bova was shaking in fear as I spoke with her. They collectively stated that they were traveling eastbound on Airport while Brown was following them too close for their comfort. At this time, Sanders slowed down and pulled to the right at Richfield to allow Brown a clear path to pass and continue on. When she did that, Brown pulled around her to the left and passed in a no passing zone while putting his middle finger up at Sanders and Bova. He then pulled in front of them and stopped in the roadway. There were no other vehicles in front of Brown or behind Sanders. Brown exited his vehicle and walked back to Sanders vehicle and called both of the victims "fucking bitches!" Bova stated she feared for her safety and was alarmed and disturbed by Brown which caused her to lock the car doors. Next, Brown walked back to his vehicle and continued eastbound on Airport. As he did so, Brown randomly slammed on his brakes several times to shock Sanders and Bova while showing his middle finger again out the back window. It was at this time I located the vehicles.

Brown first told Officer Sloup #348 that he never exited the vehicle; however, I noticed he was not wearing his seatbelt when I initially approached his vehicle. After I confronted him with Sanders' statement that he did exit his vehicle, he said that he opened his door and started to get out, but never completely exited his vehicle. Sanders and Bova both signed a complaint against Brown for Disorderly Conduct. Brown was subsequently placed under arrest and transported to Romeoville Police Department for booking procedures. His vehicle was towed by Heartbreak to Heartbreak with an administrative hold. He was advised to appear at 375 W. Briarcliff, Bolingbrook, IL on 12/10/07 at 0900 Hrs. for his arraignment and released on a $100.00 Cash Bond.

It should be noted that both victims adamantly requested their personal information (last name, address, phone number, etc.) be kept private from Brown for their safety.

| OFFICERS AT SCENE - REPORTING OFFICER FIRST D. Zakula Jr. 374, 348 | REPORTING OFFICER SIGNATURE 374 | RELATED C.R # |
|---|---|---|
| COPY TO ☐ VILLAGE ATT. ☐ STATE'S ATTY. ☐ OTHER | OTHER AGENCIES INVOLVED | FIELD SUPERVISOR SIGNATURE #309 | SUPERVISOR APPROVING #341 |

# ROMEOVILLE POLICE DEPARTMENT
## ARREST REPORT

| 1. CR Number 070000006140 | 2. ADULT | 3. IL SID # 15919050 | 4. FBI # 343102DA6 | 5. Booking Number |
|---|---|---|---|---|

| 6. Last Name BROWN, WILLIE | First Name | Middle | 7. DLN # / State B65088054153 | 8. SSN # 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 |
|---|---|---|---|---|

9. Address (include street, city, state, zip)
601 THEODORE STREET, JOLIET, IL, 60435

10. Phone 815-740-1467

| 11. Sex M | 12. Race B | 13. DOB 05/29/1954 | 14. Height 5' 10" | 15. Weight 185 | 16. Eyes BRO | 17. Hair BLK | 18. Skin DRK |
|---|---|---|---|---|---|---|---|

19. Scars/Marks/Tattoos/Amputations

20. Place of Birth US

21. Caution (s)

22. AKA Name

23. AKA DOB

24. Occupation (SELF EMPLOYED)

25. Employer Name

26. Employer Address/Location

**VEHICLE**

| 27. Year 1991 | 28. Make Honda | 29. Model | 30. Doors 4 | 31. Color Blue | 32. License # 9286062 | 33. State IL |
|---|---|---|---|---|---|---|

**34. Cause for Arrest**

- [x] CITA    CITATION
- [ ] COMP    COMPLAINT
- [ ] CRTO    COURT ORDER
- [ ] FWAR    FOREIGN WARRANT
- [ ] WARR    LOCAL WARRANT
- [ ] VIEW    ON VIEW
- [ ] OTHR    OTHER

**35. Custody Disposition**

- [x] BOND    BONDED OUT
- [ ] RWCH    RELEASED WITHOUT CHARGE
- [ ] JAIL    TRANSFERRED TO COUNTY JAIL
- [ ] DMH    TRANSFERRED TO DEPT OF MENTAL HEALTH
- [ ] PARE    RELEASED TO PARENT/GUARDIAN
- [ ] JUVE    TRANSFERRED TO JUVENILE DETENTION
- [ ] TURN    TURNED OVER TO OUTSIDE AGENCY

| 36. Date of Arrest 10/30/2007 | 37. Time of Arrest 1608 | 38. Location of Arrest WEBER/AIRPORT |
|---|---|---|

| 39. Charges Section | Class | Offense Description | UCR Code | 40. Bond Amount | 41. Bond # |
|---|---|---|---|---|---|
| 1 ORD  134.01 | O | DISORDERLY CONDUCT | 2890 | 42. Bonded Date | 43. Bond Time |
| 2 | | | | 44. Court Date 12/10/2007 | 45. Court Time 09:00 |
| 3 | | | | 46. Court Location | |
| 4 | | | | 099 | |
| 5 | | | | 47. Bond Set By: | |
| 6 | | | | ☐ Rule of the Court | |
| 7 | | | | ☐ Supervisor | |
| | | | | ☐ Judge (name) | |

48.



49. Hold for outside agency?

☐ YES   ☒ NO    Name_____

Released to: Name/Star _____

Arresting Officer /Star     ZAKULA JR                374

Booking Officer /Star      Zakula                    374

Fingerprinted? ☐ YES  ☒ NO

50. DCN
L41030515

STATE OF ILLINOIS, } ss.
COUNTY OF WILL, }

IN THE CIRCUIT COURT OF THE 12TH JUDICIAL DISTRICT
WILL COUNTY

Village of Romeoville
A Municipal Corporation

vs.

WILLIE BROWN

In the Magistrate Division

Case No. 07-5140

## COMPLAINT

On this ___30th___ day of ___OCTOBER___ A.D. 20 07 , comes into court the complainant
AMY BOVA 15741 OCENTO AVE., TINLEY PARK, IL.
and charges the commission of an offense as follows:

1. The name of the accused is: ___WILLIE BROWN___
   601 THEODORE ST., JOLIET, IL.

2. The name of the offense charges and the nature and elements are: ___DISORDERLY CONDUCT:___
   in that he knowingly used profane language including the words "fuck" and "bitch"
   while stopping traffic in the roadway as to alarm and disturb Amy Bova and Mary
   Sanders and to provoke a breach of the peace.

3. The time and place of the offense are: OCTOBER 30, 2007, 4:08 PM, AIRPORT & WEBER ROAD,
   ROMEOVILLE, COUNTY OF WILL, ILLINOIS.

4. The ordinance provision violated is: CHAPTER 134, SECTION 134.01 (B)
   OF THE ROMEOVILLE CODE OF ORDINANCES.

The undersigned being duly sworn on oath deposes and says that the foregoing charge is true.

Subscribed and sworn to before me this ___30th___
day of ___OCTOBER___ 20 07 .

SIGNED: _____
                                Complainant

_____
Judge/Magistrate of the Circuit Court

OFFICIAL SEAL
John M. Feldmardt
Notary Public, State of Illinois
My Commission Expires July 25, 2009

Court date    DECEMBER 10, 2007
                        9:00 AM                        20 ____

## WARRANT OF ARREST

To all Peace Officers in the State, GREETING:

Whereas, a complaint in writing was presented to the Court charging that the offense of
_____ has been committed, and it appears that
_____ committed the offense,

YOU ARE COMMANDED to arrest _____
and to bring him without unnecessary delay before this Court, located at _____ ,
in Will County or, if I am absent or unable to act, before the nearest or most accessible Court in this County.

BAIL is specified in the amount of $ _____ .

ISSUED at _____ , Will County, Illinois, this _____ day
of _____ A.D. 20 ____ .

SIGNED: _____ (SEAL)
                Judge/Magistrate of the Ciruit Court
                    of the 12th Judicial District

STATE OF ILLINOIS, ⎰ ss.
COUNTY OF WILL, ⎱

IN THE CIRCUIT COURT OF THE 12TH JUDICIAL DISTRICT
WILL COUNTY

Village of Romeoville
A Municipal Corporation

vs.

WILLIE BROWN

In the Magistrate Division

Case No. 07-6140

## COMPLAINT

On this ____30th____ day of ___OCTOBER___ A.D. 20 _07_ , comes into court the complainant
MARY SANDERS   15127 PINEWOOD ROAD, LOCKPORT, IL.
and charges the commission of an offense as follows:

1. The name of the accused is: _____WILLIE BROWN_____
                        601 THEODORE STREET, JOLIET, IL.

2. The name of the offense charges and the nature and elements are: DISORDERLY CONDUCT;
   In that he knowingly used profane language including the words "fuck" and "bitch"
   while stopping traffic in the roadway as to alarm and disturb Mary Sanders and Amy
   Bova and to provoke a breach of the peace.

3. The time and place of the offense are: OCTOBER 30, 2007, 4:08 PM, AIRPORT @ WEBER ROAD,
ROMEOVILLE, COUNTY OF WILL, ILLINOIS.

4. The ordinance provision violated is: ____CHAPTER 134,    SECTION 134.01 (B)
OF THE ROMEOVILLE CODE OF ORDINANCES.

The undersigned being duly sworn on oath deposes and says that the foregoing charge is true.

Subscribed and sworn to before me this ___30th___
day of ___OCTOBER___ 20 _07_ .

SIGNED: _____
                        Complainant

Judge/Magistrate of the Circuit Court

OFFICIAL SEAL
John M. Ferdinardo
Notary Public State of Illinois
My Commission Expires July 25, 2009

Court date   DECEMBER 10, 2007   20 ____
             9:00 AM

## WARRANT OF ARREST

To all Peace Officers in the State, GREETING:
   Whereas, a complaint in writing was presented to the Court charging that the offense of
_____ has been committed, and it appears that
_____ committed the offense,
   YOU ARE COMMANDED to arrest _____
and to bring him without unnecessary delay before this Court, located at _____ ,
in Will County or, if I am absent or unable to act, before the nearest or most accessible Court in this County.

   BAIL is specified in the amount of $ _____ .

   ISSUED at _____ , Will County, Illinois, this _____ day
of _____ A.D. 20 ____ .

SIGNED: _____ (SEAL)
                Judge/Magistrate of the Ciruit Court
                of the 12th Judicial District

# IN THE CIRCUIT COURT OF 12TH JUDICIAL CIRCUIT
## WILL COUNTY, ILLINOIS

DCN # _____

Court Case No. _____

**BAIL BOND**    Offense: _____

THE PEOPLE OF ILLINOIS    **VS.**    Defendant Name: _____

Municipality _Romeoville P.D_

Case Report No. _____   Ticket No. _____

Bail Bond Type:
- ☒ CASH BOND   ☐ 10% DEPOSIT   ☐ DRIVER'S LIC
- Amount of Deposit: $ _100.__
- ☐ PERSONAL RECOGNIZANCE
  in the Amount of $ _____
  Approved: _____ Judge
- ☐ REAL ESTATE or STOCKS/BONDS per sworn statement
  and schedule in the amount of $ _____
  Approved: _____ Judge

Defendant Name: _Brown, Willie_
(A.K.A.: _N/A_ )
Address: _601 Theodore_ Phone _815-212-7615_
City/State/Zip: _Joliet, IL 60435_
Sex: M/F   DOB _05/29/54_ Race _Black_
Eyes _Brown_ Hair _Black_ Ht _5'10_ Wt _155_
SS# _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_ DLN _B650-5365-4153_
Surety: _____
Amount of Bail: $ _100.__
Bond Rec'd. at: _Romeoville P.D._
     Police Dept./Other

Defendant to Appear:
Date: _12/10/07_ Time: _0900 AM_
Court Location / Room No. _315 in Branch 44_
_Bolingbrook IL_

I, the undersigned, as Defendant, do hereby acknowledge myself to be indebted to THE PEOPLE OF THE STATE OF ILLINOIS in the sum of the amount indicated as bail. Said bail is deposited in the case now pending against me, and I, as Defendant acknowledge the conditions of the bail that follow.

## CONDITIONS OF BAIL BOND

1. Defendant is not to leave the State of Illinois without permission of the Court.
2. Defendant is to give written notice to the Clerk of this Court of any change of address within 24 hours of such change.
3. Defendant shall not violate any criminal statute of any jurisdiction.
4. Failure to appear for trial shall result in the case being tried in absentia.
5. Defendant shall comply with any additional terms and conditions of this bail bond on domestic violence offenses.
6. Defendant shall not possess firearm.
7. Additional Conditions _____
8. No contact with: _Victim / Complainants_

Signature of Defendant _____

## CERTIFICATE OF DEFENDANT

I, the Defendant named above, do hereby state that I know and understand the terms and conditions of this bail bond as shown on the **FRONT AND REVERSE SIDES** of this bail form. I understand further that if at any time prior to the final disposition of the charge(s) I escaped or am released on bond and fail to appear in Court when required by the Court, the result of my failure to appear will be as follow: I thereby waive my right to confront the witnesses against me; the trial can proceed in my absence; I forfeit the security money posted; judgement will be entered against me for the full amount of this bond, plus costs; a warrant may be issued, in which event additional bond money may be required. I understand and accept the terms and conditions set forth above and on the reverse side of this bail bond.

Signature of Defendant: _____

## NOTICE TO PERSON PROVIDING BAIL MONEY OTHER THAN DEFENDANT

I, the undersigned, have read and fully understand that if the defendant fails to comply with the conditions of the bail bond, the Court shall enter an order declaring the bail to be forfeited. Further I understand that in the event the defendant is convicted of a crime, the bail may be used to pay costs, attorney's fees, fines or for other purposes ordered by the Court. For bonds $10,000 or greater, a date of birth and social security number of the surety are necessary.   Social Security # _____ D.O.B. _____

Signature _____ Name: (Print) _____

Address: _____ City: _____ State: _____ Zip: _____

## ASSIGNMENT OF BAIL BOND BY THE DEFENDANT

I hereby authorize the return of the monies posted above to the person shown on this bail bond as having provided monies for my bail after all conditions of this bail have been met.

Signature of Defendant: _____

Issued on this date: _10/30/07_
Signed before me and security received.

_____ Police Department _Romeoville P.D._
Judge/Police Officer

_____
Circuit Clerk

   White - Circuit Court Clerk    Yellow - Defendant    Pink - Police Department

## CLERK OF THE 12TH JUDICIAL CIRCUIT COURT
### JOLIET, ILLINOIS 60432-4359
### PAMELA J. McGUIRE

**EXHIBIT**
**6**

Case 1:08-cv-01573    Document 1    Filed 03/18/2008    Page 61 of 66    can not read

**l, Bolingbrook, New Lenox, Crest Hill, Shorewood, Romeoville and Plainfield for 21 Years**

## for commercial ill County

weeklynews.com



that report to weather conditions is about as close as we can get to that appealing of a forecast in January. However, local investors, community planners and politicians are enjoying some bonus sunshine rather early when it comes to the ongoing shape and future of real estate in Will County.

**MORE ON 3 >**

## million for rtation



Authority (RTA) board and gives Will County its own board seat for the first time in the history of the Authority. It also gives a total

**MORE ON 9 >**

# Romeoville Police: Untrained, or unwilling to do good police work?

By: John Gabriel/TW  jgabriel@timesweeklynews.com



Anyone who spends even a small amount of time looking into cases that the Romeoville Police Department is called upon to handle must reach a point at which they become bewildered at the quality of the police work. Inevitably one must ask if this department fails to train its officers to do quality police work or are there times when the officers involved are just too lazy to do a proper job. Those who have had a need to call on them for assistance often say it seems that the local police are untrained as to how to conduct an investigation.

If the Times Weekly source is correct, and he claims to have first hand knowledge of such training policies, it is little wonder that the following cases were handled in the shoddy manner in which they were investigated. The source says only a select few officers get additional training with the approval of Chief Andrew J. Barto. Apparently the remainder blunder their way through their assignments doing what believe they should do.

There was a case in which a Romeoville resident called the police to investigate a bomb that had been thrown at his home but which fell short of its mark and landed on the

front lawn. The grass was burned by the explosion, and there were remnants of the container spread across the grass, a label survived the explosion upon which there was a brand name for the container. The label had a printed barcode on it and the explosive contents left shards of aluminum behind which were blackened by the explosion. Large pieces of the plastic container survived and they were picked up by the police.

Policeman, Officer Kemp, showed up the following morning, apparently to review the crime scene, she observed the blackened aluminum scraps and decided to collect some of them as evidence. The officer did not bring an evidence envelope with her so she decided to improvise, she took a business card from her pocket, folded it slightly to create a trough in the middle of it and proceeded to scrape

some of the aluminum particles onto that card. When she had gathered some onto the card she folded the card and tucked into a uniform pocket. A rookie can quickly explain why that contaminated, improperly gathered, un-initialed evidence would be useless in court.

In the meantime, according to the police documents, Officer Moreno decided there was insufficient storage space at the police station to store the small plastic fragments of the homemade bomb; he proceeded to photograph it and then threw the evidence away. With it, of course, he threw away any chance of winning a court case against the bomb maker. No one checked the evidence for fingerprints, but what the police did do was tell the victim that the bomb fragments were sent to the crime lab, mean-

**MORE ON 10 >**



IL 60441
hipmortgage.net

100% cashout refinance
Debt consolidation-Lower your bills by hundreds per month!

100% Financing,
NO MONEY DOWN!
Scores down to 530



**COUPON #TW928**
# SAVE $300
WITH THIS COUPON
CALL TODAY AT
# 815-588-3500



FLAGSHIP

MORTGAGE CORPORATION

**The Times WEEKLY**

## NEWS

### > FROM FRONT Romeoville Police: Untrained, or unwilling...

ing of course the Illinois State Police Crime Lab located in Joliet. But that was a lie, as the victim would learn later, when he asked about the status of the investigation. Lieutenant Denny confided that the evidence had not been sent to the Crime Lab, and he was supported by the written statement of the officer who unprofessionally threw it away. There were obviously no crack detectives involved in that case.

A local resident called the Romeoville Police for help when the driver of an all terrain vehicle (ATV) intentionally ran him down and then drove completely over his body. The man could have been killed or seriously injured but the driver did not care he drove off without checking on the condition of his victim.

The police promised the victim there would be a thorough investigation. Days later the police would profess to have a suspect in mind. Sadly, the police mishandled that case and even if they find the person who ran down the victim they would be unable to prove a

case against him unless he is just dumb enough to confess to a crime for which there is no evidence. That is correct, no evidence because the police did not take pictures of the extensive bruising to the entire right side of the victim's body. The police did not take pictures of the fence the driver knocked with his ATV nor of the compost bin that he pushed into his yard, nor of the scrape marks left on it by the ATV. The victim said the police did not photograph the tire tracks left in the soft ground by the ATV's bulky tires. The police did not make impressions of the tire tracks so that if and when they locate the ATV they can compare its tread with the impressions and photographs they should have made at the crime scene.

Case history says the Romeoville Police lack many ordinary police skills such as stopping people in cars only when there is probable cause, not hunches, or because the person is someone they know by sight. The Romeoville Police perform searches without warrants using intimidation and

threats to bypass the Constitution. Such tactics do make it possible for them to make many arrests, but they are arrests that probably would not withstand the justice system if the alleged violators had skilled attorneys to represent them.

Proof of that was seen in the case of one young man who the police falsely accused of kicking and breaking a sign. The guilty party admitted to that crime but the police preferred to falsely arrest a different youngster who was unfortunately in the "No Break Book." His Attorney destroyed the Romeoville officer on the stand because the officer had not gathered evidence properly and, therefore, he had no evidence to back up his arrest — the young man was found not guilty.

Many Romeoville officers may like to know the latest police techniques but then, perhaps, they would know more than the chief—that would not sit well with him. That should make citizens ask, who will the Romeoville Police call if they encounter a serious crime in the village?

# 18th

# Brea

# build

"Dr. Kin
unfulfilled
deemed, th
said Rev. J
founder a
Rainbow I
we celebr
day aroun
acy is to fi
health car
end to the

Bill Cosh
Ph.D. in ed
ing his Hol
be the spe
21, as the I
alition mar
PUSH-Exce
King, Jr. Sch

Celebrati
have been
birthday, PU
(PUSH Ex
high schoo
dents from
with schol
breakfast fr
the Sherato
Towers, 301
Chicago.

## CRIMINAL & FAMILY LAW

### Judith DeVriendt

To read n

your neighborhood

Case: 1:08-cv-0157 "More Document 1 Filed 20/16/2008 Page 63 of 66
savvy"
2008    Vol. 22 Issue 10    STORY ON 2 >    Savings Time    than sweet smells
STORY ON 13 >    STORY ON 13 >

ngbrook, New Lenox, Crest Hill, Shorewood, Romeoville and Plainfield for 22 Years

# Is it time for the
# Romeoville Police to call the police?
### They write tickets, but what about solving crimes?

By: John Gabriel/TW | jgabriel@timesweeklynews.com



weeklynews.com

er, which opened in
its operation shut



Chief of Police, Andrew J. Barto

Ask the Romeoville Police about a crime and they will say: "No Comment"; "It's being investigated"or "I can't talk ask Lt. Mark Turvey."

Each Romeoville Officer must write 3 tickets each day, which, based upon 20 working days each month, works out to about 60 tickets per month. Each day, each officer bears the weight of having to meet that daily quota no matter what else may occur. Officers who fail to meet their quota will face a reprimand and ultimately could face suspension from duty without pay.

Crime that occurs anywhere takes up a substantial amount of an officer's time, while he investigates it. If a Romeoville officer is engaged in tracking the events of a serious crime, the clock is ticking, and time passes quickly when you have not written your daily tickets, especially if you must submit 3 each day. The officer must make quick decisions: "Should I continue looking for clues to solve this serious crime, or should I abandon it so I can meet my ticket quota to avoid a suspension from

duty?" Police officers like the rest of society face financial obligations at home, and they, like all other working people, cannot afford days off without pay. "Forget the crime write the tickets."

That hypothetical scenario could explain why serious crimes and suspicious occurrences that occur in Romeoville drift silently into oblivion without final solutions. There are many examples and they continue to stack up higher and higher.

Police shut down the 2007

Romeoville Fest amid unconfirmed reports of shooting and feuding between rival gangs who supposedly clashed at the event. The police version of what took place made no mention of guns, armed gang members or of shooting. The shutdown was, according to police, an innocent event caused by inclement weather. Rumor said the Mayor did not want bad publicity to curtail attendance at future fests so the police withheld the truth.

At the end of the fest, a carnival worker was found

MORE ON 10>

ed closing of the
ted near the Crest
order.

not proposing to
close Stateville,"
Schnapp, IDOC
ations Manager.
al includes a com-
e of the maximum
rtion of the prison
ing the Reception
cation center and

# Silver Cross
# considers future generations



in- tor of the Will-Grundy
· J. Clinic, Ross previously served
on as the President of Joliet Junior
College (JJC) from 1999 until
A). his retirement in 2006. Prior to
rill his appointment as JJC presi-
ity dent, he held administrative po-
us- sitions at the college since 1974
rs. which include, Vice President
or- of Academic Affairs, Dean of Ca-
ne reer and Instructional Services,
rill Dean of Special Programs and
on Director of the Inmate Training
w Program. He currently serves as
ty a faculty member for the annual
ar Future Leaders Institute of the
American Association of Com-
on munity Colleges. Ross holds a
a master's degree in educational
e- administration from Western Illi-
n- nois University and a bachelor's
ld degree in sociology from St.
D. Ambrose College in Davenport,
e- Iowa.
is
or

## 'ths about 2008
## its

ie" stimulus payments will be is-
to sued in the form of Direct De-
ve posits as well as paper checks.
00 Direct Deposit is the best way
ng to receive the payment. Eligible
u- taxpayers who choose Direct
id Deposit for their 2007 tax year
D; refund will receive their stimu-
n- lus payment the same way.
m The IRS will contact taxpayers
on by phone or e-mail about
by their payments.
id FACT – Watch for scams! IRS
ie will NOT contact taxpayers by
id phone or e-mail about stimulus
u- payments or refunds.
y- More stimulus payment in-
00 formation, including frequently
or asked questions, payment sce-
c- narios and guidance for those
ts who normally don't file a tax re-
turn, is available on the IRS Web
s- site at www.irs.gov.
ic

ur customers.
ise with
lynews.com

advertising
s available in
ekly newspaper
vs.com call for details

state workers to pick up their families and leave their communities; the loss of incredible economic activity that will affect hundreds of local vendors and Will County's economy; and the City of Crest Hill would see a sharp decrease in revenue due to the loss of residents," said Senator Wilhelmi. "Additionally, once the prison is closed, we'll have a shuttered state facility next to the ongoing Reception and Classification Facility, which means the remaining land may never get developed. This is a lose-lose situation for my district, and I will fight against this with everything I've got."

"We must wait until the budget passes and it would be a graduated process that would take a few months to do," Schnapp explained regarding the timeline for proposals to take effect. He further explained that if approved the proposal would allow the state agency to finally open the Thomson facility, a state of the art, 1,600 cell, maximum security jail,

have the opportunity to be transferred to other correctional centers. "We are talking about over 400 people at risk of losing their jobs," said State Senator Linda Holmes. "Although the department has stated that these employees would have an opportunity to be transferred to other correctional centers, the closing of Stateville would force hundreds of families who have made their homes in our communities to relocate."

"We found out about two weeks ago," said Demetria Webster, wife of a Stateville employee working in the maximum security portion up for closure. "I was shocked because we've been through this before when my husband transferred to Stateville a few years ago after the Collins Street jail closed." When asked what she thought her family would do should her husband become one of the 400 employees to have to leave Stateville, Webster explained they would have to weigh the options. "We'd have to consider a lot of

ment of Corrections
ector for Roger Walker, Jr. at the Senate
Committee on Appropriations I. The Depart-
ment confirmed their plans to close a major
portion of Stateville Prison at the hearing.

things; we'd have to sell our house that we just bought, see what the cost of living would be and how far away we'd be from our family in Chicago," Webster said.

"We will work closely with the families to minimize the impact on families," said Schnapp.

Senator Halvorson has residents in her district that also may be affected by the facility closing. "The closing of Stateville will be detrimental to the community that surrounds it. This center provides many jobs to residents of this area," said Senator Halvorson. "I plan to work with other members of my caucus and Department of Corrections officials to determine a better solution than shutting down this prison."

A more definitive decision on the issue is expected to evolve around July 2008, near the start of the 2008-2009 FY state budget.

> FROM FRONT

## Is it time for the Romeoville Police to call the police?

hanged. Almost immediately, his death was ruled a suicide. No details were available from the Romeoville Police Department and there were no details made public to explain how the death was quickly determined to have been a suicide. It would be much easier to record a death as a suicide rather than undertake a lengthy homicide investigation that would require expertise to resolve. Was it a rush to judgment? Is the Romeoville Police Department capable of making a real death investigation?

Recent investigations conducted by the Romeoville Police have an unproductive history. Bolingbrook resident Robert Taylor reported that his personal belongings were stolen when he was arrested for DUI in Romeoville (he was found innocent). That investigation, assigned to Lt. Mark Turvey, has been going on for over l

tle bomber who attacked a home on Evergreen Avenue. The officers who allegedly knew they were arresting an innocent man for breaking a park sign never faced an internal investigation. The officer who allegedly beat another resident whose photos of his battered face appeared in this newspaper has not been charged. The case of an officer who was accused by a resident of stealing marijuana and money from an apartment is supposedly still under investigation. The thief who robbed a local Loan Store has not been caught, there have not been any composite photos circulated. There is no word that a composite was made. No one has been accused or arrested for intentionally running a man down with an ATV. In that case police took no photos, no tire mark casts, no paint samples, nothing. A man was

drive the men to a number of ATMs after which his cell phone was taken and he was released. No pictures, no public warnings; did it occur to the police to dust for fingerprints inside the vehicle? Did they check if the cell phone was used? Did they check the number(s) that may have been called from his cell phone?

Even when the they have a likely suspect in their midst, e.g., the cop who arrested Robert Taylor, the cop who arrested the innocent kid for breaking a sign, the cop who allegedly beat the boy in an ambulance and at the hospital, and the one who was accused of stealing marijuana and money, they can't make a case. The Romeoville Police could call the police—the State Police—the Will County State's Attorney—the federal authorities; they have the expertise to do what the Romeoville Po-

# Romeoville cop accused of stealing marijuana and cash

By: John Gabriel/TW | jgabriel@timesweeklynews.com

On Jan. 12, the Times Weekly received a call from a tipster who claimed that a Romeoville Police officer had forced his way into an apartment where he stole marijuana and money. The Times Weekly became aware that the victim in this incident had filed multiple affidavits with certain authorities in which he laid all of the facts before them while exposing himself to possible charges. At the request of one of those agencies, the Times Weekly agreed not to publish this story while there was a chance that it could interfere with the ongoing investigations.

At about 1 a.m., on Jan. 12, two young men went to a Romeoville convenience store to purchase something known as a blunt wrap; marijuana can be wrapped in a blunt wrap for smoking. When the two men, Dan Warren 19 and Michael Truschka 18, returned to the apartment of Truschka's girlfriend, Ashley Alvarez 18, on Fair Meadow Drive in Romeoville they saw police patrol cars at the building. The police were investigating a disturbance at the rear of the apartment complex after someone reported an altercation there.

According to Michael Truschka's affidavit, three patrolmen were in the hallway when Truschka and Warren entered through the front door. Truschka says that one of those patrolmen, Michael Michienzi, Star 357, immediately accosted him, ordered Truschka to stop, demanded identification, and proceeded to question him. Truschka said Officer Michienzi became mean and told him that he wanted to enter Truschka's girlfriend's apartment to

search it. Truschka claims he refused to allow the officer to enter the apartment and refused to allow him to search it.

The affidavit says, "Officer Michienzi became hostile and began shouting at the Affiant. He steadily walked toward him until the Affiant was backed into a corner of the hallway. Officer Michienzi yelled, 'I want into that _ _ _ _ apartment or I'll get a warrant'. The Affiant still refused to allow the officer into the apartment. Then Officer Michienzi yelled, 'If you don't let me into that _ _ _ _ apartment I'm going to _ _ _ _ you up good'. The intimidation continued for about five minutes or more."

The affidavit says Truschka became increasingly afraid and intimidated and then, believing he had no other choice entered the apartment with Officer Michienzi. Upon entering, Michienzi encountered Ashley Alvarez the rightful lessee of the apartment and ordered her to leave; she complied and went into the hallway unaware of why she was ordered out of her apartment.

Officer Michienzi is alleged to have pushed Truschka's face against a front room wall and searched him while Truschka stood with his hands clasped together behind his head. The officer searched the front room and then proceeded, with Truschka, to the bedroom where there is a bed and a large armoire that has doors across its upper half. Officer Michienzi searched it and discovered a 1-gram packet of marijuana, searching further; he found 12 more 1-gram packets inside a plastic cup. Officer Michienzi

then handcuffed Truschka and began shouting, "Where's the _ _ _ _ money?" Michienzi found $60.00 and shouted that he wanted the rest of the money. Truschka told him he did not have anymore, only the $60.00

The affidavit says officer Michienzi placed the money in his pocket and put twelve 1-gram packets of marijuana inside his patrolman's coat which he zipped shut. Officer Michienzi told Truschka, "I'll tell them [the other officers on the scene] I found a gram and I'll make that disappear". The officer then told Truschka, "I'll be seeing you in a week and if I don't get what I want I'll charge you with a felony," he removed the handcuffs and left the apartment.

Truschka says that after Officer Michienzi departed, his companion Dan Warren contacted Police Sergeant Christopher Burne, Star 338, shouting and out of control, Warren told Sgt. Burne that Michienzi had stolen the marijuana and the $60.00. No action was taken until recently when Officer Brant Hromadka was assigned to investigate the incident. It is unclear whether that investigation began before or after the other two agencies took an interest in the case.

The police department would be hard-pressed to bring charges against Truschka at this point since Michienzi had no warrant, he cannot establish



CR

10 S. Ch
Suite
Jolie

Repair
1 Hour

Relines
2 Hour

Partials
14 Days



IMP
4 impla

> FROM 2 **Clinton, Obama still in dead heat...**

0.7 percent and Utah with 1 percent.

Basically, what they say about him not winning the

She gained 823 delegates by winning Arizona, California, New Jersey, Oklahoma, Arkansas, Massachusetts, New York,

The next major primaries are Virginia, Maryland and Washington, D.C.

that the marijuana belonged to Truschka, and did not read Truschka his rights; and their one and only witness, Officer Michienzi, would be quizzed in court on the allegations contained in the affidavit. Two independent law enforcement agencies, who have asked not to be named for the time being, have apparently found enough merit in the case to conduct their own investigations. It is not known which officers, if any, have been questioned by them. Officer Michienzi could not be reached for comment but Officer Hromadka did return our call to say all inquiries must go through Lt. Mark Turvey, he added that Turvey will not have any information on the investigation until it is completed.

Recent, similar cases in which officers were accused of stealing drugs and money from people in Chicago brought a number of indictments of certain officers who are now going to court on those charges. Reports say they will face significant prison sentences if convicted.

# RIMINAL & FAMILY LAW

## Judith DeVriendt
### Attorney At Law
*Former Will County Assistant States Attorney*
*Chief of Auto Theft Unit • Felony Prosecutor*

**FAMILY LAW**          **CRIMINAL LAW**

Chicago
ite 100
oliet

| FAMILY LAW | | CRIMINAL LAW | |
| --- | --- | --- | --- |
| • Adoption | • Divorce | • Drugs | • Juvenile |
| • Child Support | • Domestic | • Theft | • DUI |
| • Custody | Violence | • Weapons | • Traffic |

## 815-723-8300

airs in $50⁰⁰
our

nes in $100⁰⁰
ours

als in $600⁰⁰
ays

# Custom Made DENTURES
$450⁰⁰
• Full Upper or Lower
• Can Be Ready in 48 Hours

# PLANT LOWER DENTURE
$2,000⁰⁰
plants & custom lower denture
e ready in 72 hours