IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WILLIE BROWN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 08 CV 1577 |
| ) | |
| VILLAGE OF ROMEOVILLE, et al., ) | Judge Holderman |
| ) | Magistrate Judge Ashman |
| Defendants. ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS COUNTS III-VII OF THE COMPLAINT**

**ALLEGATIONS IN PLAINTIFF'S COMPLAINT**

Plaintiff Willie Brown ("Brown") is a 53 year old African American man (Comp. ¶ 4). Defendant Village of Romeoville ("Romeoville") is a municipal corporation which employs Defendant police officers Daniel Zakula and James Sloup (Sloup is referred to in Brown's Complaint as "Officer Star # 348"), as well as Defendant Romeoville records supervisor Karen Showers (Comp. ¶¶ 6-8).

On October 30, 2007, Brown was driving his 1991 Civic wagon eastbound on Airport Road a few car lengths behind a white automobile that had allegedly been abruptly stopping and starting (Comp. ¶¶ 11-12). Brown attempted to pass the white auto but the driver of the white auto accelerated her vehicle so as to interfere with Brown's attempt to safely drive around the white auto (Comp. ¶¶ 13-14). The driver of the white auto allegedly also gave Brown "the middle finger" and shouted racial epithets at Brown (Comp. ¶ 15). Shortly thereafter, while at the intersection of Airport and Weber Roads, Brown observed two Romeoville squad cars

1

approaching with their emergency lights flashing (Comp. ¶ 16). The two squad cars pulled up behind Brown's car and Officers Zakula and Sloup exited their respective squad cars (Comp. ¶¶ 17-18). The two officers then informed Brown that the driver of the white auto had called in a complaint against him and that Brown was going to be arrested for disorderly conduct (Comp. ¶¶ 19-21). The officers searched the interior of Brown's car, and Brown's vehicle was then towed and impounded (Comp. ¶ 22). When asked by Brown whether his vehicle could be taken by his wife, Officer Zakula advised Brown that Romeoville has a policy requiring the impounding of vehicles after an arrest (Comp. ¶ 23).

After being booked, Brown was required to pay a $100 cash bond (Comp. ¶ 30), as well as a $300 administrative towing fee (Comp. ¶ 31). Brown was afforded an administrative hearing on November 20, 2007 to contest the towing charges (Comp. ¶¶ 33-34; Exhibit 3 attached to the Complaint). The hearing officer, a Romeoville police Lieutenant, found that the Defendant officers had acted properly and that Brown would therefore not be reimbursed the $300 administrative towing fee that he had previously paid (Comp. ¶ 34; Exhibit 3 attached to the Complaint).

The disorderly conduct case against Brown (charged as an ordinance violation case by Romeoville) was set for a preliminary hearing on December 10, 2007 and for trial on January 14, 2008 (Comp. ¶ 35). Prior to December 10, 2007, Brown submitted written Freedom of Information Act ("FOIA") requests seeking the police report authored in connection with his arrest, but Defendant Showers sent Brown a letter denying Brown's request (Comp. ¶¶ 36-37; Exhibit 4 attached to the Complaint). In the letter, Showers stated that Brown is currently a defendant in a pending court action, that the Romeoville police report would be produced upon

the receipt of a proper court order, and that Brown could call Showers should he have any questions about this matter (Exhibit 4 attached to the Complaint). Brown subsequently submitted a request to produce documents in his criminal case, seeking video and audio recordings from the Defendants' squad cars, as well as a copy of the police report and the criminal complaint filed against him (Comp. ¶ 39). On January 14, 2008, the attorney assigned to handle the ordinance violation case, Lawrence Kaschak, mailed Brown a copy of the police report, arrest report, complaint and bail bond in connection with this matter (Comp. ¶ 39). On January 14, 2008, neither Officers Zakula and Sloup nor the alleged victims (in the white auto) appeared at court and attorney Kaschak advised Judge Raymond Nash that the disorderly conduct charges against Brown were being voluntarily dismissed (Comp. ¶¶ 40-41). On January 24, 2008, Brown received a $100 check as reimbursement for the $100 cash bond that Brown had provided on October 30, 2007 (Comp. ¶ 42) but Brown never received his administrative towing fee back (Comp. ¶ 43).

## ARGUMENT

### I. PLAINTIFF'S EXCESSIVE BAIL CLAIM SHOULD BE DISMISSED

In Count III, Brown alleges that Officer Zakula's allegedly wrongful arrest of him led to Brown having to pay a $100 bail and that bail was set because Brown had expressed his personal opinion that he was being unlawfully discriminated against (Comp. ¶ 68). Brown claims that the imposition of a $100 bail bond violated the Eighth Amendment's prohibition on excessive bail, as protected by 42 U.S.C. § 1983, even though Brown received his $100 back when the criminal charges against him were dropped (Comp. ¶¶ 41-42).

3

Though there is no absolute right to be released on bail or bond, a governmental body cannot demand excessive bail under the United States Constitution. U.S. Const, Art. VIII; Broussard v. Parish of Orleans, 318 F.3d 644 (5th Cir. 2003), cert. denied, 539 U.S. 915 (2003). Bail may not be used to oppress a criminal defendant since the constitutional prohibition against excessive bail exists to protect a defendant's right to prepare his defense and to protect his presumption of innocence. 8 C.J.S. Bail § 10. To determine whether bail is excessive in a particular case, the amount of bail must be compared against the nature of the offense and the circumstances under which the offense was committed. Id. Generally, a court compares the amount set as bail by the government against the interest the government is seeking to protect.

In Payton v. County of Carroll, 473 F.3d 845 (7th Cir. 2006), the Seventh Circuit rejected an Eighth Amendment claim brought by a putative class of arrestees challenging an Illinois statute which allowed sheriffs to charge an administrative fee for posting bond above and beyond the bond itself. The Court in Payton surveyed numerous other courts, including the Supreme Court, which have discussed the "modern practice of requiring a bail bond" and how that practice "serves as additional assurance of the presence of the accused." 473 F.3d at 848, citing Stack v. Boyle, 342 U.S. 1, 72 S.Ct. 1 (1951). Since the imposition of a cash bond helps assure that an accused will later appear at trial, the Eighth Amendment is only violated when bail is set at a figure higher than an amount reasonably calculated to fulfill this purpose. Id; Lyman v. City of Albany, 536 F.Supp.2d 242 (N.D.N.Y. 2008) (releasing arrested protester on $400 bail was reasonably related to legitimate governmental objectives of ensuring the suspect's presence at trial; $400 was not constitutionally unreasonable amount for charge of violating restraining order).

4

In light of Payton and the general principles outlined above, it is readily apparent that the facts here do not support an "excessive bail" claim under the Eighth Amendment. Defense counsel has been unable to find any case where a court found that the Eighth Amendment was violated when the bail in question was so nominal. See e.g. Granger v. Slade, 361 F.Supp.2d 588 (S.D. Mis.. Jackson. Div. 2005) (bail was not excessive where an arrestee was able to secure his release on bond for $125 on the night of his arrest and was released from jail after an hour or two); Roberts v. City of Forest Acres, 902 F.Supp. 662 (D.S.C. Columbia. Div. 1995) (bail of $726 for speeding and disorderly conduct was not unconstitutionally excessive, despite claims that bail was set by police officers instead of magistrate); Ernst v. Borought of Fort Lee, 739 F.Supp. 220 (D.N.J. 1990) ($525 bail imposed on defendant arrested for suspended vehicle registration was not excessive within the meaning of the Eighth Amendment). In this case, Brown was charged in the ordinance violation case with disorderly conduct for alarming and disturbing the two purported victims, and the police required only that Brown post a mere $100 as bail (Exhibit 5 attached to the Complaint). In conclusion, since the government has the right to impose a reasonable bail to ensure a criminal defendant's appearance at trial, and given the nominal amount of the bail involved in this case, Brown's Eighth Amendment claim cannot stand.

**II. PLAINTIFF'S CONSPIRACY CLAIM SHOULD BE DISMISSED DUE TO PLAINTIFF'S FAILURE TO PROVIDE ANY FACTUAL ALLEGATIONS SUPPORTING HIS CLAIM AND FURTHER BECAUSE PLAINTIFF'S CONSPIRACY CLAIM IS BARRED BY THE INTRA-CORPORATE CONSPIRACY DOCTRINE**

In Count IV, Brown alleges that the two arresting officers, Zakula and Sloup, conspired with each other to intimidate and oppress Plaintiff, in violation of 42 U.S.C. § 1985(3). Section 1985(3) prohibits racially motivated conspiracies to interfere with a citizen's civil rights. To prevail on a § 1985 conspiracy claim, a plaintiff must allege: (1) the existence of an agreement; (2) if the agreement is not overt "the alleged acts must be sufficient to raise the inference of mutual understanding" ( *i.e.,* the acts performed by the members of a conspiracy "are unlikely to have been undertaken without an agreement"); and (3) "a whiff of the alleged conspirators' assent . . . must be apparent in the complaint." Amundsen v. Chicago Park District, 218 F.3d 712, 718 (7th Cir. 2000). The second element outlined above essentially means that a § 1985 claim must be "supported by some factual allegations suggesting a 'meeting of the minds.'" Amundsen v. Chicago Park District, 218 F.3d 712, 718 (7th Cir. 2000), quoting Kunick v. Racine County, Wisconsin, 946 F.2d 1574, 1580 (7th Cir. 1991). Additionally, to state a claim under 42 U.S.C. § 1985(3), a plaintiff must also allege that the conspiracy was "based on some class based animus." Malsh v. Austin, 901 F.Supp. 757, 763-64 (S.D.N.Y. 1995).

In § 1985 cases, vague and conclusory allegations of conspiracy do not state a claim upon which relief can be granted. Amundsen, 218 F.3d at 718; Sampson v. Yellow Cab Company, 55 F.Supp.2d 867, 869 (N.D.Ill. 1999); Copeland v. Northwestern Memorial Hospital, 964 F.Supp. 1225, 1235 (N.D.Ill. 1997). In this case, however, Brown's allegations of conspiracy are, at best, conclusory. For example, Brown alleges that the two officers committed

6

overt acts in furtherance of the conspiracy but Brown does not identify what overt acts were committed by the officers in furtherance of the conspiracy. In particular, there are no allegations in the Complaint that Officer Sloup did anything improper or committed any overt acts in furtherance of the purported conspiracy. Similarly, there are no factual allegations in the Complaint which show that there was ever a "meeting of the minds" between Zakula and Sloup to falsely arrest and maliciously prosecute Brown, let alone to do so for racial reasons. To call Brown's allegations of conspiracy "meritless" is to be charitable. In fact, Brown's conspiracy claim is the sort of claim "that does not come within shouting distance of a constitutional grievance ...." George v. Smith, 507 F.3d 605, 608 (7th Cir. 2007).

Finally, even if Brown had asserted sufficient factual allegations to support a conspiracy claim, such a claim would be barred under the intra-corporate conspiracy doctrine, which holds that a conspiracy cannot exist between members of the same entity. Payton v. Rush-Presbyterian-St. Luke's Med. Ctr., 184 F.3d 623, 632 (7th Cir. 1999). The intra-corporate conspiracy doctrine applies to municipal employees except in "egregious circumstances." Kaupas v. Village of University Park, 2003 WL 22048173 (N.D.Ill), citing Payton, 184 F.3d at 633. The Seventh Circuit has explained that such egregious circumstances do not include every instance of invidiously discriminatory motivation but rather exist only when employees had an independent personal stake in the outcome of a matter and thereby were "motivated *solely* by personal bias." Id. citing Hartman v. Bd. of Trustees of Cmty. College, 4 F.3d 465 (7th Cir. 1993). Since the two alleged conspirators in this case are both Romeoville police officers and there are no allegations that suggest that the officers had any personal stake in Brown's plight or

7

were otherwise motivated by a personal bias against Brown, the intra-corporate conspiracy doctrine compels the dismissal of Count IV.

### III.     PLAINTIFF'S "INDIVIDUAL DIGNITY" CLAIM SHOULD BE DISMISSED

In Count V, Brown alleges that Officer Zakula violated his "individual dignity" when Brown was falsely arrested and maliciously prosecuted by Romeoville (Comp. ¶ 76), in violation of Article I, Section 20 of the Illinois Constitution and 42 U.S.C. § 1983. Specifically, Brown complains that Officer Zakula's signing of a written complaint "portrayed criminality toward Brown's public reputation and character" and led to Brown suffering diminished "credibility and respectability" with the judge who was set to preside over his ordinance violation case (Comp. ¶¶ 41, 77).

Count V should be dismissed. For starters, the nature of Count V is unclear. To the extent that Brown is complaining in Count V of a false arrest or malicious prosecution in violation of 42 U.S.C. § 1983, Count V is redundant of Count II and therefore superfluous. Of course, if Brown is really attempting to base his "individual dignity" claim on the Illinois Constitution, Count V should still be dismissed under Illinois case law.

Article I, Section 20 of the Illinois Constitution states that "to promote individual dignity, communications that portray criminality, depravity or lack of virtue in, or that incite violence, hatred, abuse or hostility toward, a person or group of persons by reason of or by reference to religious, racial, ethnic, national or regional affiliation are condemned." While Section 20 of the Illinois Constitution provides a clear expression of public policy in Illinois, Section 20 is "purely hortatory," a kind of "constitutional sermon" so to speak, and was never

intended to establish any new or independent causes of action. Irving v. Marsh, Inc., 46 Ill.App.3d 162, 165, 360 N.E.2d 983 (3rd Dist. 1977). In Irving, a retail store employee referred to a customer as an "arrogant nigger" and the customer sued under Section 20's "individual dignity" clause. The Third District Appellate Court rejected the customer's lawsuit, holding that Section 20 "creates no private cause of action, and it impose no limitation on the powers of government." Id. citing Bill of Rights Committee Report (as set out in the Constitutional Commentary to Section 20).

Irving was reaffirmed 25 years later in AIDA v. Time Warner Entertainment Company, L.P., 332 Ill.App.3d 154, 772 N.E.2d 953 (1st Dist. 2002), which involved a challenge under Section 20 by a non-profit organization against the producers of "the Sopranos" television show. According to the plaintiff in that case, "the Sopranos" portrayed Italian-Americans in a negative light and therefore violated the "individual dignity" of Italian-Americans. However, the First District Appellate Court reaffirmed the core principles set out in Irving, holding that the "plain and ordinary meaning of [Section 20] is to condemn such communications, not to make them unlawful." Id. at 162.

In sum, Brown's "individual dignity" claim is not supported under either 42 U.S.C. § 1983 or Section 20 of the Illinois Constitution. Accordingly, Count V of Brown's Complaint should be dismissed.

9

### IV. PLAINTIFF'S "ABUSE OF PROCESS" CLAIM IS NOT A RECOGNIZED CONSTITUTIONAL CLAIM AND THEREFORE IS SUBJECT TO DISMISSAL

In Count VI, Brown alleges that the two Defendant officers abused legal process, in violation of 42 U.S.C. § 1983, when they commenced legal proceedings to intimidate and oppress Brown. As discussed below, however, there are several problems with Count VI.

Abuse of process (sometimes also referred to as malicious abuse of process) is the misuse of proper process to effect an object not within its proper scope. Doyle v. Shlensky, 120 Ill.App.3d 807, 458 N.E.2d 1120 (1st Dist. 1983). Abuse of process differs somewhat from malicious prosecution in that a malicious prosecution is process without probable cause, essentially a prosecution upon an accusation that has no foundation in fact. Id. at 815. On the other hand, an action for abuse of process lies for the improper use of process after process has been issued. Id. citing Ammons v. Jet Credit Sales, Inc., 34 Ill.App.2d 456, 181 N.E.2d 601 (1st Dist. 1962). The mere institution of a legal proceeding, even with a malicious motive, does not constitute an abuse of process. "Process" for purposes of an abuse of process claim is defined as "any means used by the court to acquire or to exercise its jurisdiction over a person or over specific property." Id. Process is issued by a court, under its official seal and must be distinguished from pleadings, which are created and filed by the litigants.

Two elements are necessary to plead a cause of action for abuse of process: (1) the existence of an ulterior purpose or motive for the use of regular court process and (2) an act in the use of the process not proper in the regular prosecution of the proceedings. Id. First, the defendants first must have intended to use a legal action to accomplish some result which could not be accomplished through the suit itself. Second, the process must have accomplished a result

which is beyond the purview of the process itself, or which compelled the party to do some collateral thing which he would not otherwise have legally been compelled to do. Id. at 817.

Given the requirements outlined above, it is clear that Count VI should be dismissed. While Brown alleges that the criminal proceedings against him were designed to "intimidate and oppress" Brown (Comp. ¶ 79), Brown acknowledges that the ordinance violation proceedings against him were voluntarily dismissed by Romeoville (Comp. ¶ 41). More importantly, there are no factual allegations in the Complaint indicating that the prosecution against Brown was instigated for an ulterior purpose or motive or that the prosecution forced Brown to do something that he would not have otherwise been compelled to do. In short, it appears that Brown is not really asserting an abuse of process claim but rather a malicious prosecution claim, which no longer exists under Seventh Circuit precedent as a viable claim under 42 U.S.C. § 1983. Newsome v. McCabe, 256 F.3d 747 (7th Cir. 2001).

Even if Brown had properly alleged all of the elements necessary to support an abuse of process claim, Newsome suggests that such a claim is not viable in the Seventh Circuit. In Newsome, the Seventh Circuit held that no malicious prosecution claim can lie under § 1983 since a plaintiff can properly assert such a claim in state court and due process does not require the "constitutionalization" of such a claim. 256 F.3d at 751. In fact, there is no reason to believe that the Seventh Circuit would treat a federal abuse of process claim any differently than a federal malicious prosecution claim and, thus, Newsome compels the dismissal of Brown's federal abuse of process claim. See also Koch v. Schneider, 550 F.Supp. 846, 850-52 (N.D.Ill. 1982) (common law torts for which there are adequate state court remedies are not ordinarily

cognizable under the Civil Rights Act; "the tort of misuse of legal procedure, without more, does not give rise to the level of a constitutional wrong to be remedied by § 1983").

### V. PLAINTIFF'S SOLE CLAIM AGAINST RECORDS SUPERVISOR K. SHOWERS SHOULD BE DISMISSED

Brown's Complaint includes only one (1) count, Count VII, against Romeoville records supervisor, Karen Showers. In Count VII, Brown alleges that Showers discriminated against him on account of his race, therein violating 42 U.S.C. 1981(a), when she failed to provide a police report and the criminal complaint in response to Brown's FOIA request (Comp. ¶¶ 36-37).

Count VII should be dismissed for several reasons. First, § 1981 prohibits discrimination on the basis of race in the making and enforcement of contracts. In this case, there is no contract whatsoever and there is certainly no evidence that Showers failed to provide Brown with records on account of his race. While federal courts require only "notice pleading," the Supreme Court recently made clear in Bell Atlantic v. Twombley, 127 S.Ct. 1955 (2007), that Rule 8(a) of the Federal Rules of Civil Procedure requires that a plaintiff plead enough factual matter to show that his claim is "plausible." In this case, there is a complete absence of any allegations in the Complaint which plausibly suggest that Showers handled Brown's FOIA request differently on account of his race.

Second, an alleged failure by a local government official to comply with FOIA does not ordinarily create a constitutional violation (under § 1981(a) or any other federal provision for that matter). Indeed, "federal courts do not enforce state law by characterizing violations of state law as offenses against the Constitution." Saukstelis v. City of Chicago, 932

F.2d 1171, 1174 (7th Cir. 1991); see also Paul v. Davis, 424 U.S. 693, 96 S.Ct. 1155 (1976) (stating that the Fourteenth Amendment should not be made a font of tort law). Given this precedent, the handling of an Illinois FOIA request by a local government official is a subject matter properly left to state courts, not federal courts. To be sure, Illinois' FOIA statute provides a mechanism for appealing the denial of a FOIA request (5 LCS 140/10) and there is no indication in the Complaint that Brown ever attempted to avail himself of this avenue of appeal.

Even if FOIA violations were properly remedied in a federal suit, Plaintiff has still pled himself out of court with respect to Count VII. FOIA generally provides members of the public with access to certain public records for inspection or copying. 5 ILCS 140/3(a). FOIA, however, is subject to several exemptions, which are outlined under § 7 of FOIA (5 ILCS 140/7). For example, § 7(1)(b)(v) provides that information which reveals the identity of individuals who have filed complaints with law enforcement is exempt from disclosure under FOIA. More importantly, under Section 7(1)(c), records compiled by law enforcement agencies for law enforcement purposes are generally exempt from disclosure under FOIA, at least to the extent that disclosure could interfere with ongoing legal proceedings.

The allegations in the Complaint show that no FOIA claim, constitutional or otherwise, exists against records supervisor Showers. To the contrary, Plaintiff simply alleges that he submitted FOIA requests for a police report and the criminal complaint, and that Showers, in her capacity as Romeoville's records supervisor, told him in a letter on November 7, 2007 that he was not entitled to the documents given his status as a defendant in a still pending court action (Exhibit 4 attached to the Complaint). Showers further advised Brown that she could be contacted directly if Brown had further questions about Showers' letter.

Of course, the criminal complaint against Brown is a public filing and Brown could have obtained the criminal complaint by contacting either the Will County Circuit Clerk or the prosecuting attorney in the ordinance violation case. In fact, Brown acknowledges that he subsequently tendered a request to produce documents on the Village's prosecutor and that he obtained the documents that he was seeking from the Village's prosecutor on January 14, 2008 (Comp. ¶¶ 38- 39; Exhibit 5 attached to the Complaint). Given these allegations, Count VII should be dismissed.

## CONCLUSION

For all of the above reasons, Defendants respectfully request that this Court dismiss Counts III-VII of the Complaint and that Defendants Showers be dismissed from this case in its entirety.

    S/JASON W. ROSE
    Jason W. Rose, Bar Number 06208130
    Michael D. Bersani, Bar Number 06200897
    Attorney for Defendants
    HERVAS, CONDON & BERSANI, P.C.
    333 Pierce Road, Suite 195
    Itasca, IL 60143-3156
    Phone: 630-773-4774
    Fax: 630-773-4851
    jrose@hcbattorneys.com
    mbersani@hcbattorneys.com

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIE BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 08 CV 1577 |
| | ) | |
| VILLAGE OF ROMEOVILLE, et al., | ) | Judge Holderman |
| | ) | Magistrate Judge Ashman |
| Defendants. | ) | |

**CERTIFICATE OF SERVICE**

    I hereby certify that on May 23, 2008, I electronically filed the foregoing *Defendants' Memorandum of Law in Support of Defendants' Motion to Dismiss Counts III-VII of the Complaint* with the Clerk of the Court using the CM/ECF system, and that I have mailed by United States Postal Service, certified mail, return receipt requested, the document to the following non CM/ECF system participant:

**TO:**    Willie Brown, *Pro Se*
           601 Theodore Avenue
           Joliet, IL 60435

                                        S/JASON W. ROSE
                                        Jason W. Rose, Bar Number 06208130
                                        Michael D. Bersani, Bar Number 06200897
                                        Attorney for Defendants
                                        HERVAS, CONDON & BERSANI, P.C.
                                        333 Pierce Road, Suite 195
                                        Itasca, IL 60143-3156
                                        Phone: 630-773-4774
                                        Fax: 630-773-4851
                                        jrose@hcbattorneys.com
                                        mbersani@hcbattorneys.com