FILED
JUL 21, 2008
JUL 2 1 2008
JUDGE JAMES F. HOLDERMAN
UNITED STATES DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| **WILLIE BROWN,** | ) |
| | ) |
| Plaintiff in *Pro se,* | ) |
| | ) CIVIL ACTION NO. |
| - vs - | ) **08 CV 1577** |
| | ) JURY TRIAL DEMANDED |
| **VILLAGE OF ROMEOVILLE,** | ) |
| **ET. AL.,** | ) |
| | ) Judge James F. Holderman |
| Defendants. | ) Magistrate Judge Martin C. Ashman |

### NOTICE OF FILING

**TO: HERVAS, CONDON & BERSANI, P.C.**
    Attn: Attorney Jason W. Rose
    333 Pierce Road, Suite 195
    Itasca, Illinois  60143-3156

    *PLEASE TAKE NOTICE* that on the 18th day of July, 2008, I caused to be filed with the Clerk of the U.S. District Court for the Northern District of Illinois Eastern Division located at 219 South Dearborn Street, 20th Floor, Chicago 60604, an original plus one (1) copy of Plaintiff's verified first amended complaint. A copy of the foregoing verified first amended complaint is attached hereto and served upon you herewith.

               *Respectfully submitted*

               **By** _____
                    **WILLIE BROWN**
                    **Plaintiff in *Pro se***

Willie Brown
601 Theodore Street
Joliet, Illinois  60435
(815) 740-1467

### CERTIFICATION OF SERVICE

    The undersigned certifies under penalty of perjury under the Laws of the United States of America that a copy of the foregoing documents were served upon the defendants' attorney at his office of record as addressed above by placing the same in a sealed envelope with postage fully prepaid thereon and placing the same in a U.S. Post Office Box in the City of Joliet/Will County, Illinois on the 18th day of July, 2008, before the hour of 4:00 p.m.

               _____
                  Willie Brown



### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

**F I L E D**

**JUL 21, 2008**

JUDGE JAMES F. HOLDERMAN
UNITED STATES DISTRICT COURT

| | |
|---|---|
| **WILLIE BROWN**<br>601 Theodore Street<br>Joliet, Illinois 60435<br>(815) 740-1467<br><br>     Plaintiff in *Pro se*,<br><br>  - vs -<br><br>**VILLAGE OF ROMEOVILLE**, sued in<br>its official capacity as a home rule municipal<br>corporation organizing and existing under the<br>Laws of the State of Illinois and located in<br>the County of Will,<br>**POLICE OFFICER DANIEL ZAKULA,**<br>Star # 374, sued in his individual and personal<br>capacy as an agent, servant and/or employee<br>of the Village of Romeoville Police Department,<br>**CHIEF OF POLICE, ANDREW J. BARTO,**<br>sued in his individual and personal capacity as<br>an agent, servant, and/or employee of the<br>Village of Romeoville Police Department,<br>**POLICE OFFICER JAMES SLOUP,**<br>Star # 348, sued in his individual and personal<br>capacity as an agent, servant, and/or employee<br>of the Village of Romeoville Police Department,<br>**K. SHOWERS,** sued in her individual and<br>personal capacity as an agent, servant and/or<br>employee of the Village of Romeoville,<br>10-30 Montrose Drive<br>Romeoville, Illinois 60446<br><br><br>     Defendants. | CIVIL ACTION NO.<br>**08 CV 1577**<br>JURY TRIAL DEMANDED<br><br>Judge James F. Holderman<br>Magistrate Judge Martin C. Ashman |

## V E R I F I E D   F I R S T   A M E N D E D   C O M P L A I N T

The Plaintiff **WILLIE BROWN** ("Brown") by and through himself, Willie Brown

and complaining of defendants Village of Romeoville (the "Village"), and Village of

Romeoville Police Officer Daniel Zakula Jr. Star # 374 ("Zakula"), and Police Officer

James Sloup, Star # 348 ("Sloup"), and Village of Romeoville Records Supervisor, K. Showers ("Showers").

## **P R E L I M I N A R Y   S T A T E M E N T**

1. This action is brought forth pursuant to Title 42 U.S.C. Section 1981(a), Title 42 U.S.C. Section 1983 and Title 42 U.S.C. Section 1985(3) seeking Actual, Compensatory, General and Punitive judgment damages for deprivation of rights and conspiracy to interfere with rights, while acting "Under Color Of" state law as Police Officers for the Village of Romeoville, and of rights guaranteed under the 4th, 8th, and 14th Amendments of the Constitution of the United States, as well as rights under Article I Section(s) 2 & 6 of the Constitution of the State of Illinois.

Plaintiff Brown contend that the stop, questioning of him, physical search of him and the seizure of him, along with the search, impounding and towing of his registered and fully insured automobile, and the charging of the $100.00 cash bond, and the charging of the $400.00 administrative tow fee, and the deprivation of being afforded an equal opportunity to make a contract to be able to purchase available public information requested pursuant to the Freedom of Information Act, and the deprivation of rights under Defendant Village of Romeoville Police Department General Order 4-605, and the individual defendant police officers causing the commencing of prosecution proceedings against him were committed without probable cause or other lawful justification, and represented overt acts performed pursuant to and in the furtherance of Mary R. Sanders and Amy M. Bova's scheme to misuse the proper use of defendant Village of Romeoville Police Department and the State of Illinois Judicial System in such a way as to intimidate, oppress and interfere with Plaintiff Brown in exercising his citizenship rights because of his racial nationality, African American, and Plaintiff Brown

2.

honestly and in good faith believe that he is entitled to federal court remedial action.

## II.  J U R I S D I C T I O N

2.    This action is brought pursuant to Title 42 U.S.C. Section 1981(a), and Title 42 U.S.C. Section 1983, Title 42 U.S.C. Section 1985(3) and the Fourth, Eighth and Fourteenth Amendments of the Constitution of the United States. Jurisdiction is founded upon Title 28 U.S.C. Section 1331 and 1341(3) and (4) and 1343, and the aforementioned constitutional and statutory provisions. This Court has supplemental jurisdiction over the state law false arrest, false imprisonment, malicious prosecution, defamation of character, intentional infliction of emotional distress and negligence claims of this action pursuant to Title 28 U.S.C. Section 1367(a) because they are so related to the claims under Title 42 of the United States Codes that they form the same cause or controversy under Article III of the Constitution of the United States.

## III.  V E N U E

3.    Venue is proper in this district pursuant to Title 28 U.S.C. Section 1391(b) because this is a civil action that is not founded solely on diversity of citizenship, and this district is where a substantial part of the events giving rise to this claim accrued, as well as is the district where the two (2) individual defendant police officers and the individual defendant records supervisor whom are the subjects of this action reside and are employed.

## IV.  P A R T I E S

4.    The Plaintiff, **WILLIE BROWN**, (sometimes hereinafter referred to as Plaintiff "Brown" at all relevant times mentioned hereinafter) is a 53 year old African American citizen of the United States, and a life long resident of the State of Illinois whose current address is 601 Theodore Street in the City of Joliet. Plaintiff Brown

is the owner and the licence operator of his registered and fully insured 1991 Civic Wagon vehicle utilized as his service vehicle.

Additionally, since June 2007, Plainitff Brown has been on prescription medication for medical treatment of a pre-existing buldging disc injury in his back affecting his nerves which cause numbness and pain in his right leg if allowed to be placed and left in a cramped position for an extended amount of time, and Plaintiff Brown walks with the aid of a cane.

5.    The Defendant, **VILLAGE OF ROMEOVILLE,** (sometimes hereinafter referred to as defendant "Village" at all relevant times mentioned hereinafter) is a home rule municipal corporation organized and existing under the Laws of the State of Illinois. Defendant Village is the employer of the individual defendant police officers, and, as such, is totally liable for the conduct of the individual defendant police officers, and is totally liable for the conduct of the defendant records supervisor. Defendant Village is being sued directly in Count I *Monell* claim and pursuant to the doctrine of respondeat superior in the related State law claims.

6.    The defendant, **ANDREW J. BARTO** (sometimes hereinafter referred to as defendant "Barto", at all relevant times mentioned hereinafter) is the duly appointed and sworn Chief of Police of the Village of Romeoville Police Department, and, as such, is totally responsible for the training, supervision, discipline, and control of all Police Officers employed by the Village of Romeoville Police Department. Defendant Barto is being sued directly in Count I *Monell* claim.

7.    The defendant, **D. ZAKULA JR.** (sometimes hereinafter referred to as defendant "Zakula" Star # 374, at all relevant times mentioned hereinafter) is a duly appointed and sworn police officer of the Village of Romeoville. On the 30th day

4.

of October, 2007 when engaging in conduct complained of, did so while acting in excess of the course and scope of his employment as an agent, servant and/or employee of defendant Village of Romeoville. Defendant Zakula is being sued in his individual and personal capacity as an agent, servant and/or employee of defendant **VILLAGE OF ROMEOVILLE.**

8.    The Defendant, **POLICE OFFICER JAMES SLOUP** Star # 348, (sometimes hereinafter referred to as defendant "Sloup", at all relevant times mentioned hereinafter) is a duly appointed and sworn police officer of the Village of Romeoville. On the 30th day of October, 2007, when engaging in the conduct complained of, did so while acting in excess of the course and scope of his employment as an agent, servant and/or employee of defendant Village of Romeoville. Defendant Sloup is being sued in his individual and personal capacity as an agent, servant, and/or employee of defendant **VILLAGE OF ROMEOVILLE.**

9.    The Defendant, **K. SHOWERS** (sometimes hereinafter referred to as defendant "Showers" at all relevant times mentioned hereinafter) is the duly appointed and sworn Records Supervisor of the Village of Romeoville. When engaging in conduct complained of, did so while acting in excess of the course and scope of her employment as an agent, servant and/or employee of defendant Village of Romeoville. Defendant Showers is being sued in her individual and personal capacity as an agent, servant and/or employee of defendant **VILLAGE OF ROMEOVILLE.**

10.    At all times material to this Verified First Amended Complaint, the individual defendant police officers and the defendant records supervisor were acting "Under the Color of" the statutes, ordinances, regulations, customs and usage of the State of Illinois,

5.

Village of Romeoville and the Village of Romeoville Police Department and Records Department.

## V.    FACTS COMMON TO ALL COUNTS

11.    I, **WILLIE BROWN**, being duly sworn and upon oath if called upon could competently testify to the following facts from my own personal knowledge.

12.    That on or about the 30th day of October, 2007, Plaintiff Brown was driving his 1991 Civic Wagon vehicle traveling eastbound on Airport Road in the Village of Romeoville.

13.    A white automobile was traveling in the same eastbound direction about 2 to 3 car lengths ahead of Plaintiff Brown.

14.    That on three (3) separate occasions, the white automobile came to an abrupt stop, as to indicate some change in direction other than the eastbound direction the white vehicle had been traveling.

15.    Plaintiff Brown attempted a left passing move around the white vehicle, and as he attempted to pass the white vehicle, the driver, a seemingly Caucasian-American female glanced over at him while accellerating the speed of the white vehicle as so to interfere with Plaintiff Brown's attempt to safely manuver around the white vehicle.

16.    After the driver of the white vehicle's third abrupt stopping and accelleration, Plaintiff Brown managed to safely manuver to get around in front of the white vehicle.

17.    As Plaintiff Brown was passing the white vehicle, the driver began exhibiting abrasive facial and middlefinger jestures and loudly shouted racial epithets - i.e., "Fucking Nigger, Fucking Nigger" - toward Plaintiff Brown.

6.

18.    That at the stop light at the intersection of Airport Road & Weber Road,
Plaintiff Brown was talking with his wife over his cell telephone, and he observed
through his vehicle's rear view mirror, the approaching of two of defendant Village
Police Department's patrol squad cars with their emergency lights flashing.

19.    That after Plaintiff Brown manuvered over to allow defendant Village's
Police Department patrol squad cars to pass. The two squad cars pulled up
behind Plaintiff Brown's vehicle.

20.    That after the two individual defendant police officers emerged from their
squad cars they approached Plaintiff Brown's vehicle. After which Plaintiff Brown
rolled down his vehicle's window and raised his hands in the air while informing
the two individual defendant police officers that his wallet was under his seat and
further suggested to the individual defendant police officers that they should
refrain from getting excited.

21.    The individual defendant police officers informed Plaintiff Brown that the
driver of the white vehicle had called in a complaint against Plaintiff Brown.

22.    After Plaintiff Brown tendered over his valid drivers license, car
registration, and current automobile insurance card. The two (2) individual
defendant police officers asked Plaintiff Brown what had occurred between
him and the driver of the white vehicle.

23.    In furtherance of the conspiracy and scheme, after Plaintiff Brown explained
what had occurred between him and the driver of the white vehicle. The two
individual defendant police officers informed Plaintiff Brown that the driver of the
white vehicle had called in a complaint against Plaintiff Brown and that they were

placing him under arrest for committing the offense of "Disorderly Conduct."

24.    In furtherance of the conspiracy and scheme, neither before nor after the two individual defendant police officers took plaintiff Brown into their custody did either one of the them inform plaintiff Brown of his Miranda rights.

25.    In furtherance of the conspiracy and scheme, without first asking to acquire Plaintiff Brown's permission to search his vehicle. The two individual defendant police officers conducted an interior search of Plainitff Brown's vehicle and informed Plainitff Brown that his vehicle was going to be impounded and towed.

26.    That General Order 4-605 establishes defendant Village of Romeoville Police Department's policy authorizing Towing and Impoundment Of Vehicles (A true and accurate copy of General Order 4-605 is attached to this verified first amended complaint, labeled "Exhibit 1").

27.    That defendant Village of Romeoville Police Department's General Order 4-605 does not provide any provisions allowing the impounding and towing of a vehicle after the operator is arrested under the particular set of conditions and circumstances underlining the arrest of Plaintiff Brown (A true and accurate copy G.O. 4-605 Appendix A Impoundment Qualified Violations, is attached to this verified first amended complaint, labeled "Exhibit 2").

28.    That defendant Village of Romeoville Police Department's General Order 4-605 provides provisions to prevent the impounding and towing of a vehicle after the operator has been arrested (A true and accurate copy of G.O. 4-605 Section G. Waiver Of Tow, is attached to this verified first amended complaint, labeled "Exhibit 3").

29.    That after Plaintiff Brown asked the two individual defendant police officers

8.

if he could call his wife to come and pick up his vehicle to prevent it from being impounded and towed. Defendant Zakula refused Plainitff Brown's request and stated that defendant Village has a policy authorizing the impounding and towing of Plaintiff Brown's vehicle under the conditions and circumstances of his arrest.

30.    While being transported to defendant Village's Police Station. Plaintiff Brown inquired about what the driver of the white vehicle had to say to the two individual defendant police officers to warrant his arrest. Defendant Zakula turned up the volume of his radio to drown out listening to what Plaintiff Brown was asking, and defendant Zakula did not respond to Plaintiff Brown's question.

31.    While Plaintiff Brown was being transported to defendant Village's Police Station, his right leg became very numb and very painful from being placed and left in a cramped position.

32.    As Plaintiff Brown was moving around in an effort to gain some comfort and relief from the emerging numbness and pain in his leg. Defendant Zakula finally turned down the volume on his radio, and asked Plaintiff Brown whether he had any other handcuff keys other than the set of keys seized from him by the other individual defendant police officer.

33.    Upon arrival at defendant Village's Police Station. The numbness and pain in Plaintiff Brown's leg and back, from sitting in a cramped position, had became so severe that defendant Zakula had to physically assist Plaintiff Brown with getting out of the back seat of defendant Zakula's patrol squad car.

34.    That defendant Village of Romeoville's Police Department adopted General

9.

Order 3-901 policy requires its Police Officers to produce a daily quota of issued traffic citations, administrative warning tickets and parking tickets (A true and accurate copy of General Order 3-901, is attached to this first amended complaint, labeled "Exhibit 4").

35.    During the period of time Plaintiff Brown was detained in defendant Village's Police Department. Defendant Zakula and another one of defendant Village's Police Department Patrol Officers, while laughing, began comparing their individual effort to make their monthly quotas for issuing citations and making arrests.

36.    After defendant Zakula subjected Plaintiff Brown to the booking procedures. Plaintuiff Brown requested a Personal Recognizance Bond to secure his release from custody. Defendant Zakula refused to grant the request, and required Plaintiff Brown to post a $100.00 cash bond to obtain his release from custody.

37.    In furtherance of the conspriracy and scheme, the 10th day of December, 2007 was set as the preliminary hearing date on Case No. 07 OV 8956, concerning the incident occurring on the 30th day of October, 2007. (A true and accurate copy of the $100.00 cash bond document is attached hereto and made part of this verified first amended complaint, labeled "Exhibit 5").

38.    In furtherance of the conspiracy and scheme Plaintiff Brown was subsequently required to pay a $400.00 Administrative Towing Fee to obtain the release of his vehicle from impoundment. After which Plaintiff Brown requested an adminstrative hearing to contest the unwarranted and unlawful impounding and towing of his vehicle. (A true and accurate copy of the Romeoville Police Department Tow Report, as well as a copy Plaintiff Brown's submitted Vehicle Post Tow/Impoundment Notice, are attached hereto and made part of this verified first amended complaint, labeled

"Exhibit 6").

39.    That on or about the 6th day of November, 2007, defendant Village of Romeoville Police Department's Operation Lieutenant, Mark Turvey, issued a notice scheduling November 20, 2007 hearing on Plaintiff Brown's October 30, 2007 submitted request for an administrative towing hearing (A true and accurate copy of the November 6, 2007 issued notice, is attached to this verified first amended complaint, labeled "Exhibit 7").

40.    Upon Plaintiff Brown's arrival at the requested administrative hearing, and without first requesting permission to conduct a search of Plaintiff Brown's person. One of defendant Village's Police Department Lt. imposed a full body search upon Plaintiff Brown's person.

41.    As oppose to being afforded the right to have an impartial party from defendant Village Manager's office to conduct the administrative hearing. One of defendant Village's Police Department's Lt. conducted the adminstrative hearing.

42.    After Plaintiff Brown explained the nature of the transaction which occurred between himself and the driver of the white vehicle. The Lt. claimed that the two individual defendant police officers had acted properly and that Plaintiff Brown would not be reimbursed with his $400.00 paid out to cover the administrative tow fee.

43.    That on or about the 21st day of November, 2007, defendant Barto issued his determination that the impound and towing of Plaintiff Brown's vehicle was justified (A true and accurate copy of defendant Barto's issued determination of November 21, 2007, is attached to this verified first amended complaint, labeled

"Exhibit 8").

44.    In furtherance of the conspiracy and scheme, neither before, nor during, nor immediately after the circuit court's preliminary hearing of December 10, 2007, was Plaintiff Brown tendered a personal copy of Case No. 07 OV 8956 complaint against him, and January 14, 2008 was set as the scheduled trial date.

45.    That defendant Village has a schedule of fees which citizens are required to pay in order to enter into a contract to purchase copies of available public information to include public information sought under the State of Illinois Freedom of Information Act.

46.    Plaintiff Brown, as a *pro se* defendant in Case No. 07 OV 8956, twice submitted a Illinois Freedom of Information Act Request to defendant Showers in an effort to enter into and/or make a contract with defendant Village to purchase copies of available public information pertaining to the incident occurring on the 30th day of October, 2007.

47.    After Plaintiff Brown verbally informed defendant Showers that he was proceeding *pro se* which entitled him to purchase the available public information in order to prepare his defense against Case No. 07 OV 8956 Disorderly Conduct charge. Defendant Showers denied affording Plaintiff Brown with an equal right to make and/or enter into a contract with defendant Village to purchase copies of available pubilic information sought under the Illinois Freedom of Information Act. (A true and accurate copy of defendant Showers' denial notice is attached hereto and made part of this verified first amended complaint, labeled "Exhibit 9").

48.    During Plaintiff Brown's initiated Discovery phase of Case No. 07 OV 8956, Plaintiff Brown submitted a Request For Production Of Document requesting the audio & video recordings from the two individual defendant police officers' squad cars, as well

as requested the video tape recordings from defendant Village's Police Department area, and requested a copy of the Police Incident Report, and a copy of the Disorderly Conduct offense filed against him, in reference to the occurrence of the 30th day of October, 2007.

49.    That on or about the 8th day of January, 2008, six (6) days prior to Case No. 07 OV 8956's   January 14, 2008   scheduled   trial   date.   Defendant Village's attorney, Lawrence M. Kaschak, mailed Plaintiff Brown a copy of most of the very same available public information documents which defendant Showers previously deprived him of his right to enter into a contract to purchase in reference to the occurrence of October 30, 2007. (A true and accurate copy of the documents provided by defendant Village's attorney, Lawrence M. Kaschak are attached hereto and made part of this verified first amended complaint, labeled "Exhibit 10").

50.    During the scheduled trial of January 14, 2008. Neither did either one of the two individual defendant police officers appear, nor did the alleged victims, Mary R. Sanders & Amy M. Bova appear. Nor did defendant Village's attorney Lawrence M. Kaschak afford the court with any justifiable reasons for the two individual defendant police officers and the alleged victims' failure to appear. Nor did defendant Village's attorney Lawrence M. Kaschak tender the requested audio/video tape recordings in reference to the occurrence of October 30, 2007, over to Plaintiff Brown.

51.    While standing before Associate Judge Raymond Nash. Defendant Village's attorney Lawrence M. Kaschak informed the court that Case No. 8956 offense of Disorderly Conduct alleged to have been committed by Plaintiff Brown during the

13.

occurences of October 30, 2007, was being voluntarily dismissed.

52.    On or about the 24th day of January, 2008, within two (2) weeks after the voluntary dismissal of the Disorderly Conduct charge. Plaintiff Brown received a $100.00 check from defendant Village as a reimbursement of the cash bond posted on October 30, 2007 to secure his release from being involuntary detained at defendant Village of Romeoville Police Department.

53.    That as of the date of the filing of this verified first amended complaint. Plaintiff Brown still has not received his $400.00 from defendant Village as a reimbursement of the administrative towing fee paid out on October 30, 2007.

54.    The attempted prosecution of Case No. 07 OV offense of Disorderly Conduct has been wholly terminated and determined in favor of Plaintiff Brown indicative of his innocence. Plaintiff Brown, by means of being falsely accused, falsely arrested, unwarrantly searched, having his vehicle unlawfully impounded and towed, having his physical injury severely aggravated, deprived of an equal opportunity to enter into a contact to purchase available public information sought under the Illinois Freedom of Information Act, and being subjected to arbitrary and capicuous prosecution proceedings, suffered loss of his individual freedom, and liberty, and suffered the loss of possession of his property, and suffered being deprived of his right to make a contract, and suffered great humiliation, agitation and pain of body and mind.

55.    At the time the two individual defendant police officers stopped, questioned, searched and arrested Plaintiff Brown. Neither did they have probable cause or any other lawful justification either to stop, or to question, or to search, or to arrest and charge Plaintiff Brown, allegedly committing the offense of Disorderly

14.

Plaintiff Brown, or would have given them a reason to cause the unlawful impounding and towing of Plaintiff Brown's vehicle, or would have given them a reason to cause the commencing of prosecution proceedings against Plaintiff Brown for allegedly committing the offense of Disorderly Conduct.

60.    The conduct of the two individual defendant police officers, as above described, was so arbitrary that it shocks the conscience and violates the decencies of civilized conduct and was done intentionally, maliciously, willfully and wantonly and/or with reckless disregard and gross negligence toward respecting and honoring Plaintiff Brown's citizenship rights under the Fourth, Eighth and Fourteenth Amendments of the Constitution of the United States, and rights under Article I Bill of Rights Section(s) 2 & 6, and Title 42 U.S.C. Section 1983, and Title 42 U.S.C. Section 1985(3).

61.    That it is a *customary practice* for Defendant Village of Romeoville Police Department to neglect properly instructing, supervising, training and controlling its police officers to prevent and discipline acts of constitutional abuse, particularly that of the two (2) individual defendant police officers' unlawful conduct occurring on the 30th day of October, 2007, as well as neglected to properly instruct its police officers in what constitutes unreasonable conduct under the Fourth, Eighth, and Fourteeth Amendments of the Constitution of the United States, and under Article I Bill of Rights Section(s) 2 & 6 of the Constitution of the State of Illinois. (True and accurate copies of the Times Weekly's investigative reporting news articles pointing out defendant Village of Romeoville Police Department's policy and pattern of condoning acts of constitutional abuse on the part of its various police patrol officers are attached hereto and made part of this verified first amended complaint,

15.

labeled "Exhibit 11").

62.    As a direct and proximate result of the above actions of the two individual defendant police officers. Plaintiff Brown was damaged, including the loss of his personal freedom, loss of his vehicle, loss of his $400.00, suffered painful agitation to his pre-existing physical injury, was subjected to arbitrary and capricious prosecution proceedings, and suffered loss of financial resources used to prepare for trial, and his public reputation and character was wrongfully criminalized within the rightthinking mind of Will County Associate Judge Raymond Nash.

63.    As a direct and proximate result of the scheme between the two (2) caucasian females occuppying the white vehicle and the two (2) individual defendant police officers. Plaintiff Brown was deprived of the full and equal benefits of his citizenship rights guaranteed under the Fourth, Eighth, and Fourteenth Amendments of the Constitution of the United States, as well as was deprived of his rights guaranteed under Article I Bill of Rights Section(s) 2 & 6 of the Constitution of the State of Illinois.

64.    As a direct and proximate result of defendant Showers' decision to deny affording Plaintiff Brown with an equal right to make and/or enter into a contract with defendant Village to purchase available public information sought under the Illinois Freedom of Information Act. Plaintiff Brown was deprived of his rights guaranteed under Title 42 U.S.C. Section 1981(a).

65.    Defendant Village's adopted "policy and practice" of condoning constitutional abuse on the part of its duly sworn police officers, as described above, shows gross

16.

negligence and/or reckless disregard toward honoring and respecting the federal and state rights of citizens in general, and Plaintiff Brown, in particular. Defendant Village's adopted "policy and practice" is also unreasonable under the Fourth, Eighth, and Fourteenth Amendments of the Constitution of the United States of America, and is also unreasonable under Article 1. Bill of Rights Section(s) 2 & 6 of the Constitution of the State of Illinois.

66.    Plaintiff Brown declares under penalty of perjury under the Laws of the United States of America, and under the Laws of the State of Illinois that the foregoing statements are true and accurate.

67.    Plantiff Brown further declares under penalty of perjury that the attached documents cited as exhibits are genuine copies of the official public records which they purport to be.

## C O U N T    I

### Section 1983 Monell Claim Against Defendant Village of Romeoville And Against Defendant Barto For Failure To Properly Train, Supervise, Control And Discipline The The Individual Defendant Police Officers

1 - 67.    Plaintiff Brown repeats and realleges paragraphs 1 - 67 of his verified first amended complaint as though fully set forth as paragraphs 1 - 67 and made paragraph 68 of Count I of his verified first amended complaint.

69.    The Constitutional violations detailed above were only possible for the individual defendant police officers and record supervisor to commit because of the customs, policies, and practices of the Village of Romeoville, whereby the VILLAGE, acting through the Village of Romeoville Police Department, and Records Department failed utterly to properly train, supervise, control and discipline the individual

17.

defendant police officers and the defendant records supervisor.

70.     These failure include (1) failure to take any steps to discipline, supervise or control the individual defendant police officers, and record supervisor, thus maintaining an atmosphere and climate where constitutional violations are not punished or prosecuted, encouraging police officers and the record supervisor to violate rather than respect the constitutional rights of citizens, particularly Plaintiff Brown; (2) failure to track, notice, act upon, or correct patterns of constitutional abuse by police officers with multiple complaints lodged against them, and failure to track, notice, act upon or correct patterns of abuse of judicial proceedings by police officers whose arrestees received a nolle prosequi or acquittal from the charged criminal and/or local ordinance violation offenses, thus encouraging a climate of constitutional abuse; and (3) failuire to instruct its police officers in what type of conduct constitutes infringement upon a citizens' rights guaranteed under the 4th, 8th & 14th Amendments of the Constitution of the United States and rights guaranteed under Article I Section(s) 2 & 6 of the Constitution of the State of Illinois, and failure to properly instruct its police officers in what constitutes deprivation of rights, conspiracy to interfere with rights, class and racial base discrimination, defamation of character, intimidation, oppression, malicious prosecution, abuse of process, and negligence and, as such, is tantamount to a violation of Title 42 U.S.C. Section 1983.

71.     In the alternative, said conduct on the part of defendant Village was, at all time relevant hereto, consistent with, and in accordance with the directives of its Chief of Police who is vested with final policy-making and decision-making authority, and as such, is tantamount to a violation of Title 42 U.S.C. Section 1983.

72.     Moreover, said conduct on the part of the individual defendant police officers

*i8.*

was pursuant to the decision and conduct of defendant Village of Romeoville which having had actual or constructive knowledge that defendant Village's own constitutional injuries upon citizens like Plaintiff Brown created the atmosphere for defendant Village's duly appointed and sworn police officers to engage in conduct that posed pervasive and unreasonable risk of constitutional injury to citizens like Plaintiff Brown. Defendant Village of Romeoville response to that knowledge was so inadequate as to show a tacit authorization of the alleged offensive practices, and, as such, is tantamount to a violation of Title 42 U.S.C. Section 1983.

73.    As a direct and proximate result of the constitutional abuses and discriminatory treatment, Plaintiff Brown was injured, including being unresonable searched, falsely arrested, involuntarily detained, falsely accused of committing a local ordinance violation which never occurred, having his vehicle unreasonable searched and unwarrantly impounded and towed, and suffered aggravated pain to his pre-existing physical injury, and was wrongfully subjected to arbitrary and carpicuous prosecution proceedings, and was deprive of being informed of his Miranda rights, and was deprived of his right to be afforded an equal opportunity to make a contract to purchase available public information requested under the State of Illinois Freedom of Information Act, all to his damage.

**WHEREFORE,** Plaintiff Brown respectfully request this Honorable Court to adjudge and decree that defendant Village of Romeoville has engaged in the conduct alleged herein, in violation of Title 42 U.S.C. 1983, order a formal apology by the individual defendant police officers to Plaintiff Brown, and order defendant Village to suspend the individual defendant police officers from duty for two (2) weeks

19.

without pay, and order defendant Village to restrict the two individual defendant police officers to desk duty for two (2) years upon return to duty from suspension, and order defendant Village to direct the individual defendant police officers to perform 140 public service work hours while on suspension from duty, and order defendant Village to arrange additional individual training for the individual defendant police officers in a two (2) year interpersonal-intercultural communications, social psychology, behavior modification, constitutional law, and civil rights law academic retraining courses at the individual defendant police officers' personal expense to be completed before being allowed to return to patrol duty, plus award Plaintiff Brown **TWO HUNDRED THOUSAND DOLLARS** ($200,000.00) in compensatory and general damages incurred as a result of defendant defendant Village's condoning the individual defendant police officers' interference with and deprivation of Brown's rights guaranteed under the First, Fourth, Eighth, and Fourteenth Amendments of the Constitution of the United States, and of his rights guaranteed under Article I Section(s) 2 & 6 of the Constitution of the State of Illinois.

## COUNT II

### *Section 1983 and Fourth Amendment Search & Seizure Violation*

### (THE TWO INDIVIDUAL DEFENDANT POLICE OFFICERS)

1- 5, 7, 8, 10 - 24, 29, 30, 34 - 37, 44, 50 - 52, 54, 55, 59, 60, 62, 66 & 67. Plaintiff Brown repeats and realleges paragraphs 1- 5, 7, 8, 10 - 24, 29, 30, 34 - 37, 44, 50 - 52, 54, 55, 59, 60, 62, 66 & 67 as though fully set forth as paragraphs 1 - 5, 7, 8, 10 - 24, 29, 30, 34- 37, 44, 50 - 52, 54, 55, 59, 60, 62, 66 & 67 of his verified first amended complaint and made paragraph 74 of Count II of his verified first amended complaint.

20.

75.    The stop, questioning, arrest, search and detention of Plaintiff Brown's person, by the two (2) individual defendant police officers, described above was in violation of Title 42 U.S.C. Section 1983 et seq., and Plaintiff Brown's right to be free of unreasonable searches and deprivation of liberty under the Fourth Amendment of the Constitution of the United States, in that there was no probable cause or lawful justification for the two (2) individual defendant police officers either to stop, or to question, or to search, or to arrest and detain Plaintiff Brown.

76.    As a direct and proximate result of the foregoing, Plaintiff Brown was unlawfully searched, seized, and involuntarily detained for an extensive amount of time at defendant Village of Romeoville Police Station, and suffered temporary loss of $100.00 paid in the form of a Cash Bond, and suffered great mental anguish and worriment of mind, and was deprived of his federal and state constitutional rights as described above, all to his damage.

   *WHEREFORE,* Plaintiff **WILLIE BROWN,** demands judgment against the individual defendant police officers, jointly and severally for compensatory and general damages in the sum of **TWENTY FIVE THOUSAND DOLLARS** ($25,000.00), and further demands judgment against the individual defendant police officers, jointly and severally, for punitive damages in the amount of **SEVENTY FIVE THOUSAND DOLLARS** ($75,000.00), and the costs of this action, and such other and further relief as allowable for violation of Title 42 U.S.C. Section 1983.

### COUNT   III

#### *Section 1983 and Fourth Amendment Search & Seizure Violation*

#### (THE TWO INDIVIDUAL DEFENDANT POLICE OFFICERS)

1 - 4, 7, 8, 10, 11, 25 - 28, 38 - 43, 53, 56, 57, 59, 62, 66 & 67.  Plaintiff Brown

repeats and realleges paragraphs 1 - 4, 7, 8, 10, 11, 25 - 28, 38 - 43, 53, 56, 57,

59, 62, 66 & 67 as though fully set forth as paragraphs 1 -4, 7, 8, 10, 11, 25 - 28,

38 - 43,  53,  56,  57, 59, 62, 66 & 67 and made paragraph 77 of Count III of his

verified first amended complaint.

78.    The  search,  impounding  and  towing  of  Plaintiff Brown's vehicle described

above  was  in  violation  of Title 42 U.S.C. Section 1983 et seq.,  Plaintiff  Brown's

right  to  have  his  personal  property  to be free of unreasonable search and seizure

under  the  4th  Amendment of the Constitution of the United States of America and

under  Article I Section 6 of the  Constitution of the State of Illinois, in that there was

no probable cause or other lawful justification for the search, impounding and towing

of  Plaintiff  Brown's vehicle,  and,  as  such,  is  tantamount to a violation of Title 42

U.S.C. Section 1983 et seq.

79.    As  a  direct  and  proximate  result  of the foregoing, Plaintiff Brown's vehicle

was  unlawfully  searched  and  seized, and Plaintiff Brown suffers the continued loss

of $400.00  paid  in the form of  the Administrative Towing Fees, and was deprived

of his federal and state constitutional rights as described above, all to his damage.

   ***WHEREFORE,*** Plaintiff **WILLIE  BROWN** demands judgment against the

two  individual  defendant  police  officers, jointly and severally for compensatory in

the  sum  of **FOUR HUNDRED DOLLARS** ($400.00) and for general damages

in the sum of **TWO THOUSAND DOLLARS** ($2,000.00), and further demands

22 .

judgment against the two individual defendant police officers, jointly and severally, for punitive damages in the sum of **ONE THOUSAND TWO HUNDRED DOLLARS** ($1,200.00), and reasonable rate of interest on the continued withheld $400.00 Administrative Towing Fee, and the costs of this action, and such other and further relief as allowable for violation of Title 42 U.S.C. Section 1983.

### COUNT    IV

#### *Section 1983 and Eighth Amendment Excessive Bail Violation*

**(POLICE OFFICER D. ZAKULA JR. Star No 374)**

1- 4, 7, 10, 11 - 23, 30, 36, 55, 60, 63, 66 & 67. Plaintiff Brown repeats and realleges paragraphs 1 - 4, 7, 10, 11 - 23, 30, 36, 55, 60, 63, 66 & 67 of his verified first amended complaint as though fully set forth as paragraphs 1 - 4, 7, 10, 11 - 23, 30, 36, 55, 60, 63, 66 & 67 of his verified first amended complaint and made paragraph 80 of Count IV of his verified first amended complaint.

81.    By participating in the conspiracy as described above, defendant Zakula Star No. 374, sought to and did in fact impose a $100.00 excessive bail bond upon Plaintiff Brown in an attempt to punish him for expressing his personal opinion about that which seemed to be unlawful discrimination, and, as such, is tantamount to a violation of Title 42 U.S.C. Section 1983 et seq., and the Eighth Amendment of the Constitution of the United States.

82.    As a direct and proximate result of these statutory and constitutional violations, Plaintiff Brown was damaged, including being wrongfully subjected to excessive bail, suffered great mental anguish and pain, and was deprived of his constitutional rights as described above, all to his damage.

23.

*WHEREFORE,* the Plaintiff, **WILLIE BROWN**, demands judgment against defendant D. Zakula Jr. Star No. 374, individually, for compensatory and general damages in the sum of **SIX THOUSAND DOLLARS** ($6,000.00), and further demands judgment against defendant D. Zakula, Star # 374, individually, for punitive damages in the sum of **ONE THOUSAND EIGHT HUNDRED DOLLARS** ($1,800.00), and the costs of this action, and such other and further relief as allowable for violation of Title 42 U.S.C. Section 1983.

## C O U N T   V

### *Section 1985(3) Conspiracy To Intimidate And Oppress And Fourteenth Amendment Equal Protection Of The Laws Claim*

### (THE TWO INDIVIDUAL DEFENDANT POLICE OFFICERS)

1- 3, 7, 8, 10 - 19, 21, 23 - 25, 37, 38, 44, 50, 51, 54, 55, 57, 58, 60, 66 & 67.

Plaintiff Brown repeats and realleges paragraphs 1 - 3, 7, 8, 10 - 19, 21, 23 - 25, 37, 38, 44, 50, 51, 54, 55, 57, 58, 60, 66 & 67 of his verified first amended complaint as though fully set forth as paragraphs 1 - 3, 7, 8, 10 - 19, 21, 23 - 25, 37, 38, 44, 50, 51, 54, 55, 57, 58, 60, 66 & 67 and made paragraph 83 of Count IV of his verified first amended complaint.

84.   As detailed above, the individual defendant police officers conspired and agreed among themselves to falsely arrest and involuntarily detain Plaintiff Brown, and to unwarrantedly impound and tow Plaintiff Brown's vehicle and commence arbitrary and capicious prosecution proceedings against Plaintiff Brown pursuant to and in the furtherance of Mary R. Sanders and Amy M. Bova's scheme to wrongfully subject Plaintiff Brown to deprivation of the equal protection of the laws guaranteed under the Fourth Amendment of the Constitution of the United States to be free from

24.

unreasonable search and seizure and guaranteed under the Fourteenth Amendment of the Constitution of the United States to be free from arbitary and capicious prosecuton proceedings, and, as such, is tantamount to a violation of Title 42 U.S.C. Section 1985(3).

85.   In doing so, the two individual defendant police officers were motivated by discriminatory-based racial animus.

86.   As detailed above, the two individual defendant police officers committed overt acts in furtherance of the conspirary and scheme.

87.   As a direct and proximate result thereof, Plaintiff Brown was severely injured including the value of his lost liberty, suffered frustration and the loss of a substantial portion of his personal financial resources to defend himself against the false charge of Disorderly Conduct, and was deprived of his citizenship rights to be free from arbitrary and capricious prosecution proceedings guaranteed under the Fourteenth Amendment of the Constitution of the United States, and, as such, is tantamount to a violation of Title 42 U.S.C. Section 1985(3).

*WHEREFORE,* the Plaintiff, **WILLIE BROWN** demands judgment against the two individual defendant police officers jointly and severally, for compensatory and general damages in the sum of **SIXTY THOUSAND DOLLARS** ($60,000.00), and further demand judgment against the two individual defendant police officers, jointly and severally, for punitive damages in the sum of **ONE HUNDRED AND EIGHTY THOUSAND DOLLARS** ($180,000.00), and the costs of this action, and such other and further relief as allowed for violation of Title 42 U.S.C. Section 1985(3).

# C O U N T   VI

## *Section 1981(a) Discrimination Claim*

### (DEFENDANT K. SHOWERS)

1 - 5, 9, 11, 45 - 47, 49, 64, 66 & 67. Plaintiff Brown repeats and realleges paragraphs

paragraphs 1 - 5, 9, 11, 45 - 47, 49, 64, 66 & 67 of his verifed first amended

complaint as though fully set forth as paragraphs 1 - 5, 9, 11, 45 - 47, 49, 64, 66 & 67

and made paragraph 88 of Count VI of his verified first amended complaint.

89.    At all times relevant hereto, the careless and discriminatory conduct of defendant

Showers, some of which is described above, raises a plausible inference that defendant

Showers acted in accordance with and was motivated by racial animus toward Plaintiff

Brown when she refused to afford him with an equal right to make a contract to

purchase available public information under the State of Illinois Freedom of Information

Act, as accorded to "white citizens", and, as such, is tantamout to a violation of Title 42

U.S.C. Section 1981(a).

90.    That when defendant Showers refused to afford Plaintiff Brown with an equal

right to make a contract with defendant Village to purchase available public information

sought under the Illinois Freedom of Information Act, she was acting in excess

of her individual and personal capacity as an agent, servant and/or employee of

defendant Village of Romeoville. Therefore, defendant Village of Romeoville is fully

liable for the actions/or omissions of defendant Showers when she refused to afford

Plaintiff Brown with an equal right to make a contract with defendant Village of

Romeoville to purchase available public information sought under the State of Illinois

Freedom of Informantion Act.

91.    As a direct and proximate result of defendant Showers race based discriminatory

26.

conduct. Plaintiff Brown was deprived of his rights guaranteed under Title 42 U.S.C. Section 1981(a).

*WHEREFORE,* the Plaintiff, **WILLIE BROWN**, demands judgment against defendant Village of Romeoville and defendant Showers, jointly and severally, for General damages in the amount of **ONE THOUSAND DOLLARS** ($1,000.00) plus the cost of this action, and for such other and further relief allowable for violation of Title 42 U.S.C. Section 1981(a).

## C O U N T  VII

### *Section 1983 - Abuse of Process Claim*

### (THE TWO INDIVIDUAL DEFENDANT POLICE OFFICERS)

1 - 4, 7, 8, 10, 11, 37, 44, 48 - 51, 58 - 60, 62, 63, 66 & 67.  Plaintiff Brown repeats and realleges paragraphs 1 - 4, 7, 8, 10, 11, 37, 44, 48 - 51, 58 - 60, 62, 63, 66 & 67 of his verified first amended complaint as though fully set forth as paragraphs 1 - 4, 7, 8, 10, 11, 37, 44, 48 - 51, 58 - 60, 62, 66 & 67 and made paragraph 92 of Count VII of his verified first amended complaint.

93.    By participating in the above-described conspiracy and scheme, the two individual defendant police officers sought to, and did in fact, cause Disorderly Conduct prosecution proceedings to be commenced against Plaintiff Brown for the improper purpose to misuse the proper use of the Illinois Judiciary to intimidate and oppress Plaintiff Brown in the exercising of his rights guaranteed under the Fourth and Fourteenth Amendments of the Constitution of the United States of America and rights guaranteed under Article I. Bill of Rights Section(s) 2 & 6 of the Constitution ofthe State of Illinois, and to commit perjury and other fraudulent acts in an attempt to procure the wrongful

27.

conduct. Plaintiff Brown was deprived of his rights guaranteed under Title 42 U.S.C. Section 1981(a).

**WHEREFORE,** the Plaintiff, **WILLIE BROWN**, demands judgment against defendant Village of Romeoville and defendant Showers, jointly and severally, for General damages in the amount of **ONE THOUSAND DOLLARS** ($1,000.00) plus the cost of this action, and for such other and further relief allowable for violation of Title 42 U.S.C. Section 1981(a).

### C O U N T  VII

#### *Section 1983 - Abuse of Process Claim*

#### (THE TWO INDIVIDUAL DEFENDANT POLICE OFFICERS)

1 - 4, 7, 8, 10, 11, 37, 44, 48 - 51, 58 - 60, 62, 63, 66 & 67.  Plaintiff Brown repeats and realleges paragraphs 1 - 4, 7, 8, 10, 11, 37, 44, 48 - 51, 58 - 60, 62, 63, 66 & 67 of his verified first amended complaint as though fully set forth as paragraphs 1 - 4, 7, 8, 10, 11, 37, 44, 48 - 51, 58 - 60, 62, 66 & 67 and made paragraph 92 of Count VII of his verified first amended complaint.

93.    By participating in the above-described conspiracy and scheme, the two individual defendant police officers sought to, and did in fact, cause Disorderly Conduct prosecution proceedings to be commenced against Plaintiff Brown for the improper purpose to misuse the proper use of the Illinois Judiciary to intimidate and oppress Plaintiff Brown in the exercising of his rights guaranteed under the Fourth and Fourteenth Amendments of the Constitution of the United States of America and rights guaranteed under Article I. Bill of Rights Section(s) 2 & 6 of the Constitution of the State of Illinois, and to commit perjury and other fraudulent acts in an attempt to procure the wrongful

remanding of Plaintiff Brown to the custody of the Will County Sheriff's Office for involuntary confinement at the Will County Adult Detention Facility, and in attempt to procure the seizure of his vehicle, and as such, is tantamount to a violation of Title 42 U.S.C. Section 1983 et seq.

93.    As a direct and proximate result of these constitutional and statutory violations, Plaintiff Brown was damages, including the temporary loss of his personal liberty and freedom, suffered the loss of $400.00 of his money, and was subjected to arbitrary and capricious prosecution proceedings, all to his damage.

*WHEREFORE* the Plaintiff, **WILLIE BROWN**, demands judgment against the two individual defendant police officers, jointly and severally, for compensatory damages in the sum of **FOUR HUNDRED DOLLARS** ($400.00), and for actual and general damages in the sum of **NINETY THOUSAND DOLLARS** ($90,000.00), and further demand judgment against the two individual defendant police officers, jointly and severally, for punitive damages in the sum of **ONE THOUSAND TWO HUNDRED DOLLARS** ($1,200.00), plus the costs of this action, and for such other further relief as allowable for violation of Title 42 U.S.C. Section 1983.

### C O U N T   VIII

#### *False Arrest - State Law Claim Against Village of Romeoville*
#### *And The Two Individual Defendant Police Officers*

1- 5, 7, 8, 11, 18 - 24, 30, 34 - 36, 44, 50 - 52, 54, 55, 60, 66 & 67. Plaintiff Brown repeats and realleges paragraphs 1 - 5, 7, 8, 11, 18 - 24, 30, 34 - 36, 44, 50 - 52, 54, 55, 60, 66 & 67 of his verified first amended complaint as though fully set forth as paragraphs 1 - 5, 7, 8, 11, 18 - 24, 30, 34 - 36, 44, 50 - 52, 54, 55, 60, 66 & 67 and made paragraph 94 of Count VIII of his verified first amended complaint.

29.

95.    By participating in the above-described conspiracy, the two individual defendant police officers intentionally and knowingly sought out to, and in fact falsely arrested Plaintiff Brown for which there was no probable cause.

96.    Defendant Village is sued in this count pursuant to the doctrine of respondeat superior, in that the two individual defendant police officers performed their actions complained of while on duty and in the employ of defendant Village of Romeoville Police Department, and was acting within the scope of this employment.

97.    As a direct and proximate result of these constitutional violations, Plaintiff Brown was damaged, including the value of his loss liberty, and the temporary loss of $100.00 of his money posted as a cash bond, and suffer great mental anguish and worriment of mind, all to his damage.

   *WHEREFORE,* the Plaintiff, **WILLIE BROWN**, demands judgment against defendant Village of Romeoville and the two individual defendant police officers, jointly and severally, for compensatory damages in the sum of **FIFTY THOUSAND DOLLARS** ($50,000.00), and further demand judgment against the two individual defendant police officers, jointly and severally, for punitive damages in the sum of **ONE HUNDRED AND FIFTY THOUSAND DOLLARS** ($150,000.00), plus the costs of this actions, and forsuch other and further relief as this Court deems just, proper and equitable.

## C O U N T   IX

### *False Imprisonment - State Law Claim Against Village of Romeoville And The Two Individual Defendant Police Officers*

1 - 5, 7, 8, 11, 24, 30, 35, 36, 55, 57, 60, 66 & 67.    Plaintiff Brown repeats and realleges paragraphs 1 - 5, 7, 8, 11, 24, 30, 35, 55, 57, 60, 66 & 67 of his verified

first amended complaint as though fully set forth as paragraphs 1 - 5, 7, 8, 11, 24, 30, 36, 55, 57, 60, 66 & 67 and made paragraph 98 of Count IX of his verified first amended complaint.

99.    By participating in the above-described conspiracy, the two individual defendant police officers intentionally and knowingly sought to and did in fact unlawfully restrain Plaintiff Brown's freedom of locomotion when they caused him to be involuntarily detained at defendant Village of Romeoville Police Station for an extensive amount of time for which there was no probable cause.

100.    Defendant Village of Romeoville is sued in this count pursuant to the doctrine of respondeat superior, in that the two individual defendant police officers performed the actions complained of while on duty and in the employ of defendant Village of Romeoville Police Department, and while acting within the scope of this employment.

101.    As a direct and proximate result of these constitutional violations, Plaintiff Brown was damaged, including the value of his loss liberty, and the temporary loss of $400.00 of his money posted as a cash bond, and suffered great mental anguish and worriment of mind, all to his damage.

**WHEREFORE,** the Plaintiff, **WILLIE BROWN,** demands judgment against defendant Village of Romeoville and the two individual defendant police officers, jointly and severally, for compensatory and general damages in a sum of **FIFTY THOUSAND DOLLARS** ($50,000.00), and further demands judgment against the two individual defendant police officers, jointly and severally, for punitive damages in the sum of **ONE HUNDRED AND FIFTY THOUSAND DOLLARS** ($150,000.00), plus the costs of this action, and for such other and further relief as this Court deems just, proper and equitable.

## C O U N T   X

### *Malicious Prosecution - State Law Claim Against Village of Romeoville And The Two Individual defendant Police Officers*

1 - 5, 7, 8, 11, 37, 44, 50, 51, 54, 58 - 60, 66 & 67.    Plaintiff Brown repeats and realleges paragraphs 1 - 5, 7, 8, 11, 37, 44, 50, 51, 54, 58 - 60, 66 & 67 of his verified first amended complaint as though fully set forth as paragraphs 1 - 5, 7, 8, 11, 37, 44, 50, 51, 54, 58 - 60, 66 & 67 and made paragraph 102 of Count X of his verified first amended complaint.

103.    By participating in the above-described conspiracy, the two individual defendant police officers knowingly and intentionally sought to and did in fact cause prosecution proceedings to be commenced against Plaintiff Brown on the false ordinance violation charge of DISORDERLY CONDUCT, for which there was no probable cause.

104.    As detailed above, the attempted prosecution of the ordinance violation offense of DISORDERLY CONDUCT has been wholly terminated and determined in favor of Plaintiff Brown indicative of his innocence.

105.    As a direct and proximate result of these constitutional and statutory violations, Plaintiff Brown was damaged, including the loss of his personal liberty, suffered being subjected to arbitrary and capricious prosecution proceedings, suffered loss of a substantial portion of his personal financial resources to defend against the false charge, suffered great mental anguish and worriment of mind, all to his damage.

106.    Defendant Village of Romeoville is sued in this count pursuant to the doctrine of respondeat superior, in that the two individual defendant police officers performed the actions complained of while on duty and in the employ of defendant Village of Romoeville Police Department., and while acting within the scope of this employment.

32 .

*WHEREFORE,* the Plaintiff **WILLIE BROWN,** demands judgment against defendant Village of Romeoville, as well as against the two individual defendant police officers, jontly and severally, for actual, general, and compensatory damages in the sum of **NINETY THOUSAND DOLLARS** ($90,000.00), and further demand judgment against the two individual defendant police offficers, jointly and severally, for punitive damages in a sum of **SIXTY THOUSAND DOLLARS** ($60,000.00), plus the costs of this action, and for such other further relief as this court deems equitable and just.

### C O U N T   XI

*Intentional Infliction Of Emotional Distress– State Law Claim Against Defendant Village of Romeoville And The Two Individual Defendant Police Officers*

1 - 5, 7, 8, 11, 18 - 30, 35, 37, 38 - 44, 55 - 58, 60, 66 & 67.    Plaintiff Brown repeats and realleges paragraphs 1 - 5, 7, 8, 11, 18 - 30, 35, 37, 38 - 44, 55 - 58, 60, 66 & 67 of his verified first amended complaint as though fully set forth herein as paragraphs 1 - 5, 7, 8, 11, 18 - 30, 35, 37, 38 - 44, 55 - 58, 60, 66 & 67 and made paragraph 107 of Count XI of his verified first amended complaint.

108.    The above-detailed conduct by the two individual defendant police officers, as well as the conduct of defendant Village of Romeoville Police Department's Operation Lieutenant was extreme and outrageous, exceeding all bounds of human decency.

109.    The two individual defendant police officers and defendant Village of Romeoville Police Department's Operation Lieutenant performed the acts detailed above with the intent of inflicting severe emotional distress or with the knowledge of the high probability that the conduct would cause such distress.

33 .

110.    As a direct and proximate result of this conduct, Plaintiff Brown did in fact suffer severe emotional distress, as well as suffered severe worriment of mind, and suffers anixety attacks whenever he has to travel through the defendant Village of Romeoville.

111.    Defendant Village of Romeoville is sued in this count pursuant to the doctrine of respondeat superior, in that the two individual defendant police officers and defendant Village of Romeoville Police Department's Operation Lieutenant performed the actions complained of while on duty and in the employ of defendant Village of Romeoville, and while acting within the scope of this employment.

*WHEREFORE*, the Plaintiff, **WILLIE BROWN**, demands judgment against defendant Village of Romeoville and the two individual defendant police officers, jointly and severally, for actual, compensatory and general damages in the sum of **ONE HUNDRED THOUSAND DOLLARS** ($100,000.00), and further demands judgment against the two individual defendant police officers, jointly and severally, for punitive damages in the sum of **THREE HUNDRED THOUSAND DOLLARS** ($300,000.00) plus the costs of this action, and for such other relief as this court deems just, proper, and equitable.

## C O U N T   XII

### *Defamation of Character - State Law Claim Against Defendant Village of Romeoville And The Individual Defendant Police Officers*

1 -5,  7,  8, 11,  23, 48, 49, 55, 59, 60, 62, 66 & 67.    Plaintiff Brown repeats and realleges paragraphs 1 - 5, 7, 8, 11, 23, 48, 49, 55, 59, 60, 62, 66 & 67 of his verified first amended complaint as though fully set forth as paragraphs 1 - 5, 7, 8, 11, 23, 48, 49, 55, 59, 60, 62, 66 & 67 and made paragraph 112 of Count XII of his verified first amended complaint.

34.

113.   *Actionable pre se:*  By participating in the above-described conspiracy the two individual defendant police officers submitted their false and defamatory written police incident report statements about Plaintiff Brown when they knew or reasonable should have known that their statements about Plaintiff Brown committing the ordinance violation of Disorderly Conduct were false and defamatory.  The two individual defendant police officers wrote their false and defamatory statements in legal documents filed with defendant Village of Romeoville Police Department and the Bolingbrook branch of the Circuit Court of the Twelfth Judicial Circuit imputing the commission of a criminal misdemeanor offense when they knew or reasonable should have known that their written statements characterizing Plaintiff Brown as having committed a criminal misdemeanor offense were false and defamatory.

114.   Despite what the two individual defendant police officers knew or reasonable should have known about their written police incident report against Plaintiff Brown's reputation and character were false and defamatory they nevertheless wrote their false police incident report regardless of the truth or falsity of their written statement set forth in their submitted police incident report against Plaintiff Brown's reputation and character.

115.   As a direct and proximate result of these constitutional violations, Plaintiff Brown's was damaged, including his public reputation and character having been lowered within the estimation of the rightthinking mind of Will County Associate Judge James Nash, and exposure to unwarranted public ridicule and scorn.

116.   Defendant Village of Romeoville is being sued in this count pursuant to the doctrine of respondeat superior, in that the two individual defendant police officers performed the conduct complained of while acting in the employ of defendant

Village of Romeoville Police Department, and while acting within the scope of this employment.

**WHEREFORE,** the Plaintiff, **WILLIE BROWN,** demands judgment against defendant Village of Romeoville and the two individual defendant police officers, jointly and severally, for compensatory, and general damages in the sum of **FIFTY THOUSAND DOLLARS** ($50,000.00), and further demand judgment against the two individual defendant police officers, jointly and severally, for punitive damages in the sum of **ONE HUNDRED AND FIFTY THOUSAND DOLLARS** ($150,000.00), plus the costs of this action, and for such other further relief as this court dems fair, just and equitable.

## C O U N T  XIII

### Negligence - State Law Claim Against Defendant Village of Romeoville And Defendant Barlo

1 - 6, 11, 25 - 29, 38, 39, 42, 43, 53, 56, 60, 62, 65 - 67.    Plaintiff Brown repeats and realleges paragraphs 1 - 6, 11, 25 - 29, 38, 39, 42, 43, 53, 56, 60, 62, 66 & 67 of his verified first amended complaint as though fully set forth as paragraphs 1 - 6, 11, 25 - 29, 38, 39, 42, 43, 53, 56, 60, 62, 65 - 67 and made paragraph 117 of Count XIII of his verified first amended complaint.

118.    At all times relevant hereto, defendant Village of Romeoville Police Department, as well as the two individual defendant police officers and defendant Barto owed Plaintiff Brown a legal duty to act with reasonable and due care to allow Plaintiff Brown to maintain personal possession of his vehicle and free from unreasonable search and seizure.

119.    At all times, there existe in full effect the following General Order (the "Order")

36.

that was and is designed to eliminate unreasonable search and seizure of an individuals personal automobile (See "Exhibits 2 & 3 " attached hereto).

120.     Despite and in disregard to their legal duty to ensure that Plaintiff Brown's personal automobile was free from unreasonable search and seizure. Defendant Village of Romeovile,  as  well as the two individual defendant police officers  unlawfully impounded and towied  Plaintiff Brown's vehicle which was upheld and condoned by defendant Barto, against Plaintiff Brown because of his racial nationality, African American,  and  engaged in other unlawful and discriminatory conduct, some of which is described above, for which defendant  Village of Romeoville Police Department, and  the two individual defendant poloice officers and defendant Barto, should be held tortuously liable.

121.     As  a  direct  and  proximate  result  of  defendant Village of Romeoville Police Department, and the  two  individual  defendant  police  officers and defendant Barto's conduct alleged herein, Plaintiff Brown suffers substantial damages and had been deprived of his right to have his personal automobile free from unlawful impounding and  towing  and was  and still is being deprived of his $400.00 Administrative Tow Fee paid  out  to  re-secure  personal possession of his vehicle for which he is now entitled to relief.

**WHEREFORE,** the Plaintiff, **WILLIE BROWN,** demands judgment against defendant  Village  of Romeoville,  and the two individual defendant police officers and defendant Barto, jointly and severally for compensatory,  general and actual damages in  the  sum  of  **FIFTY  THOUSAND  DOLLARS**  ($50,000.00), and  further demands judgment against the two individual defendant police officers, jointly and

37.

severally, for punitive damages in the sum of **ONE HUNDRED AND FIFTY THOUSAND DOLLARS** ($150,000.00), plus the costs of this action, and for such further relief as this court deems fair, just and equitable.

### JURY DEMAND

122.    Plaintiff Brown hereby demands a trial before a petit jury on all triable issues in this Verified First Amended Complaint.

### RESERVATIONS OF RIGHTS

123.    Plaintiff Brown's investigation is ongoing, Brown reserves the right to amend this verified first amended complaint to include additional claims and include additional defendants should his investigation so merit.

FURTHER AFFIANT SAITH NOT.

*Repectively submitted*

By _____
**WILLIE BROWN**
**Plaintiff in *Pro se***

SUBSCRIBED and SWORN to before me
this _18_ th day of _July_ , 20 _08_

_____
Notary Public                    (SEAL)

Willie Brown
601 Theodore Street
Joliet, Illinois  60435
(815) 740-1467

"OFFICIAL SEAL"
JEANNE GRAY
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES 3-26-09

38.

**EXHIBIT**
**1**

| ROMEOVILLE POLICE DEPARTMENT | 08/23/06 | | 08/23/06 | | G.O. 4-605 |
|---|---|---|---|---|---|
| SUBJECT:<br><br>TOWING AND IMPOUNDMENT OF VEHICLES | AMENDS:<br>07/19/94<br>G.O. 4-605 | RESCINDS: | SECTION CODE: | | |
| | | | DISTRIBUTION:<br>ALL PERSONNEL | | |

I.    **PURPOSE:**  To provide direction related to towing, seizure and/or impoundment of vehicles.

II.   **POLICY:**

A. The Romeoville Police Department, in cooperation with the policy of the Village of Romeoville, finds that abandoned vehicles:

1.  Constitute a safety hazard and a public nuisance.

2.  Are detrimental to the health, safety and welfare of the general public by harboring disease, providing breeding places for vermin, inviting plundering, creating fire hazards, and presenting physical dangers to children and others.

3.  Produce scenic blights which degrade the environment and adversely affect land values and the proper maintenance and continuing development of the Village of Romeoville.

4.  Require the Village of Romeoville's attention in order to assure the expeditious removal and recycling of these abandoned vehicles.

B. Officers are encouraged to provide assistance to motorists when the need arises for towing services, and institute enforcement action when they observe illegally parked vehicles, traffic obstructions and abandoned vehicles. The towing of vehicles from village streets, or streets, roadways, or highways within our jurisdiction, is done in accordance with applicable state statutes (Chapter 625, Section 5/4-203, "Removal of Motor Vehicles or Other Vehicles – Towing or Hauling Away") and Village Ordinances.

C. Motor vehicles operated with the permission, express or implied, of the owner of record, that is used in connection with violations enumerated in Chapter 81.251 of the Code of Ordinances, shall be subject to seizure and impoundment, and the owner of record of said vehicle shall be liable to the Village for a $500 administrative fee, in addition to any towing and storage fees. Authorized towing agencies must sign a contract with the Village of Romeoville and must meet all requirements set forth in Chapter 81 of the Romeoville Code of Ordinances.

By Order of _Andrew J Barto_
ANDREW J. BARTO
CHIEF OF POLICE

1

## DEFINITIONS:

Abandoned Vehicle: A vehicle in disrepair, rendering the vehicle incapable of being driven in its condition; or any vehicle that has not been moved or used for seven (7) consecutive days or more and is apparently deserted (Illinois Vehicle Code 5/1-101.05; see also Village Code Chapter 81.01). Abandoned vehicles are entitled to pre-tow notice and hearing.

Administrative Fee: A $500.00 fee charged to the owner of a vehicle which is used in the connection with the commission of specified offenses set forth in Appendix A of this policy.

Impoundment: The practice of towing and thereafter restricting the release of a motor vehicle used in connection with the commission of specified offenses set forth in Appendix A of this policy, until an administrative fee is paid to the Village, or a hearing determines that the vehicle in question should not have been impounded.

Inventory: An inventory of property inside the impounded or towed vehicle prior to the towing of the vehicle. An inventory conducted of the entire car and its contents and all compartments to protect the owner's property and to protect the police from claims of loss, stolen or vandalized property, and to guard the police from danger.

Pre-Tow Notice: Placement of a 72-hour tow notice sticker on the vehicle notifying interested persons of the earliest date on which the vehicle can be towed, which date must be 72 hours from the placement of the sticker (Village Code Chapter 81.23)

Pre-Tow Hearing: A hearing held within fifteen (15) days of placing the pre-tow 72-hour tow notice on a vehicle. Request for pre-tow hearing must be made within the 72-hour pre-tow time frame, if such request is not made, any hearing rights under the provisions of 81.24 of the Romeoville Code of Ordinances will be deemed waived and the vehicle may be towed.

Post-Tow Notice: Notice shall consist of a mailed or personally delivered notification of the tow to the last registered owner of the vehicle, sent within 2 days of the determination of the identity of such owner. If a post tow hearing is to be held, it must be requested in person or by mail within 15 days of the date of the mailing of the notice of tow or before the vehicle is released, whichever occurs first.

Post-Tow Hearing: A hearing held at the request of the owner receiving a notice regarding the towing of their vehicle. The hearing will determine the validity of such tow and any towing storage and charges accrued.

Towing Agency: A firm engaged in the business of or offering the services of vehicle towing whereby motor vehicles are or may be towed or otherwise removed from one place to another by use of tow truck.

III.    PROCEDURE:    This policy creates a protocol by which police officers may impound, inventory and release vehicles coming into the custody of the Romeoville Police Department

A. MOTORIST ASSIST

1.    Anytime an officer encounters a motorist who requires the services of a tow company, the officer will:

a.    Check with the motorist to ascertain if he has a preference for local tow company and request the telecommunications operator to make notification.

b.    If the motorist has no preference, or the tow company cannot provide timely service, the officer will advise the motorist that the department has arrangements with local tow companies to provide services.    The officer will advise the telecommunications operator to contact the tow service assigned.

2.    While awaiting the arrival of the tow truck, the officer will provide protection for the disabled vehicle by either having a police unit, equipped with a push bar, push the vehicle to a safe location, or position his vehicle, with emergency lights activated, between the disabled vehicle, and approaching traffic.

3.    The officer will remain in such position until the tow truck arrives and the driver advises that the officer's presence is no longer required.    If the motorist has already made arrangements for a tow service, and the officer feels his presence is not necessary, he may place safety flares behind the disabled vehicle and resume patrol.    Telecommunications should be advised of the location and pending arrival of service for the disabled vehicle.

4.    The officer shall notify telecommunications upon the arrival of the tow truck so that its arrival may be logged in.

5.    If necessary, the officer will provide transportation for the motorist and passengers to a place of safety.

6.    Officers shall report to their immediate supervisor the name of any tow company who either renders poor service or is incapable of providing quality service because of inadequate equipment or personnel, the supervisor will then forward notice of this complaint to the Administrative Office.

7.  All vehicles towed will be checked through L.E.A.D.S. and N.C.I.C. at the time of towing.

B.  ABANDONED VEHICLE PROCEDURES

1.  A police officer who observes a vehicle which is abandoned as defined in Section III, A, 2, (a) will:

    a.  Initiate an offense report indicating the location of the abandoned vehicle, a full description of the vehicle, including any license information or municipal sticker number, and any owner information obtained.

    b.  Attach a tow sticker to the vehicle indicating the location of the vehicle, date and time sticker applied, offense report number, vehicle description, license number, officer's number making tow notice, and applicable time limit indicated in hours.

    c.  Vehicles abandoned or left unattended along a highway, not considered an immediate hazard, may be towed after placement of a 24 hour tow sticker, pursuant to provisions of 625 ILCS 5/4-203.

2.  The offense report written of an abandoned vehicle will be routed to the records section. A copy will then be forwarded to the radio room where it will be logged in as to:

    a.  Date of original report.

    b.  Offense report number

    c.  Location of reported abandoned vehicle.

    d.  Plate or vehicle identification number of abandoned vehicle.

    e.  Description of abandoned vehicle.

    f.  The officer assigned by the day shift patrol supervisor to check on vehicle's status after the designated time limit.

    g.  Results of follow-up inquiry such as: moved, gone, or towed (when confirmed either by dispatching the requested tow or upon receiving the returned copy of the abandoned vehicle report).

3.  The police officer towing the reported abandoned vehicle will:

      a. Complete the "tow report" form, indicating the original offense report number and, if necessary, the motor vehicle number.

      b. Complete a supplemental report indicating the continued status of the abandoned vehicle, along with the date and time of this removal and which agency towed the vehicle.

      c. All vehicles towed will be checked through L.E.A.D.S. and N.C.I.C. The officer shall document this check on the "tow report" form and within the supplemental report written.

4. The supplemental report, upon approval, with the tow report will be routed to the records section where, by certified mail, the "notice to last registered owner" will be sent to the last registered owner and a copy also sent to the known lien holder of the vehicle towed. Of this "notice" sent, it will advise the location and method of reclaiming the vehicle.

5. If all attempts to contact the owner fail, the vehicle will be disposed of according to the law, by completing the application for a "junk" title/certificate along with the submission of the "certificate of purchase transferring ownership of abandoned, lost, stolen or unclaimed vehicles" form.

C. Traffic hazards. Such situations include cases where the vehicle is illegally parked on a village street or traffic way so as to create an immediate traffic hazard and the driver is not present to remove the vehicle. Such vehicles are "hazardous" under Chapter 81 of the Village Code and may be towed with no pre-tow notice or hearing. Post tow notice and hearing must be provided in accordance with Chapter 81.

D. Unsafe vehicles. These situations could involve any vehicle operated with faulty or unsafe equipment where its continued operation will constitute an immediate safety hazard to others on the public streets and highways, the vehicle cannot be safely and legally left where found or stopped, and the owner cannot offer a reasonable alternative. Such vehicles are "hazardous" under Chapter 81 of the Village Code and may be towed with no pre-tow notice or hearing. Post tow notice and hearing must be provided in accordance with Chapter 81.

E. Illegally parked vehicles. This includes vehicles that are illegally parked and unattended on a village street, village parking lot, or village property, where the owner and/or driver fails or refuses to comply with the applicable laws and/or ordinances within 72 hours after the first parking citation was issued to the same vehicle for the same violation at the same location, or the vehicle was marked for towing. If the vehicle is not removed after 72 hours, place a 72 tow tag sticker on the vehicle to be removed from the street. Thereafter, post tow notice and hearing should be provided as for hazardous or unsafe vehicles. Note that illegally parked vehicles as described above should only

or when being held pending asset forfeiture proceeding (including drug seizures). Upon eligibility of release of the vehicle, Chapter 81 then applies.

d. The supervisor may occasionally waive an impoundment, if in their reasonable judgment; the impoundment would materially interfere with the efficiency of police operations or services or adversely affect public safety, **and** the vehicle is either legally parked at the time, or will be driven from the scene by a licensed driver upon the effective consent of the vehicle owner.

e. Before or at the time the vehicle is towed and impounded, the police officer may notify any person identifying himself as the owner of the vehicle, or any person who is found to be in control of the vehicle at the time of the alleged violation, of the fact of the seizure, and of the availability of a post impoundment hearing to be conducted in accordance with the provisions of Village Code Chapter 81.25 and 81.26. Where a vehicle is to be towed and impounded under the provisions of Chapter 81.251, no prior notice or hearing shall be required to the validity of the tow and impoundment, but officers are nonetheless encouraged to do so when to do so is practicable in the exercise of their reasonable judgment.

f. At the time the vehicle is towed, the officer shall inform the tow company that this is a vehicle towed and impounded under administrative ordinance and is eligible for release by the tow company only after a verbal release is obtained from the Romeoville Police Department. A tow report shall be completed by an officer and submitted to the tow company with reason for the tow and impoundment and hold. The officer must note the applicability of the $500 Administrative Fee on the tow sheet and all tow reports should be handed in with the full report by the end of the officers' tour of duty unless the supervisor authorizes otherwise. The officer preparing the tow report should ensure that the reasons for impound are clearly documented in the tow report.

g. Police officers towing vehicles shall complete an inventory search of the entire vehicle including any closed or locked containers, in accordance with Article III of this policy.

h. The officer impounding the vehicle will ensure that the passengers of the impounded vehicle are provided transportation to the police station for purposes of securing alternative transportation if they are elderly, disabled, a minor,

or special circumstances dictate. The passenger(s) of the impounded vehicle may decline transportation to the police station. The police officer impounding the vehicle shall relay to telecommunications all necessary information regarding the impounded vehicle. The telecommunicator receiving such information shall ensure same is recorded in the CAD system as an abandoned, towed or impounded vehicle and when necessary, the Leads number placed on the original report filed by the officer. Special circumstances may apply and the officer can have the telecommunicator enter the vehicle into L.E.A.D.S. and place the L.E.A.D.S. number on the original report.

i.   Records personnel or authorized personnel as designated from time to time by the Chief of Police or his designee will receive the posting of a $500 fee for the administrative fee from the owner of the vehicle, or a person acting on the owner's behalf. Upon receiving the fee and required proofs and related documentation, personnel will provide a receipt and call the authorized towing agency advising them to release the vehicle upon presentation of receipt of paid administrative fee. Under extenuating circumstances and in accordance with the conditions hereinabove set forth in this policy, Romeoville Police Department Sergeants (and above) may authorize release without the posting of the fee. No cash shall be taken on the street. The fee must be posted at the Police Station. Fees will be accepted only during normal Records business hours. Only cash or credit cards will be accepted as payment.

I.   HEARING

1.   Owners of impounded vehicles shall be given a post impoundment notice. This notice shall include information indicating the availability of and process for requesting a post impoundment hearing. This notice shall be provided in accordance with Chapter 81.25.

2.   Impounded vehicle owners have the right to request a hearing on the impoundment within 15 days from the date of the above mentioned notice, whether in person at the Police Department or by mail as indicated on the notice. Failure to request the hearing in this manner waives the right to the hearing. If the impounded vehicle owner requests an impoundment hearing within the above 15 day period, the Department shall then notify the owner of the time, date and place of the hearing. Such notice shall be sent by certified mail, return receipt requested.

3. It is the responsibility of the Operation Lieutenant to compile the hearing cases on a weekly basis and ensure that certified mailings are sent as required. When not available, a designated person from Administration will back up that position.

4. The hearing will be held at a facility designated by the police department, and shall be conducted in accordance with the provisions of Chapter 81.26.

5. At the conclusion of the hearing, the Operation Lieutenant or other officer designated to conduct impoundment or tow hearings will file the necessary papers for action for default orders or immediate return of the vehicle or administrative fee. Such papers shall include a written decision based upon such evidence as is advanced at the hearing by the vehicle owners, and the Police Department or its personnel. The decision shall be attached to the original tow/impound report, and shall also be provided to the vehicle owner by personal delivery, or by mail within 7 days from the hearing.

6. It shall be an affirmative defense if the vehicle in question was stolen and was reported stolen within 24 hours of discovery.

J. RELEASE OF IMPOUNDED VEHICLES UNDER CHAPTER 81.251

1. All vehicles towed and/ or impounded pursuant to Chapter 81.251 of the Village of Romeoville Ordinances will only be released after meeting the following conditions, and after all towing and storage fees are paid directly to the towing company:

   a. Satisfactory proof of ownership (title OR a notarized letter from registered owner authorizing release OR proof of rental / lease (contract).

   b. Photo Identification.

   c. Valid proof of insurance for the vehicle if it has an insurance hold.

   d. Payment of $500 administrative fee and issuance of verbal release by the Department.

2. Motorists charged with the offense of Driving Under the Influence of Alcohol, Other Drug or Drugs, Intoxicating Compound or Compounds or any combination thereof may only have their vehicles released after a 12-hour hold unless circumstances dictate otherwise. Police Officers should NOT release a vehicle until the vehicle no longer falls under a D.U.I hold. Such a vehicle may be released earlier than 12 hours if

the vehicle was not owned by the person charged, and the lawful owner requesting the vehicle release possesses a valid driver's license, proof of insurance and would not indicate a lack of ability to operate a vehicle in a safe manner; [625 ILCS 5/4-203(e)(1)] or the vehicle is owned by the person charged and the person gives permission to another person to operate such vehicle, provided however, that the other person possesses a valid driver's license, proof of insurance and would not indicate a lack of ability to operate a vehicle in a safe manner. [625 ILCS 5/4-203(e) (2)]

3. Impounded vehicles may be subject to other types of holds. Holds on vehicles subject to evidentiary processing shall only be released upon the approval of the investigations unit supervisor. Vehicles involved in traffic accidents subject to hold can only be released upon approval of the officer conducting the follow-up investigation.

4. Where impounded vehicles are entered into L.E.A.D.S and the vehicle has been released, telecommunications will insure that computer entries (L.E.A.D.S. and CADS) are canceled.

**EXHIBIT
2**

G.O. 4-605 Continued

## APPENDIX A

Impoundment Qualified Violations: (If the vehicle was used in the commission of the following offenses)

Forcible Felonies under the Illinois Criminal Code of 1961 (720 ILCS 5/2-8)

| | |
|---|---|
| 720 ILCS 5/9-1 | First degree murder |
| 720 ILCS 5/9-2 | Second degree murder |
| 720 ILCS 5/10-1 | Kidnapping |
| 720 ILCS 5/10-2 | Aggravated kidnapping |
| 720 ILCS 5/12-4 | Aggravated battery (resulting in great bodily harm) |
| 720 ILCS 5/12-13 | Criminal sexual assault |
| 720 ILCS 5/12-14 | Aggravated criminal sexual assault |
| 720 ILCS 5/12-14.1 | Predatory criminal sexual assault of a child |
| 720 ILCS 5/18-1 | Robbery |
| 720 ILCS 5/19-1 | Burglary |
| 720 ILCS 5/19-3 | Residential burglary |
| 720 ILCS 5/20-1 | Arson |
| 720 ILCS 5/20-1.1 | Aggravated arson |
| 720 ILCS 5/30-1 | Treason |

Additional Crimes

| | |
|---|---|
| 720 ILCS 5/9-3 | Involuntary manslaughter and reckless homicide |
| 720 ILCS 5/11-14 | Prostitution |
| 720 ILCS 5/11-15 | Soliciting for a prostitute |
| 720 ILCS 5/11-15.1 | Soliciting for a juvenile prostitute |
| 720 ILCS 5/11-16 | Pandering |
| 720 ILCS 5/11-18 | Patronizing a prostitute |
| 720 ILCS 5/11-18.1 | Patronizing a juvenile prostitute |
| 720 ILCS 5/11-19 | Pimping |
| 720 ILCS 5/11-19.1 | Juvenile pimping |
| 720 ILCS 5/11-19.2 | Exploitation of a child |
| 720 ILCS 5/12-2 | Aggravated assault |
| 720 ILCS 5/12-4 | Aggravated battery |
| 720 ILCS 5/12-4.1 | Heinous battery |
| 720 ILCS 5/12-4.2 | Aggravated battery with a firearm |
| 720 ILCS 5/12-4.3 | Aggravated battery of a child |
| 720 ILCS 5/12-4.6 | Aggravated battery of a senior citizen |
| 720 ILCS 5/12-4.7 | Drug induced infliction of great bodily harm |
| 720 ILCS 5/20-2 | Possession of explosives or incendiary device |
| 720 ILCS 5/24-1 | Unlawful Use of Weapon |
| 720 ILCS 5/24-1.2 | Aggravated discharge of a firearm |
| 720 ILCS 5/24-2.1 | Unlawful use of firearm projectile (armor piercing bullets) |
| 720 ILCS 5/24-3.1 | Unlawful possession of firearms / ammunition |
| 720 ILCS 5/24-3.3 | Unlawful sale or delivery of firearms at school |
| 720 ILCS 5/32-5.1 | False impersonation of a peace officer |
| 720 ILCS 5/32-5.2 | Aggravated false impersonation of a peace officer |

| 720 ILCS 5/33 A-2 | Armed violence |
|---|---|
| 235 ILCS 5/6-16 | Prohibited Sales and Possessions of Alcohol |
| 235 ILCS 5/6-20 | Purchase or acceptance of alcohol by underage persons |
| 720 ILCS 5/31-1 et. seq. | Any offense defined and prohibited by Article 31 of the Criminal Code of 1961 |
| 720 ILCS 5/12-1 et. seq. | Any offense defined and prohibited by Article 12 of the Criminal Code of 1961 |
| 720 ILCS 5/16-1 et. seq. | Any offense defined and prohibited by Article 16 of the Criminal Code of 1961 |
| 720 ILCS 5/16A-1 et. seq. | Any offense defined and prohibited by Article 16A of the Criminal Code of 1961 |
| 720 ILCS 5/20.5-1 et. seq. | Any offense defined and prohibited by Article 20 of the Criminal Code of 1961 |
| 720 ILCS 5/21-1 et. seq. | Any offense defined and prohibited by Article 21 of the Criminal Code of 1961 |
| 720 ILCS 5/25-1 et. seq. | Any offense defined and prohibited by Article 25 of the Criminal Code of 1961 |
| 720 ILCS 5/26-1 et. seq. | Any offense defined and prohibited by Article 26 of the Criminal Code of 1961 |
| 720 ILCS 570/100 et. seq. | Any offense defined and prohibited by the Controlled Substance Act |
| 720 ILCS 550/1 et. seq. | Any offense defined and prohibited by the Cannabis Control Act |
| 720 ILCS 600/1 et. seq. | Any offense defined and prohibited by the Drug Paraphernalia Control Act |
| *720 ILCS 555/0.01 et. seq. | Any offense defined and prohibited by the Child Curfew Act **(Note - Child curfew is a discretionary tow regardless of whether a custodial arrest is made.)** |

Certain Traffic Offenses

| *625 ILCS 5/6-101 | Operating a motor vehicle with no valid drivers license |
|---|---|
| 625 ILCS 5/6-301 et. seq. | Any offense defined and prohibited by Chapter 6 Article III of the Illinois Motor Vehicle Code |
| 625 ILCS 5/11-204 | Fleeing and attempting to elude a peace officer |
| 625 ILCS 5/11-204.1 | Aggravated fleeing and attempting to elude a peace officer |
| *625 ILCS 5/3-701 et. seq. | Any offense defined and prohibited by Chapter 3, Article VII of the Illinois Motor Vehicle Code |
| *625 ILCS 5/6-303 (a) 1 | Operating a motor vehicle with suspended driver's license |
| 625 ILCS 5/6-303 (a) 2 | Operating a motor vehicle with revoked drivers license **(Note - MANDATORY tow under 625 ILCS 5/6-303 (e) & 5/6-101 (d) if driver suspended/revoked AND no insurance.)** |
| 625 ILCS 5/11-501 | D.U.I. alcohol, intoxicating compounds and/or other drugs **[Note - MINIMUM 12 hour tow & hold under 625 ILCS 4-203 (e)]** |
| *625 ILCS 5/3-702 | Operation when registration cancelled, suspended or revoked |

| | |
|---|---|
| *625 ILCS 5/3-703 | Operating with false, fraudulent, stolen or altered registration |
| *625 ILCS 5/3-708 | Operation while registration suspended for mandatory insurance |
| *625 ILCS 5/3-710 | Presenting or displaying a false, fraudulent insurance card |
| | |
| 625 ILCS 5/11-401 | Hit and run (personal injury) |
| *625 ILCS 5/11-402 | Hit and run (property damage) |
| *625 ILCS 5/11-403 | Hit and run (duty to render aid) |
| *625 ILCS 5/11-404 | Hit and run (unattended motor vehicle) |
| *625 ILCS 5/12-212 | Illegal use of flashing red lights front of vehicle |
| *625 ILCS 5/12-215 | Illegal use of oscillating, rotating or flashing lights |
| *625 ILCS 5/5-502 | Transportation or possession of open alcoholic liquor in a vehicle |
| 625 ILCS 5/5-503 | Reckless driving |
| 625 ILCS 5/5-504 | Drag racing |
| *625 ILCS 5/5-505 | Prohibited maneuver-squealing, screeching tires |
| *625 ILCS 5/12-611 | Loud sound amplification violation (75 feet) |
| *625 ILCS 5/12-602 | Loud / altered muffler |
| *625 ILCS 5/12-503 (a) | Tinted windows |

**\*Is considered to be a discretionary tow by the officer on the scene, unless a custodial arrest is made.**

**EXHIBIT**
**3**

be subject to towing and/or impound where an ordinance has established the parking prohibition or regulation at issue, and where signage has been posted advising of such parking prohibition and the potential for vehicles in violation to be towed.

F.  PROCEDURES FOR VEHICLE TOW AND INVENTORY

1.  When a vehicle is to be towed or seized pursuant to Village Ordinance or the Illinois Compiled Statutes (ILCS), an eligible towing company shall be utilized in accordance with the provisions of Chapter 81. Seized vehicles shall be towed to the appropriate seizure lot. In conducting the tow and inventory, the impounding officer(s) shall:

   a.  Make every effort to ascertain the identity and address of the registered owners, run a stolen check on the V.I.N. and plate through N.C.I.C/L.E.A.D.S.

   b.  Determine if there should be a "hold" placed on the vehicle for further investigation. Examples of grounds for the placement of a hold include but are not limited to 12-hour DUI hold, Evidence Processing hold, Narcotics Seizures, etc.

   c.  Conduct an inventory of the vehicle contents listing the articles located therein and opening any closed containers and listing their contents. The contents inventory is for the purposes of protecting the officer and /or department from liability based upon claims of damaged or missing property, and to protect against dangerous instrumentalities. Any items, which may be contraband, evidence, or instrumentalities of a crime, shall be removed. The contracted towing company shall be responsible for the custody and safekeeping of all other property left in the vehicle. Any property taken into custody by the officer should be entered into property for safekeeping.

   d.  Submit the complete Tow Report through routine report review channels by the end of the tour of duty.

2.  Nothing in this procedure shall be construed to enhance or diminish the law of search and seizure. Searches based on probable cause, consent, warrants, or incident to arrest may still be conducted regardless of whether a waiver of tow is obtained, circumstances permitting.

G.  WAIVER OF TOW

1.  When the operator of a vehicle has been arrested and removed from control of the vehicle, a police officer is authorized, although not required, to waive towing of the vehicle if the following conditions exist.

3

a.  The arrested person is the owner or authorized possessor of the vehicle and will assume responsibility for the safety of the vehicle and its contents.

b.  The arrested person is capable of making a rational decision concerning the disposition of the vehicle or a co-owner or other person entitled to possession can be readily notified for the purpose of determining disposition.

c.  The vehicle is or can be legally parked or the lawful owner/possessor desires to allow another licensed driver to take control of the vehicle.

d.  Impoundment would interfere with the provision of police services and adversely affect public safety.

## H.  ADMINISTRATIVE TOWING REQUIREMENTS

1.  Under Chapter 81 of the Village Code of Ordinances, vehicles that are used in connection with the commission of certain offenses may be impounded.  For purposes of Chapter 81 and this policy, impoundment means the practice of towing and thereafter restricting the release of a motor vehicle used in connection with the commission of specified criminal offenses unless and until an administrative fee of $500.00 is paid to the Village, or a Village hearing officer determines after a hearing that the vehicle in question should not have been impounded. Motor vehicles may only be impounded when used in connection with the criminal offenses set forth in Appendix A to this policy.

2.  Impoundment of a vehicle should be distinguished from a towing of a vehicle.  While all impounded vehicles will be towed, not all towed vehicles are or should be considered to be impounded.  Only those vehicles used in connection with the offenses listed in Appendix A may be or are subject to impoundment and the $500.00 administrative fee. The fee does not apply to towed vehicles that are not impounded.

    a.  Whenever a police officer has probable cause to believe that a vehicle is subject to seizure the police officer shall provide for the towing of the vehicle to a facility authorized by the department.

    b.  Vehicles may be towed for <u>multiple</u> reasons; Abandoned, Accident, Owners request, Obstructing a roadway (10-46), Drug impoundment, Evidentiary impoundment, Arrest (non-administrative) or Administrative under Chapter 81.251. Note the reason for the tow and the holds on the tow report.

    c.  Vehicles shall not be impounded under Chapter 81.251 or this procedure when held for evidence in conjunction with a felony

**EXHIBIT**
**4**

# GENERAL ORDER

ROMEOVILLE POLICE DEPARTMENT

| DATE ISSUED: | EFFECTIVE DATE: | NO: |
|---|---|---|
| 03/24/93 | Immediate | G.O. 3-901 |

| SUBJECT: | AMENDS: | RESCINDS: | SECTION CODE: |
|---|---|---|---|
| **PRODUCTIVITY OBJECTIVES** | | | DISTRIBUTION: **SWORN PERSONNEL** |

## POLICY

IT IS THE POLICY OF THIS DEPARTMENT THAT ALL OFFICERS ARE EXPECTED TO PERFORM SPECIFIC JOBS IN ADDITION TO THEIR NORMAL DUTIES WHILE ON DUTY.  THROUGH THE COMPLETION OF THESE FUNCTIONS, THE OFFICER WILL BETTER BE ABLE TO FULFILL THE DEPARTMENT's PURPOSE TO SERVE THE COMMUNITY AND PARTICIPATE IN A PRO-ACTIVE STANCE IN FURTHERING THE DEPARTMENT MISSION.

## PROCEDURE

WHENEVER AN OFFICER IS ASSIGNED TO PATROL DUTIES, HE/SHE WILL BE EXPECTED TO PERFORM THE FOLLOWING MINIMUM REQUIREMENTS DURING HIS/HER EIGHT-HOUR DUTY SHIFT:

1. PERFORM COMMUNITY-ORIENTED POLICING BY PATROLLING THE AREA AND MAKING CONTACT WITH PEOPLE IN THAT LOCATION ON AN ASSIGNED BASIS BY HIS/HER SHIFT SUPERVISOR.

    A. KNOWN AREAS OF GANG AND DRUG ACTIVITY ARE TO BE EMPHASIZED.

2. COMPLETE A DEPARTMENT VEHICLE MAINTENANCE CHECK ON HIS/HER ASSIGNED SQUAD FOR THAT SHIFT.

3. MAINTAIN ALL EQUIPMENT AND UNIFORM TO THE DEPARTMENT STANDARDS, I.E., RADAR, HEPATITIS B SUPPLIES.

4. PERFORM SELECTIVE TRAFFIC ENFORCEMENT BY

    A. ISSUING ONE (1) UNIFORM TRAFFIC CITATION;

    B. ISSUING ONE (1) ADMINISTRATIVE WARNING TICKET (AWT);

    C. ISSUING ONE (1) ROMEOVILLE POLICE DEPARTMENT PARKING TICKET.

5. COMPLETE ALL TRAINING THAT IS REQUIRED AND ASSIGNED, I.E., REVIEWING OF VCR TAPES, WATCHING TRAINING PROGRAMS ON LETN, COMPLETE COMPUTERIZED TRAINING ON DISKETTE OR ANY OTHER TRAINING AS ASSIGNED BY THE SUPERVISOR.

6. PERFORM ALL OTHER DUTIES AS MAY BE ASSIGNED BY THE SHIFT SUPERVISOR OR A SUPERIOR OFFICER.

CONTINUED........

By Order of ANDREW J. BARTO
CHIEF OF POLICE

**EXHIBIT**
**5**

# IN THE CIRCUIT COURT OF THE 12TH JUDICIAL CIRCUIT
## WILL COUNTY, ILLINOIS

DCN # _____     **BAIL BOND**     Court Case No. _____
Offense: _____

THE PEOPLE OF ILLINOIS

Municipality _____

**VS.**

Defendant Name: _____

Case Report No. _____   Ticket No. _____

Bail Bond Type:

☐ CASH BOND   ☐ 10% DEPOSIT   ☐ DRIVER'S LIC
Amount of Deposit: $ _____

☐ PERSONAL RECOGNIZANCE
in the Amount of $_____

Approved: _____ Judge

☐ REAL ESTATE or STOCKS/BONDS per sworn statement
and schedule in the amount of $ _____

Approved: _____ Judge

Defendant Name: _____
(A.K.A. _____ )

Address: _____  Phone _____

City/State/Zip: _____

Sex: M/F   DOB _____   Race _____

Eyes _____ Hair _____ Ht _____ Wt _____

SS# _____ DLN _____

Surety: _____

Amount of Bail: $ _____

Bond Rec'd at: _____
Police Dept./Other

Defendant to Appear:

Date: _____   Time: _____

Court Location / Room No. _____

I, the undersigned, as Defendant, do hereby acknowledge myself to be indebted to THE PEOPLE OF THE STATE OF ILLINOIS in the sum of the amount indicated as bail. Said bail is deposited in the case now pending against me, and I, as Defendant acknowledge the conditions of the bail that follow.

### CONDITIONS OF BAIL BOND

1. **Defendant is not to leave the State of Illinois without permission of the Court.**
2. **Defendant is to give written notice to the Clerk of this Court of any change of address within 24 hours of such change.**
3. **Defendant shall not violate any criminal statute of any jurisdiction.**
4. **Failure to appear for trial shall result in the case being tried in absentia.**
5. **Defendant shall comply with any additional terms and conditions of this bail bond on domestic violence offenses.**
6. **Defendant shall not possess firearm.**
7. **Additional Conditions** _____
8. **No contact with:** _____

_____
Signature of Defendant

### CERTIFICATE OF DEFENDANT

I, the Defendant named above, do hereby state that I know and understand the terms and conditions of this bail bond as shown on the **FRONT AND REVERSE SIDES** of this bail form. I understand further that if at any time prior to the final disposition of the charge(s) I escaped or am released on bond and fail to appear in Court when required by the Court, the result of my failure to appear will be as follow: I thereby waive my right to confront the witnesses against me; the trial can proceed in my absence; I forfeit the security money posted; judgement will be entered against me for the full amount of this bond, plus costs; a warrant may be issued, in which event additional bond money may be required. I understand and accept the terms and conditions set forth above and on the reverse side of this bail bond.

Signature of Defendant: _____

## NOTICE TO PERSON PROVIDING BAIL MONEY OTHER THAN DEFENDANT

*I, the undersigned, have read and fully understand that if the defendant fails to comply with the conditions of the bail bond, the Court shall enter an order declaring the bail to be forfeited. Further I understand that in the event the defendant is convicted of a crime, the bail may be used to pay costs, attorney's fees, fines or for other purposes ordered by the Court. For bonds $10,000 or greater, a date of birth and social security number of the surety are necessary.* Social Security # _____ D.O.B. _____

*Signature* _____ Name: (Print) _____

*Address:* _____ City: _____ State: _____ Zip: _____

### ASSIGNMENT OF BAIL BOND BY THE DEFENDANT

I hereby authorize the return of the monies posted above to the person shown on this bail bond as having provided monies for my bail after all conditions of this bail have been met.
Signature of Defendant: _____

Issued on this date: _____
Signed before me and security received.

_____ Police Department _____
Judge/Police Officer

_____
Circuit Clerk

White - Circuit Court Clerk      Yellow - Defendant      Pink - Police Department

**CLERK OF THE 12TH JUDICIAL CIRCUIT COURT
JOLIET, ILLINOIS 60432-4359
PAMELA J. McGUIRE**

5

**EXHIBIT
6**

# ROMEOVILLE POLICE DEPARTMENT
## TOW REPORT

CASE NO. _____                    ACCIDENT NO._____

When Reported_____M. _____ 20_____
Reported by _____ Phone _____
Address_____City _____State _____
Where was vehicle found _____

### DESCRIPTION OF MOTOR VEHICLE

COLOR _____YEAR _____ MAKE _____ MFGS. TRADE NAME _____
MFGS. SERIES NAME_____BODY STYLE _____
V.I.N. _____ LICENSE _____
                                          (Year)          (State)          (Number)

Distinguishing marks and accessories _____
_____

Abandoned _____Wrecked _____ Driveable _____ Stolen_____
          (yes-no)   (How long)                (yes-no)              (yes-no)              (yes-no)
Other reason for tow _____
Vehicle Owner, if known _____ Phone _____
Address_____City _____State _____
Eligible for Release _____ Reason for Holding _____
                      (yes-no)
Owner Present _____Doors Locked _____ Keys in Vehicle _____
              (yes-no)                           (yes-no)                           (yes-no)
Trunk Locked _____Odometer Reading _____ Sticker _____
             (yes-no)                                                          (type)      (number)
Parts Missing _____
List Personal Effects in Vehicle_____
_____

TOWING AGENCY_____
                      (Name)                          (Address)                    (Phone)

   The information concerning the condition of the vehicle and the personal effects contained therein, as listed above, are true
and correct. _____
                                          (Tow Truck Operation)

DRIVER/OWNER OF VEHICLE (if present)_____
                                                          (Name)

_____
          (Address)                                          (Phone)

   I hereby authorize said towing agency to tow the above described vehicle to the specified location. The information concerning
the condition of the vehicle and the personal effects therein, as listed above, are true and correct.

_____
                                          (Driver/Owner)

Vehicle Towed to _____ Phone _____
Address_____City _____State _____
on _____ , 20_____; at _____ o'clock _____M.

   The foregoing information is true and correct to the best of my knowledge. I hereby authorize the towing of this vehicle
_____ 20 _____
_____       _____
          (Officer)                          (I.D. No.)
Approval of Supervising Officer _____ 20 _____
                                          (Officer)

6

**HEARTBREAK TOWING**
P.O. Box 7063
ROMEOVILLE, ILLINOIS 60446
(630) 759-0266    (815) 886-0191

# Road Service

| | | | |
|---|---|---|---|
| DATE 10/30/07 | TIME | A.M. P.M. | REQUESTED BY Romeo PD #07-466310 |

| NAME | | PHONE |
|---|---|---|

| ADDRESS | | |
|---|---|---|

| CITY | STATE | ZIP |
|---|---|---|

LOCATION OF VEHICLE   WEBER    AT    AIRPORT    RD

| YEAR MAKE MODEL 91  HONDA | CIVIC | COLOR Blue | DRIVER 90 L |
|---|---|---|---|

| STATE IL | LIC. PLATE NO. 206022 | VEHICLE ID. NO. JHMEE 48 L1mS00 2212 | REGISTERED OWNER |
|---|---|---|---|

| MILEAGE | SERVICE TIME | EXTRA PERSON |
|---|---|---|
| FINISH _____ | FINISH _____ | FINISH _____ |
| START _____ | START _____ | START _____ |
| TOTAL _____ | TOTAL _____ | TOTAL _____ |

**REASON FOR TOW**

| | | |
|---|---|---|
| ☐ ACCIDENT | ☐ ABANDONED | ☐ FLAT TIRE |
| ☒ ARREST | ☐ STOLEN CAR | ☐ OUT OF GAS |
| ☐ UNREGISTERED | ☐ BREAK DOWN | ☐ IMPOUNDED |
| ☐ TOW ZONE | ☐ LOCK OUT | ☐ |
| ☐ SNOW REMOVAL | ☐ START | ☐ 1 KEY |

**SPECIAL EQUIPMENT**

- ☐ SINGLE LINE WINCHING
- ☐ DUAL LINE WINCHING
- ☐ SNATCH BLOCKS
- ☐ SCOTCH BLOCKS
- ☐ DOLLY

**TYPE OF TOW**

- ☐ SLING/ HOIST TOW
- ☐ FLAT BED/ RAMP
- ☒ WHEEL LIFT
- ☐

**TOWED PER ORDER OF**

- ☐ STATE POLICE
- ☒ LOCAL POLICE
- ☐ OWNER
- ☐ DEALER

**VEHICLE TOWED TO**

FIRST TOW   HB  TOWING

SECOND TOW   Lot

| STORAGE FROM | | | |
|---|---|---|---|
| TO _____ | DAYS @ $ | TOWING CHARGE | 100.00 |
| | | MILEAGE CHARGE | |
| **PAID BY** | | EXTRA PERSON | |
| ☐ CASH  ☐ CHECK   DRIVERS LIC. NO. | | SPECIAL EQUIPMENT | |
| ☒ CREDIT CARD  ☐ MC  ☒ VISA  ☐ AMEX   #EXP DATE | | LABOR CHARGE | |
| CC NO.   CODE  300 | | STORAGE | |
| OPERATOR'S SIGNATURE   DATE | | | |
| TRUCK NO.   02 I I | | SUB-TOTAL | |
| AUTHORIZED SIGNATURE   DATE | | TAX | |
| VEHICLE RELEASED TO   _____   DATE | | TOTAL | 100 ⁰⁰ |

28085

Not responsible for loss or damage to vehicle
in case of fire, theft or any other cause beyond our control.

**Thank You**
PRODUCT 2525



**Village of** **Romeoville**

**Police Department**

**Mayor**
Fred Dewald

**Clerk**
Raymond E. Holloway

**Trustees**
Linda S. Palmiter
Dr. Edward McCartan
Dennis Veselsky
John D. Noak
Andy Goitia
Michele Nelson •

**Chief of Police**
Andrew J. Barto

Owner Name: _WILLIE BROWN_

Address: _601 THEODORE ST_

_JOLIET, IL. 60435_

Mail/Delivery Date: _10/30/07_

Mailed/Delivered By: _10/30/07_

• • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • •

## VEHICLE POST TOW/IMPOUNDMENT NOTICE

Per Village of Romeoville Code of Ordinance Chapter 81 "Motor Vehicle Towing", owners of vehicles towed and/or impounded shall be provided the opportunity for a post-tow hearing to determine the validity of such tow and any towing or storage charges. The hearing will not be determinative of, or adjudicate, any citation issued relative to any towed vehicle.

Hearings must be requested within 15 days of the mailing or personal delivery of this notification of tow, or release of the vehicle, whichever occurs first; otherwise, the right to a hearing shall be deemed waived.

Requests for post-tow hearings must be made in person or by mail to the Romeoville Police Department, 10 Montrose Drive, Romeoville, Illinois 60446.

• • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • •

Hearing Requested ☑

Date Hearing Request Received: _10/30/07_

Received By: _MM_

---

10 Montrose Drive    Romeoville, IL 60446    Tel. 815/886-7219    Emergency 9-1-1    Fax 815/886-2763

**EXHIBIT**
**7**



**Police Department**

**Mayor**
Fred Dewald

**Clerk**
Raymond E. Holloway

**Trustees**
Linda S. Palmiter
Dr. Edward McCartan
John D. Noak
Andy Goitia
Michelle Annerino

**Chief of Police**
Andrew J. Barto

November 6, 2007


Willie Brown
601 Theodore St.
Joliet, IL   60435


Dear Mr. Brown,

On October 30, 2007, you requested a hearing to dispute the imposition of the Administrative Towing Fee that was placed on your vehicle. The purpose of this hearing is to determine whether or not the officer acted within the village ordinance and according to department policy in towing and placing the fee on your vehicle. If it is found during the hearing that officer acted occurring to Village and Department policy, you will not receive a refund of the administrative tow fee. This hearing does not take the place of court nor does it give you the opportunity to discuss any citations you may have received.

Your hearing date, time and location are as follows:

Date:  November 20, 2007
Time:  11:00 A.M.
Location:  Romeoville Police Department, 10 Montrose Dr. Romeoville, IL

Please be prepared to discuss your issues at this time.


Sincerely,

Mark Turvey
Operations Lieutenant

7

**EXHIBIT
8**



Police Department

**Mayor**
Fred Dewald

**Clerk**
Raymond E. Holloway

**Trustees**
Linda S. Palmiter
Dr. Edward McCartan
John D. Noak
Andy Goitia
Michelle Annerino

**Chief of Police**
Andrew J. Barto

November 21, 2007

Willie Brown
601 Theodore St.
Joliet, IL 60435

RE: Post Tow Hearing

On November 20, 2007, a post tow hearing was held at the Romeoville Police Department to determine the validity of your vehicle impound. All evidence presented by the vehicle owner has been reviewed, and the Hearing Officer's finding is "*tow justified.*" Therefore, the administrative fee and all towing and storage charges are hereby upheld and are the responsibility of the vehicle owner.

Respectfully,

Andrew J. Barto
Chief of Police

*8*

**EXHIBIT**
**9**



**Village of**

# Romeoville

**Police Department**

**Mayor**
Fred Dewald

**Clerk**
Raymond E. Holloway

**Trustees**
Linda S. Palmiter
Dr. Edward McCartan
John D. Noak
Andy Goitia
Michelle Annerino

**Chief of Police**
Andrew J. Barto

Willie Brown
601 Theodore St.
Joliet, IL 60435

November 7, 2007

Mr. Brown:

Your request for a copy of Romeoville Police Records (07-6140) has been denied. This denial is based on the fact that you as a defendant in a still pending court action may only obtain a copy of this record with a proper court order. I can be contacted at 815- 886-7219 if you have any questions in regards to this matter.

*K. Showers*

K. Showers
Records Supervisor

Right to Appeal

If your request for records under the freedom of information act has been denied, in-whole or in-part, you have the right to appeal this decision in writing, within seven (7) days, to the Office of the Chief of Police.

· 9 ·

**EXHIBIT
10**

# TRACY, JOHNSON & WILSON

First Community Bank Building, Second Floor
2801 Black Road
Joliet, IL 60435

Richard H. Teas
Raymond E. Meader
A. Michael Wojtak
Kenneth A. Carlson
John S. Gallo
Richard E. Vogel
Cory D. Lund
Lawrence M. Kaschak

TELEPHONE (815) 723-8500
FAX (815) 727-4846
e-mail address: jolietlaw@tracylawfirm.com

Louis R. Bertani (1928-1999)
Thomas R. Wilson (1929-2001)
Donald J. Tracy (1926-2003)

Wayne R. Johnson (retired)

January 8, 2008

Mr. Willie Brown
601 Theodore Street
Joliet, Illinois 60435

    Re:    Village of Romeoville v. Willie Brown
           Will County Case No. 07 OV 8956

Dear Mr. Brown:

Enclosed please find a copy of the police report in regard to the above matter.

        Sincerely,

        TRACY, JOHNSON & WILSON

        *Lawrence Kaschak/ka*

        Lawrence M. Kaschak

LMK/kda
Enclosure

# POLICE INCIDENT REPORT

| ROMEOVILLE POLICE DEPARTMENT | 2. SUPPLEMENTAL REPORTS CIRCLE (ARREST) (TOW) PROPERTY CITATION OTHER | 3. INCIDENT REPORT # 07-46810 | 4. CASE REPORT # 07-6140 |
|---|---|---|---|
| 5. ZONE OF OCCURRENCE 5 | 6. ZONE OF ASSIGNMENT 4 | 7. DAY / DATE / TIME OCCURRED Tuesday 10/30/07 1605 Hrs. | 8. DAY / DATE / TIME REPORTED Tuesday 10/30/07 1608 Hrs. | 9. STATUS 03 |

| 10. UCR | 11. CA | 12. CIRC | 13. OFFENSE | 14. F | 15. LOCATION |
|---|---|---|---|---|---|
| 2890 | | | 1) Disorderly Conduct | | E/B Airport approaching Weber |
| | | | 2) | F | 16. TYPE OF PLACE OF OCCURRENCE Road |
| | | | | | 17. CODE 311 |
| | | | 3) | F | 18. WEAPON / TOOL USED Motor Vehicle |
| | | | | | 19. CODE 35  20. BIAS CODE 88 |
| | | | 4) | F | 21. Was there a witness ☒Y ☐N  Can Suspect be named ☒Y ☐N |
| | | | | | Can Suspect be located ☒Y ☐N  Can Suspect be identified ☒Y ☐N |

| NO 22 1 | 23. VOA/OTHER V | 24. TYPE I | 25. NAME Sanders, Mary R. | 26. SEX F | 27. RACE W | 28. DATE OF BIRTH 08/22/59 |
|---|---|---|---|---|---|---|
| 29. ① ② 2 3 4 | 30. INJURY N | 31. EMP Y U ⊗ S M C | 32. USE A D C | 33. ADDRESS 15127 Pinewood Road, Lockport, IL 60441 | 34. HOME TX 815-838-1480  WORK TX 708-227-3419 | |
| 35. OV/RELATION 3 | 36. VO/RELATION ST | 37. AGE 48 | 38. HEIGHT | 39. WEIGHT | 40. HAIR | 41. EYES | 42. SOCIAL SECURITY NO. | 43. DRIVERS LICENSE NO. S536-5965-9839 | 44. STATE IL |
| 45. GANG AFFILIATION | 46. CODE | 47. MISC. INFORMATION | | | 49. PLACE OF EMPLOYMENT OR SCHOOL (unemployed) |

| NO 22 2 | 23. VOA/OTHER V | 24. TYPE I | 25. NAME Bova, Amy M. | 26. SEX F | 27. RACE W | 28. DATE OF BIRTH 12/08/84 |
|---|---|---|---|---|---|---|
| 29. ① ② 2 3 4 | 30. INJURY N | 31. EMP Y U N S M C | 32. USE A D C | 33. ADDRESS 16748 Oconto Avenue, Tinley Park, IL 60477 | 34. HOME TX 708-444-7171  WORK TX 708-254-1385 | |
| 35. OV/RELATION 3 | 36. VO/RELATION ST | 37. AGE 22 | 38. HEIGHT | 39. WEIGHT | 40. HAIR | 41. EYES | 42. SOCIAL SECURITY NO. | 43. DRIVERS LICENSE NO. B100-0138-4949 | 44. STATE IL |
| 45. GANG AFFILIATION | 46. CODE | 47. CHARGES / MISC. COURT DATE & TIME | | 48. ARREST NO. | 49. PLACE OF EMPLOYMENT OR SCHOOL Salon Salon Too |

| NO 22 3 | 23. VOA/OTHER A | 24. TYPE 87 | 25. NAME Brown, Willie | 26. SEX M | 27. RACE B | 28. DATE OF BIRTH 05/29/54 |
|---|---|---|---|---|---|---|
| 29. 1 2 3 4 | 30. INJURY N | 31. EMP Y U N S M C | 32. USE A D C | 33. ADDRESS 601 Theodore Street, Joliet, IL 60435 | 34. HOME TX 815-740-1467  WORK TX 815-212-9615 | |
| 35. OV/RELATION 3 | 36. VO/RELATION | 37. AGE 53 | 38. HEIGHT 510 | 39. WEIGHT 185 | 40. HAIR BLK | 41. EYES BRO | 42. SOCIAL SECURITY NO. 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 | 43. DRIVERS LICENSE NO. B650-8805-4153 | 44. STATE IL |
| 45. GANG AFFILIATION | 46. CODE | 47. CHARGES / MISC. COURT DATE & TIME 1, 12/10/07 0900 Hrs., Bolingbrook (local) | 48. ARREST NO. 07-1569 | 49. PLACE OF EMPLOYMENT OR SCHOOL (self-employed) |

| 50 TYPE O/T | 51 COLOR / COLOR Blue | 52 YEAR 1991 | 53. MAKE Honda | 54. MODEL (wagon) | 55. BODY STYLE 4 DR | 56. LICENSE 9286062 | 57. STATE IL | 58. YEAR 2008 |
|---|---|---|---|---|---|---|---|---|
| 59. VIN OR OTHER DISTINGUISHING MARKS JHMEE4861MS002212 | | | 60. VEHICLE FINANCED YES NO  WHERE FINANCED | | 61. VALUE | 62. TOWED/HOLD Heartbreak / Admin. | | |
| 63. EVIDENCE INFORMATION | | | 64. PROPERTY INV. #  MOTOR VEH INV. # | | | 65. LEADS / ISPERN NO. | | |

| 66 LOSS CODE | 67 OFF | 68. PROP | 69 DESCRIPTION OF PROPERTY | 70 MANUFACTURER | 71 MODEL / SERIAL NO. | 72 QUANTITY | 73. VALUE |
|---|---|---|---|---|---|---|---|
| | | | See page #2 for narrative. | | | | |

| 75. OFFICERS AT SCENE - REPORTING OFFICER FIRST D. Zakula Jr. 374, 348 | 76. REPORTING OFFICER SIGNATURE | 77. RELATED C.R.s | 78. TIME CONSUMED 2.0 HRS |
|---|---|---|---|
| 79. COPY TO: ☐ INVEST ☐ DISPATCH ☐ CODE ☐ VILLAGE ATTY. ☐ STATE's ATTY. ☐ OTHER | 80. ASSISTING AGENCIES | 81. FIELD SUPERVISOR SIGNATURE | 82. SUPERVISOR APPROVING |

10

# NARRATIVE/PROPERTY CONTINUATION

| ROMEOVILLE POLICE DEPARTMENT | SUPPLEMENTAL REPORTS CIRCLE (ARREST) (TOW) PROPERTY CITATION OTHER | INCIDENT REPORT # 07-46810 | CASE REPORT NO. 07-6140 | |
|---|---|---|---|---|
| PAGE # 2 | OFFENSE Disorderly Conduct | VICTIM/COMPLAINANT Sanders & Bova | DATE THIS REPORT 10/30/07 | STATUS 03 |

| LOSS CODE | OFF | PROP. CODE | DESCRIPTION OF PROPERTY | MANUFACTURER | MODEL/SERIAL NO. | QUANTITY | VALUE |
|---|---|---|---|---|---|---|---|

On Tuesday 10/30/07 at approximately 1608 Hrs., I was dispatched to the area of Weber and Airport reference a road rage incident in progress. I was able to locate the two vehicles involved with direction from dispatch. The offending vehicle was described as a blue 4-door Honda (IL- 9286062). Dispatch relayed information from the victim who said the offender was slamming on his brakes trying to cause a crash. Next, I performed an investigative stop on the offending vehicle on Weber south of Airport, and the victim stopped behind me.

First, I spoke with the driver of the offending vehicle. He presented an IL driver's license identifying him as Willie Brown. Brown said he was being stopped because "he happened to get behind the only bitch on the road." He said that the victim's vehicle was traveling extremely slow on Airport so he passed her. He did not make any claims against the victim's vehicle at this time, but was clearly frustrated that I was stopping him. Brown did lead me to believe there was an incident that had taken place because he refered to the victim as a "bitch" several times. It was clear to me he was angry with the victim from my initial contact with him.

Next, I spoke with the occupants of the victim's vehicle. The driver, Mary R. Sanders, and the passenger, Amy M. Bova, both described the incident. I noticed that Bova was shaking in fear as I spoke with her. They collectively stated that they were traveling eastbound on Airport while Brown was following them too close for their comfort. At this time, Sanders slowed down and pulled to the right at Richfield to allow Brown a clear path to pass and continue on. When she did that, Brown pulled around her to the left and passed in a no passing zone while putting his middle finger up at Sanders and Bova. He then pulled in front of them and stopped in the roadway. There were no other vehicles in front of Brown or behind Sanders. Brown exited his vehicle and walked back to Sanders vehicle and called both of the victims "fucking bitches!" Bova stated she feared for her safety and was alarmed and disturbed by Brown which caused her to lock the car doors. Next, Brown walked back to his vehicle and continued eastbound on Airport. As he did so, Brown randomly slammed on his brakes several times to shock Sanders and Bova while showing his middle finger again out the back window. It was at this time I located the vehicles.

Brown first told Officer Sloup #348 that he never exited the vehicle; however, I noticed he was not wearing his seatbelt when I initially approached his vehicle. After I confronted him with Sanders' statement that he did exit his vehicle, he said that he opened his door and started to get out, but never completely exited his vehicle.

Sanders and Bova both signed a complaint against Brown for Disorderly Conduct. Brown was subsequently placed under arrest and transported to Romeoville Police Department for booking procedures. His vehicle was towed by Heartbreak to Heartbreak with an administrative hold. He was advised to appear at 375 W. Briarcliff, Bolingbrook, IL on 12/10/07 at 0900 Hrs. for his arraignment and released on a $100.00 Cash Bond.

It should be noted that both victims adamantly requested their personal information (last name, address, phone number, etc.) be kept private from Brown for their safety.

| OFFICERS AT SCENE - REPORTING OFFICER FIRST D. Zakula Jr. 374, 348 | REPORTING OFFICER SIGNATURE _Zakula L._ 374 | RELATED C.R. # |
|---|---|---|
| COPY TO ☐ VILLAGE ATT. ☐ STATE'S ATTY. ☐ OTHER | OTHER AGENCIES INVOLVED | FIELD SUPERVISOR SIGNATURE #309 | SUPERVISOR APPROVED #341 |

10/30/2007

# ROMEOVILLE POLICE DEPARTMENT
## ARREST REPORT

| 1. CR Number 070000006140 | 2. ADULT | 3. IL SID # 15919050 | 4. FBI # 343102DA6 | 5. Booking Number |
|---|---|---|---|---|

| 6. Last Name  First Name  Middle BROWN, WILLIE | 7. DLN # / State B65088054153 | 8. SSN # 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 |
|---|---|---|

| 9. Address (include street, city, state, zip) 601 THEODORE STREET, JOLIET, IL, 60435 | 10. Phone 815-740-1467 |
|---|---|

| 11. Sex M | 12. Race B | 13. DOB 05/29/1954 | 14. Height 5' 10" | 15. Weight 185 | 16. Eyes BRO | 17. Hair BLK | 18. Skin DRK |
|---|---|---|---|---|---|---|---|

**19. Scars/Marks/Tattoos/Amputations**

| 20. Place of Birth  US | 21. Caution (s) |
|---|---|

| 22. AKA Name | 23. AKA DOB | 24. Occupation (SELF EMPLOYED) |
|---|---|---|

| 25. Employer Name | 26. Employer Address/Location |
|---|---|

**VEHICLE**

| 27. Year 1991 | 28. Make Honda | 29. Model | 30. Doors 4 | 31. Color Blue | 32. License # 9286062 | 33. State IL |
|---|---|---|---|---|---|---|

**34. Cause for Arrest**

- [ ] CITA — CITATION
- [x] COMP — COMPLAINT
- [ ] CRTO — COURT ORDER
- [ ] FWAR — FOREIGN WARRANT
- [ ] WARR — LOCAL WARRANT
- [ ] VIEW — ON VIEW
- [ ] OTHR — OTHER

**35. Custody Disposition**

- [x] BOND — BONDED OUT
- [ ] RWCH — RELEASED WITHOUT CHARGE
- [ ] JAIL — TRANSFERRED TO COUNTY JAIL
- [ ] DMH — TRANSFERRED TO DEPT OF MENTAL HEALTH
- [ ] PARE — RELEASED TO PARENT/GUARDIAN
- [ ] JUVE — TRANSFERRED TO JUVENILE DETENTION
- [ ] TURN — TURNED OVER TO OUTSIDE AGENCY

| 36. Date of Arrest 10/30/2007 | 37. Time of Arrest 1608 | 38. Location of Arrest WEBER/AIRPORT |
|---|---|---|

| 39. | Charges Section | Class | Offense Description | UCR Code | 40. Bond Amount | 41. Bond # |
|---|---|---|---|---|---|---|
| 1 | ORD 134.01 | O | DISORDERLY CONDUCT | 2890 | 42. Bonded Date | 43. Bond Time |
| 2 | | | | | 44. Court Date 12/10/2007 | 45. Court Time 09:00 |
| 3 | | | | | 46. Court Location | |
| 4 | | | | | 099 | |
| 5 | | | | | 47. Bond Set By: | |
| 6 | | | | | [ ] Rule of the Court | |
| 7 | | | | | [ ] Supervisor | |

[ ] Judge (name) _____

**48.**

**49. Hold for outside agency?**

[ ] YES  [x] NO   Name _____

Released to: Name/Star _____

Arresting Officer /Star     ZAKULA JR     374

Booking Officer /Star     Zakula     374

Fingerprinted? [ ] YES  [x] NO

50. DCN
L41030515

STATE OF ILLINOIS, } ss.
COUNTY OF WILL,

IN THE CIRCUIT COURT OF THE 12TH JUDICIAL DISTRICT
WILL COUNTY

Village of Romeoville
A Municipal Corporation

vs.

WILLIE BROWN

In the Magistrate Division

Case No. 07-6140

## COMPLAINT

On this ___30th___ day of ___OCTOBER___ A.D. 20 07 , comes into court the complainant
AMY BOVA   16740 OCONTO AVE., TINLEY PARK, IL.
and charges the commission of an offense as follows:

1. The name of the accused is: ___WILLIE BROWN___
   601 THEODORE ST., JOLIET, IL.

2. The name of the offense charges and the nature and elements are: DISORDERLY CONDUCT:
   In that he knowingly used profane language including the words "fuck" and "bitch"
   while stopping traffic in the roadway as to alarm and disturb Amy Bova and Mary
   Sanders and to provoke a breach of the peace.

3. The time and place of the offense are: OCTOBER 20, 2007, 4:08 PM, AIRPORT & WEBER ROAD,
   ROMEOVILLE, COUNTY OF WILL, ILLINOIS.

4. The ordinance provision violated is: CHAPTER 134,   SECTION 134.01 (B)
   OF THE ROMEOVILLE CODE OF ORDINANCES.

The undersigned being duly sworn on oath deposes and says that the foregoing charge is true.

Subscribed and sworn to before me this ___30th___
day of ___OCTOBER___ 20 07 .

SIGNED: _____
                    Complainant

_____
Judge/Magistrate of the Circuit Court

OFFICIAL SEAL
John M. Ferdinand
Notary Public State of Illinois
My Commission Expires July 29, 2008

Court date ___DECEMBER 10, 2007___   20 ___
            9:00 AM

## WARRANT OF ARREST

To all Peace Officers in the State, GREETING:

Whereas, a complaint in writing was presented to the Court charging that the offense of
_____ has been committed, and it appears that
_____ committed the offense,

YOU ARE COMMANDED to arrest _____
and to bring him without unnecessary delay before this Court, located at _____ ,
in Will County or, if I am absent or unable to act, before the nearest or most accessible Court in this County.

BAIL is specified in the amount of $ _____ .

ISSUED at _____ , Will County, Illinois, this _____ day
of _____ A.D. 20 ____ .

SIGNED: _____ (SEAL)
Judge/Magistrate of the Ciruit Court

STATE OF ILLINOIS, ⎫
COUNTY OF WILL, ⎭ ss.

IN THE CIRCUIT COURT OF THE 12TH JUDICIAL DISTRICT
WILL COUNTY

Village of Romeoville
A Municipal Corporation

vs.

WILLIE BROWN

In the Magistrate Division

Case No. 07-6140

## COMPLAINT

On this __30th__ day of __OCTOBER__ A.D. 20 _07_ , comes into court the complainant
MARY SANDERS  15127 PINEWOOD ROAD, LOCKPORT, IL.
and charges the commission of an offense as follows:

1. The name of the accused is: _____ WILLIE BROWN
    801 THEODORE STREET, JOLIET, IL.

2. The name of the offense charges and the nature and elements are: DISORDERLY CONDUCT:
    In that he knowingly used profane language including the words "fuck" and "bitch"
    while stopping traffic in the roadway as to alarm and disturb Mary Sanders and Amy
    Bova and to provoke a breach of the peace.

3. The time and place of the offense are: OCTOBER 30, 2007, 4:08 PM, AIRPORT @ WEBER ROAD,
    ROMEOVILLE, COUNTY OF WILL, ILLINOIS.

4. The ordinance provision violated is: _____ CHAPTER 134,   SECTION 134.01 (B)
    OF THE ROMEOVILLE CODE OF ORDINANCES.

The undersigned being duly sworn on oath deposes and says that the foregoing charge is true.

Subscribed and sworn to before me this __30th__
day of __OCTOBER__ 20 _07_ .

SIGNED: _____
                    Complainant

Judge/Magistrate of the Circuit Court

JUDICIAL SEAL
John M. Ferdinand
Notary Public, State of Illinois
My Commission Expires July 25, 2009

Court date __DECEMBER 10, 2007__ 20 ___
                9:00 AM

## WARRANT OF ARREST

To all Peace Officers in the State, GREETING:

Whereas, a complaint in writing was presented to the Court charging that the offense of
_____ has been committed, and it appears that
_____ committed the offense,

YOU ARE COMMANDED to arrest _____
and to bring him without unnecessary delay before this Court, located at _____,
in Will County or, if I am absent or unable to act, before the nearest or most accessible Court in this County,

BAIL is specified in the amount of $ _____ .

ISSUED at _____ , Will County, Illinois, this _____ day
of _____ A.D. 20 ____ .

SIGNED: _____ (SEAL)
                Judge/Magistrate of the Ciruit Court

# IN THE CIRCUIT COURT OF 12TH JUDICIAL CIRCUIT
## WILL COUNTY, ILLINOIS

DCN # _____

**BAIL BOND**

Court Case No. _____
Offense: _____

THE PEOPLE OF ILLINOIS

Defendant Name: _____

VS.

Municipality _Romeoville P D_

Case Report No. _____ Ticket No. _n/a_

**Bail Bond Type:**

☒ CASH BOND   ☐ 10% DEPOSIT   ☐ DRIVER'S LIC
Amount of Deposit: $ _100.00_

☐ PERSONAL RECOGNIZANCE
in the Amount of $_____

Approved: _____ Judge

☐ REAL ESTATE or STOCKS/BONDS per sworn statement
and schedule in the amount of $ _____

Approved: _____ Judge

Defendant Name: _Brown, Willie_
(A.K.A.: _n/a_ )
Address _601 Theodore_ Phone _815 212-7015_
City/State/Zip _Joliet IL 60435_
Sex: M/F DOB _05/29/54_ Race _Black_
Eyes _Brown_ Hair _Black_ Ht _510_ Wt _155_
SS# _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_ DLN _B650-5505-4193_
Surety: _____
Amount of Bail: $ _100.00_
Bond Rec'd at: _Romeoville P D_
Police Dept/Other

Defendant to Appear:
Date: _12/10/07_ Time: _0900 AM_
Court Location / Room No. _325 w. Briarcliff_
_Bolingbrook IL_

I. the undersigned, as Defendant, do hereby acknowledge myself to be indebted to THE PEOPLE OF THE STATE OF ILLINOIS in the sum of the amount indicated as bail. Said bail is deposited in the case now pending against me, and I, as Defendant acknowledge the conditions of the bail that follow.

### CONDITIONS OF BAIL BOND

1. Defendant is not to leave the State of Illinois without permission of the Court.
2. Defendant is to give written notice to the Clerk of this Court of any change of address within 24 hours of such change.
3. Defendant shall not violate any criminal statute of any jurisdiction.
4. Failure to appear for trial shall result in the case being tried in absentia.
5. Defendant shall comply with any additional terms and conditions of this bail bond on domestic violence offenses.
6. Defendant shall not possess firearm.
7. Additional Conditions _____
8. No contact with: _Victims / Complainants_

_____
Signature of Defendant

### CERTIFICATE OF DEFENDANT

I, the Defendant named above, do hereby state that I know and understand the terms and conditions of this bail bond as shown on the **FRONT AND REVERSE SIDES** of this bail form. I understand further that if at any time prior to the final disposition of the charge(s) I escaped or am released on bond and fail to appear in Court when required by the Court, the result of my failure to appear will be as follow: I thereby waive my right to confront the witnesses against me; the trial can proceed in my absence, I forfeit the security money posted; Judgement will be entered against me for the full amount of this bond, plus costs; a warrant may be issued, in which event additional bond money may be required. I understand and accept the terms and conditions set forth above and on the reverse side of this bail bond.

Signature of Defendant: _____

## NOTICE TO PERSON PROVIDING BAIL MONEY OTHER THAN DEFENDANT

I, the undersigned, have read and fully understand that if the defendant fails to comply with the conditions of the bail bond, the Court shall enter an order declaring the bail to be forfeited. Further I understand that in the event the defendant is convicted of a crime, the bail may be used to pay costs, attorney's fees, fines or for other purposes ordered by the Court. For bonds $10,000 or greater, a date of birth and social security number of the surety are necessary.   Social Security # _____   D.O.B. _____

Signature _____ Name: (Print) _____
Address: _____ City: _____ State: _____ Zip: _____

### ASSIGNMENT OF BAIL BOND BY THE DEFENDANT

I hereby authorize the return of the monies posted above to the person shown on this bail bond as having provided monies for my bail after all conditions of this bail have been met.
Signature of Defendant: _____

Issued on this date: _10/30/07_

Signed before me and security received.

_____
Judge/Police Officer        Police Department _Romeoville P D_

Circuit Clerk _____

White - Circuit Court Clerk      Yellow - Defendant      Pink - Police Department

## CLERK OF THE 12TH JUDICIAL CIRCUIT COURT
## JOLIET, ILLINOIS 60432-4359

**EXHIBIT**
**11**

snow "verbal savvy"
STORY ON 2 >

to Daylight Savings Time
STORY ON 13 >

can release more than sweet smells
STORY ON 13 >

2008   Vol. 22 Issue 10

ngbrook, New Lenox, Crest Hill, Shorewood, Romeoville and Plainfield for 22 Years

:es
d

weeklynews.com

# Is it time for the Romeoville Police to call the police?
### They write tickets, but what about solving crimes?

By: John Gabriel/TW | jgabriel@timesweeklynews.com

Ask the Romeoville Police about a crime and they will say: "No Comment"; "It's being investigated" or "I can't talk ask Lt. Mark Turvey."

Each Romeoville Officer must write 3 tickets each day, which, based upon 20 working days each month, works out to about 60 tickets per month. Each day, each officer bears the weight of having to meet that daily quota no matter what else may occur. Officers who fail to meet their quota will face a reprimand and ultimately could face suspension from duty without pay.

Crime that occurs anywhere takes up a substantial amount of an officer's time, while he investigates it. If a Romeoville officer is engaged in tracking the events of a serious crime, the clock is ticking, and time passes quickly when you have not written your daily tickets, especially if you must submit 3 each day. The officer must make quick decisions: "Should I continue looking for clues to solve this serious crime, or should I abandon it so I can meet my ticket quota to avoid a suspension from



Chief of Police, Andrew J. Barto

duty?" Police officers like the rest of society face financial obligations at home, and they, like all other working people, cannot afford days off without pay. "Forget the crime write the tickets."

That hypothetical scenario could explain why serious crimes and suspicious occurrences that occur in Romeoville drift silently into oblivion without final solutions. There are many examples and they continue to stack up higher and higher.

Police shut down the 2007

Romeoville Fest amid unconfirmed reports of shooting and feuding between rival gangs who supposedly clashed at the event. The police version of what took place made no mention of guns, armed gang members or of shooting. The shutdown was, according to police, an innocent event caused by inclement weather. Rumor said the Mayor did not want bad publicity to curtail attendance at future fests so the police withheld the truth.

At the end of the fest, a carnival worker was found

MORE ON 10>

:r, which opened in
its operation shut

# Silver Cross considers future generations





ed closing of the
ted near the Crest
order.

ot proposing to
close Stateville,"
Schnapp, IDOC
tions Manager.
al includes a com-
e of the maximum
tion of the prison
ng the Reception
cation center and

tor of the Will-Grundy Medical Clinic, Ross previously served as the President of Joliet Junior College (JJC) from 1999 until his retirement in 2006. Prior to his appointment as JJC president, he held administrative positions at the college since 1974 which include, Vice President of Academic Affairs, Dean of Career and Instructional Services, Dean of Special Programs and Director of the Inmate Training Program. He currently serves as a faculty member for the annual Future Leaders Institute of the American Association of Community Colleges. Ross holds a master's degree in educational administration from Western Illinois University and a bachelor's degree in sociology from St. Ambrose College in Davenport, Iowa.

of hundreds of jobs; forcing state workers to pick up their families and leave their communities; the loss of incredible economic activity that will affect hundreds of local vendors and Will County's economy; and the City of Crest Hill would see a sharp decrease in revenue due to the loss of residents," said Senator Wilhelmi. "Additionally, once the prison is closed, we'll have a shuttered state facility next to the ongoing Reception and Classification Facility, which means the remaining land may never get developed. This is a lose-lose situation for my district, and I will fight against this with everything I've got."

"We must wait until the budget passes and it would be a graduated process that would take a few months to do," Schnapp explained regarding the timeline for proposals to take effect. He further explained that if approved the proposal would allow the state agency to finally open the Thomson facility, a state of the art, 1,600 cell, maximum security jail,

have the opportunity to be transferred to other correctional centers. "We are talking about over 400 people at risk of losing their jobs," said State Senator Linda Holmes. "Although the department has stated that these employees would have an opportunity to be transferred to other correctional centers, the closing of Stateville would force hundreds of families who have made their homes in our communities to relocate."

"We found out about two weeks ago," said Demetria Webster, wife of a Stateville employee working in the maximum security portion up for closure. "I was shocked because we've been through this before when my husband transferred to Stateville a few years ago after the Collins Street jail closed." When asked what she thought her family would do should her husband become one of the 400 employees to have to leave Stateville, Webster explained they would have to weigh the options. "We'd have to consider a lot of

Illinois Department of Corrections Director Roger Walker, Jr. at the Senate Committee on Appropriations I. The Department confirmed their plans to close a major portion of Stateville Prison at the hearing.

things; we'd have to sell our house that we just bought, see what the cost of living would be and how far away we'd be from our family in Chicago," Webster said.

"We will work closely with the families to minimize the impact on families," said Schnapp.

Senator Halvorson has residents in her district that also may be affected by the facility closing. "The closing of Stateville will be detrimental to the community that surrounds it. This center provides many jobs to residents of this area," said Senator Halvorson. "I plan to work with other members of my caucus and Department of Corrections officials to determine a better solution than shutting down this prison."

A more definitive decision on the issue is expected to evolve around July 2008, near the start of the 2008-2009 FY state budget.

---

> FROM FRONT

## Is it time for the Romeoville Police to call the police?

hanged. Almost immediately, his death was ruled a suicide. No details were available from the Romeoville Police Department and there were no details made public to explain how the death was quickly determined to have been a suicide. It would be much easier to record a death as a suicide rather than undertake a lengthy homicide investigation that would require expertise to resolve. Was it a rush to judgment? Is the Romeoville Police Department capable of making a real death investigation?

Recent investigations conducted by the Romeoville Police have an unproductive history. Bolingbrook resident Robert Taylor reported that his personal belongings were stolen when he was arrested for DUI in Romeoville (he was found innocent). That investigation, assigned to Lt. Mark Turvey

tle bomber who attacked a home on Evergreen Avenue. The officers who allegedly knew they were arresting an innocent man for breaking a park sign never faced an internal investigation. The officer who allegedly beat another resident whose photos of his battered face appeared in this newspaper has not been charged. The case of an officer who was accused by a resident of stealing marijuana and money from an apartment is supposedly still under investigation. The thief who robbed a local Loan Store has not been caught, there have not been any composite photos circulated. There is no word that a composite was made. No one has been accused or arrested for intentionally running a man down with an ATV. In that case police took no photos, no tire mark casts, no paint samples nothing. A man was

drive the men to a number of ATMs after which his cell phone was taken and he was released. No pictures, no public warnings; did it occur to the police to dust for fingerprints inside the vehicle? Did they check if the cell phone was used? Did they check the number(s) that may have been called from his cell phone?

Even when the they have a likely suspect in their midst, e.g., the cop who arrested Robert Taylor, the cop who arrested the innocent kid for breaking a sign, the cop who allegedly beat the boy in an ambulance and at the hospital, and the one who was accused of stealing marijuana and money, they can't make a case. The Romeoville Police could call the police—the State Police—the Will County State's Attorney—the federal authorities; they have the expertise to

---

**ths about 2008**
**ats**

ie" stimulus payments will be issued in the form of Direct Deposits as well as paper checks. Direct Deposit is the best way to receive the payment. Eligible taxpayers who choose Direct Deposit for their 2007 tax year refund will receive their stimulus payment the same way.

The IRS will contact taxpayers either by phone or e-mail about their payments.

FACT – Watch for scams! IRS will NOT contact taxpayers by phone or e-mail about stimulus payments or refunds.

More stimulus payment information, including frequently asked questions, payment scenarios and guidance for those who normally don't file a tax return, is available on the IRS Web site at www.irs.gov.

ur customers.
se with
ynews.com

advertising
available in
ekly newspaper

*t, Bolingbrook, New Lenox, Crest Hill, Shorewood, Romeoville and Plainfield for 21 Years*

# for commercial ill County

weeklynews.com



that report to weather conditions is about as close as we can get to that appealing of a forecast in January. However, local investors, community planners and politicians are enjoying some bonus sunshine rather early when it comes to the ongoing shape and future of real estate in Will County.

MORE ON 3 >

# million for rtation



Authority (RTA) board and gives Will County its own board seat for the first time in the history of the Authority. It also gives a total

MORE ON 9 >

# Romeoville Police: Untrained, or unwilling to do good police work?

By: John Gabriel/TW jgabriel@timesweeklynews.com



Anyone who spends even a small amount of time looking into cases that the Romeoville Police Department is called upon to handle must reach a point at which they become bewildered at the quality of the police work. Inevitably one must ask if this department fails to train its officers to do quality police work or are there times when the officers involved are just too lazy to do a proper job. Those who have had a need to call on them for assistance often say it seems that the local police are untrained as to how to conduct an investigation.

If the Times Weekly source is correct, and he claims to have first hand knowledge of such training policies, it is little wonder that the following cases were handled in the shoddy manner in which they were investigated. The source says only a select few officers get additional training with the approval of Chief Andrew J. Barto. Apparently the remainder blunder their way through their assignments doing what believe they should do.

There was a case in which a Romeoville resident called the police to investigate a bomb that had been thrown at his home but which fell short of its mark and landed on the front lawn. The grass was burned by the explosion, and there were remnants of the container spread across the grass, a label survived the explosion upon which there was a brand name for the container. The label had a printed barcode on it and the explosive contents left shards of aluminum behind which were blackened by the explosion. Large pieces of the plastic container survived and they were picked up by the police.

Policeman, Officer Kemp, showed up the following morning, apparently to review the crime scene, she observed the blackened aluminum scraps and decided to collect some of them as evidence. The officer did not bring an evidence envelope with her so she decided to improvise, she took a business card from her pocket, folded it slightly to create a trough in the middle of it and proceeded to scrape some of the aluminum particles onto that card. When she had gathered some onto the card she folded the card and tucked into a uniform pocket. A rookie can quickly explain why that contaminated, improperly gathered, un-initialed evidence would be useless in court.

In the meantime, according to the police documents, Officer Moreno decided there was insufficient storage space at the police station to store the small plastic fragments of the homemade bomb; he proceeded to photograph it and then threw the evidence away. With it, of course, he threw away any chance of winning a court case against the bomb maker. No one checked the evidence for fingerprints, but what the police did do was tell the victim that the bomb fragments had been sent to the crime lab, mean-

MORE ON 10 >

IL 60441

100% cashout refinance
Debt consolidation-Lower your bills by hundreds per month!

100% Financing,
NO MONEY DOWN!
Scores down to 530

**COUPON #TW928**

# SAVE $300

WITH THIS COUPON
CALL TODAY AT

## 815-588-3500



FLAGSHIP

MORTGAGE CORPORATION



Case 1:08-cv-01577   Document 27   Filed 07/21/2008   Page 83 of 88

## The Times WEEKLY

## NEWS

### > FROM FRONT Romeoville Police: Untrained, or unwilling...

ing of course the Illinois State Police Crime Lab located in Joliet. But that was a lie, as the victim would learn later, when he asked about the status of the investigation. Lieutenant Denny confided that the evidence had not been sent to the Crime Lab, and he was supported by the written statement of the officer who unprofessionally threw it away. There were obviously no crack detectives involved in that case.

A local resident called the Romeoville Police for help when the driver of an all terrain vehicle (ATV) intentionally ran him down and then drove completely over his body. The man could have been killed or seriously injured but the driver did not care he drove off without checking on the condition of his victim.

The police promised the victim there would be a thorough investigation. Days later the police would profess to have a suspect in mind. Sadly, the police mishandled that case and even if they find the person who ran down the victim they would be unable to prove a

case against him unless he is just dumb enough to confess to a crime for which there is no evidence. That is correct, no evidence because the police did not take pictures of the extensive bruising to the entire right side of the victim's body. The police did not take pictures of the fence the driver knocked with his ATV nor of the compost bin that he pushed into his yard, nor of the scrape marks left on it by the ATV. The victim said the police did not photograph the tire tracks left in the soft ground by the ATV's bulky tires. The police did not make impressions of the tire tracks so that if and when they locate the ATV they can compare its tread with the impressions and photographs they should have made at the crime scene.

Case history says the Romeoville Police lack many ordinary police skills such as stopping people in cars only when there is probable cause, not hunches, or because the person is someone they know by sight. The Romeoville Police perform searches without warrants using intimidation and

threats to bypass the Constitution. Such tactics do make it possible for them to make many arrests, but they are arrests that probably would not withstand the justice system if the alleged violators had skilled attorneys to represent them.

Proof of that was seen in the case of one young man who the police falsely accused of kicking and breaking a sign. The guilty party admitted to that crime but the police preferred to falsely arrest a different youngster who was unfortunately in the "No Break Book." His Attorney destroyed the Romeoville officer on the stand because the officer had not gathered evidence properly and, therefore, he had no evidence to back up his arrest — the young man was found not guilty.

Many Romeoville officers may like to know the latest police techniques but then, perhaps, they would know more than the chief—that would not sit well with him. That should make citizens ask, who will the Romeoville Police call if they encounter a serious crime in the village?

## 18th
## Brea
## buil(

"Dr. Kin unfulfilled deemed, tl said Rev. founder a Rainbow we celebr day aroun acy is to fi health can end to the

Bill Cost Ph.D. in ed ing his Hol be the sp 21, as the alition mar PUSH-Exce King, Jr. Scl

Celebrati have been birthday, Pl (PUSH Ex high schoo dents from with schol breakfast fr the Sherato Towers, 301 Chicago.

## CRIMINAL & FAMILY LAW
### Judith DeVriendt

To read m
your neighborhood

# Romeoville cop accused of stealing marijuana and cash

By: John Gabriel/TW | jgabriel@timesweeklynews.com

On Jan. 12, the Times Weekly received a call from a tipster who claimed that a Romeoville Police officer had forced his way into an apartment where he stole marijuana and money. The Times Weekly became aware that the victim in this incident had filed multiple affidavits with certain authorities in which he laid all of the facts before them while exposing himself to possible charges. At the request of one of those agencies, the Times Weekly agreed not to publish this story while there was a chance that it could interfere with the ongoing investigations.

At about 1 a.m., on Jan. 12, two young men went to a Romeoville convenience store to purchase something known as a blunt wrap; marijuana can be wrapped in a blunt wrap for smoking. When the two men, Dan Warren 19 and Michael Truschka 18, returned to the apartment of Truschka's girlfriend, Ashley Alvarez 18, on Fair Meadow Drive in Romeoville they saw police patrol cars at the building. The police were investigating a disturbance at the rear of the apartment complex after someone reported an altercation there.

According to Michael Truschka's affidavit, three patrolmen were in the hallway when Truschka and Warren entered through the front door. Truschka says one of those patrolmen, Michael Michienzi, Star 357, immediately accosted him, ordered Truschka to stop, demanded identification, and proceeded to question him. Truschka said Officer Michienzi became mean and told him that he wanted to enter Truschka's girlfriend's apartment to

search it. Truschka claims he refused to allow the officer to enter the apartment and refused to allow him to search it.

The affidavit says, "Officer Michienzi became hostile and began shouting at the Affiant. He steadily walked toward him until the Affiant was backed into a corner of the hallway. Officer Michienzi yelled, 'I want into that _ _ _ _ apartment or I'll get a warrant'. The Affiant still refused to allow the officer into the apartment. Then Officer Michienzi yelled, 'If you don't let me into that _ _ _ _ apartment I'm going to _ _ _ _ you up good'. The intimidation continued for about five minutes or more."

The affidavit says Truschka became increasingly afraid and intimidated and then, believing he had no other choice entered the apartment with Officer Michienzi. Upon entering, Michienzi encountered Ashley Alvarez the rightful lessee of the apartment and ordered her to leave; she complied and went into the hallway unaware of why she was ordered out of her apartment.

Officer Michienzi is alleged to have pushed Truschka's face against a front room wall and searched him while Truschka stood with his hands clasped together behind his head. The officer searched the front room and then proceeded, with Truschka, to the bedroom where there is a bed and a large armoire that has doors across its upper half. Officer Michienzi searched it and discovered a 1-gram packet of marijuana, searching further; he found 12 more 1-gram packets inside a plastic cup. Officer Michienzi

then handcuffed Truschka and began shouting, "Where's the _ _ _ _ money?" Michienzi found $60.00 and shouted that he wanted the rest of the money. Truschka told him he did not have anymore, only the $60.00

The affidavit says officer Michienzi placed the money in his pocket and put twelve 1-gram packets of marijuana inside his patrolman's coat which he zipped shut. Officer Michienzi told Truschka, "I'll tell them [the other officers on the scene] I found a gram and I'll make that disappear". The officer then told Truschka, "I'll be seeing you in a week and if I don't get what I want I'll charge you with a felony," he removed the handcuffs and left the apartment.

Truschka says that after Officer Michienzi departed, his companion Dan Warren contacted Police Sergeant Christopher Burne, Star 338, shouting and out of control, Warren told Sgt. Burne that Michienzi had stolen the marijuana and the $60.00. No action was taken until recently when Officer Brant Hromadka was assigned to investigate the incident. It is unclear whether that investigation began before or after the other two agencies took an interest in the case.

The police department would be hard-pressed to bring charges against Truschka at this point since Michienzi had no warrant, he cannot establish



10 S. Ch
Suite
Jolie

Repair
1 Hour

Relines
2 Hour

Partials
14 Day

> FROM 2 **Clinton, Obama still in dead heat...**

0.7 percent and Utah with 1 percent.

Basically, what they say about him not running the

She gained 823 delegates by winning Arizona, California, New Jersey, Oklahoma, Arkansas, Massachusetts, New York,

The next major primaries are Virginia, Maryland and Washington, D.C.



IMP
4 impla

that the marijuana belonged to Truschka, and did not read Truschka his rights; and their one and only witness, Officer Michienzi, would be quizzed in court on the allegations contained in the affidavit. Two independent law enforcement agencies, who have asked not to be named for the time being, have apparently found enough merit in the case to conduct their own investigations. It is not known which officers, if any, have been questioned by them. Officer Michienzi could not be reached for comment but Officer Hromadka did return our call to say all inquiries must go through Lt. Mark Turvey, he added that Turvey will not have any information on the investigation until it is completed.

Recent, similar cases in which officers were accused of stealing drugs and money from people in Chicago brought a number of indictments of certain officers who are now going to court on those charges. Reports say they will face significant prison sentences if convicted.

## CRIMINAL & FAMILY LAW

### Judith DeVriendt
**Attorney At Law**
*Former Will County Assistant States Attorney*
*Chief of Auto Theft Unit • Felony Prosecutor*

**FAMILY LAW**

- Adoption
- Child Support
- Custody
- Divorce
- Domestic Violence

**CRIMINAL LAW**

- Drugs
- Theft
- Weapons
- Juvenile
- DUI
- Traffic

Chicago
ite 100
oliet

## 815-723-8300

airs in $50⁰⁰
our

nes in $100⁰⁰
urs

als in $600⁰⁰
ays

## Custom Made
## DENTURES
## $450⁰⁰

• Full Upper or Lower
• Can Be Ready in 48 Hours

## PLANT LOWER DENTURE
plants & custom lower denture  $2,000⁰⁰

ves both bushes

# masz Maciaszek?

*Was a Danger to the Neighborhood*

nel@theweeklyreporter.com

s a
em
are
as
ble
asz
the
ick
ine
re-
wn
ion
ted
5th

hes
hat
ur-

# Case Dismissed Against Romeoville Music Man

*He called to report boom-boom music cops arrested him*



Bolingbrook Judge Raymond Nash became annoyed with the prosecution and the Romeoville Police Department when David J. Siek appeared before him on June 9th with his attorney John Prehn to answer to a charge of filing a false police report and disorderly conduct. Each time the defense attorney requested evidence against his client the Romeoville Police failed to provide it.

Siek was arrested after he called to report loud boom-boom beats that rattled the walls of his home. He says the noise came from passing cars

on 135th Street. When the Romeoville Police arrived the perpetrators had long since moved on. Eventually the cops arrested David Siek, probably as a way to stop his complaining about the noise. He was also charged with disorderly conduct because the officer told him "that is just part of the charge".

The prosecution got little help from the Romeoville police who failed to produce any evidence against Mr. Siek. They did not produce the dispatcher who allegedly received the telephone complaints, the one person if any, who would be able to tes-

ER AD

K - 6 BUCKS

w!

er.com

## CONTINUED FROM PAGE 1 >

# Case Dismissed Against Romeoville Music Man

tify against Siek. There was no one in court who could testify to the court's satisfaction that Mr. Siek had violated any law or ordinance.

Siek says his attorney John Prehn demonstrated to the satisfaction of the court that the police

had not provided a valid case to the court and he asked the judge to find for his client.

An annoyed Judge Nash dismissed the charges.

no bid contracts over and over again despite the fact that one trustee complained early on about the bad work Rolnik was doing and another protested the Board's growing habit of giving no-bid contracts so freely.

There is no evidence that then May-

CONTINUED ON PAGE 2 >

# port signs
# ere—Why?

theweeklyreporter.com



CONTINUED ON PAGE 7 >

# Source Says Romeoville
# Cops Overlooked Evidence

John Gabriel - jgabriel@theweeklyreporter.com



The Weekly Reporter asked in the July 3rd issue, "So What Are Romeoville Cops Paid to Do?" That question has now become a glaring one. It is time for authorities to take action to force this po-lice force to start acting like the sworn officers they are supposed to be. Citizens must begin calling for help and that help has to come from the Attorney General Lisa Madigan.

CONTINUED ON PAGE 3 >

Case 1:08-cv-01577

# Source Says Romeoville Cops Overlooked Evidence

A service station owner called police to report a drive-a-way; that is someone who fills up and leaves without paying. When police arrived they did not quickly ask for a license number, description of the driver and car, and then speed off in hot pursuit, NO! Instead, they chastised the business owner and said, "We're not bill collectors. Why don't you make everybody prepay like other stations do?" They have not caught that thief but the police threatened to give that business owner a ticket for not putting a six-pack of beer in a paper bag.

On a Monday about 2 weeks ago the owner of the Skin Deep Tanning Salon was robbed at gunpoint. Afterward the owner called the Romeoville Police. The Weekly Reporter was told that when the police arrived, the unidentified officer asked, "So what do you want us to do?" The police have not captured that robber.

Over the July 4th Holiday weekend a family went away for a mini vacation. While they were away thieves broke into their home and made off with $10,000 in valuables. The burglars got away with a large screen television set, jewelry, stereos, a large inventory of other items and a computer.

The burglary was discovered by a young woman who had been asked to provide feed and water to the family's pet parakeet. The young woman noticed that the garage door through which she had access to the home appeared to be broken and the remote control would not open the door.

Believing something was wrong she asked her mother to telephone the Romeoville Police. Our source said when the dispatcher answered the lady was told the police were too busy to respond. She telephoned a second time and advised the dispatcher that it appeared that there was someone inside the home that should have been vacant. The dispatcher told her a second time the police were too busy. After a brief interlude the woman telephoned a third time and after a delay of fifteen minutes the police arrived.

A source close to the family who wishes to remain anonymous says the police bungled the investigation from the start. They did attempt to take prints from the door through with they believe the burglars entered. They did not try to get prints from three collector cases from which three collector footballs were removed. The source says there was a clear hand print, including fingerprints left on a window but the police overlooked that. There was blood in the garage left by a thief who was cut by broken glass and who used bandages from a first-aid kit that was kept in the garage. Allegedly the police did not attempt to retrieve prints from the kit, they did not gather blood evidence and according to our source they made no other attempts to get fingerprint evidence from anything else. The police officers, Maurice Hess and Aaron Thompson, overlooked an inhaler that one of the burglars allegedly dropped in a room from which they exited, the same room where the hand print was left on a glass window pane.

The source said that one of the officers told the woman of that house that her house was burglarized because she had a teenage son in the house. The police allegedly treated the homeowners as suspects while they were there. We were told that the oldest boy 13 years of age is an A student, is not in a gang and pals with friends who are also A students.

We learned that a detective was supposed to follow up but as of Tuesday no one showed up at the home. The family declined an interview.