IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIE BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | Case No. 08 CV 1577 |
| | ) | |
| VILLAGE OF ROMEOVILLE, et al., | ) | Judge James F. Holderman |
| | ) | Magistrate Judge Martin C. Ashman |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
COUNTS IV-VII, IX AND XI-XIII OF PLAINTIFF'S FIRST AMENDED COMPLAINT**

**INTRODUCTION**

Plaintiff Willie Brown ("Brown"), appearing *pro se*, has filed a 38-page, 13-count First
Amended Complaint ("FAC") against the Village of Romeoville ("Romeoville"), Chief of Police
Andrew Barto, Officer Daniel Zakula, Officer James Sloup and records clerk Karyn Showers.
Brown essentially alleges that he was falsely arrested and maliciously prosecuted on October 30,
2007. Defendants have answered Counts I-III, VIII and X but have moved to dismiss Counts IV-
VII, IX, and XI-XIII. This memorandum of law is submitted in support of Defendants' motion.

**ALLEGATIONS IN PLAINTIFF'S FIRST AMENDED COMPLAINT**

Brown is a 53 year old African American man (FAC ¶ 4). Romeoville is a municipal
corporation which employs Defendant police officers Daniel Zakula and James Sloup, as well as
Defendant records supervisor Karen Showers (FAC ¶¶ 7-9). Defendant Andrew Barto is
Romeoville's Chief of Police (FAC ¶ 6).

On October 30, 2007, Brown was driving his 1991 Civic wagon eastbound on Airport
Road a few car lengths behind a white automobile that, according to Brown, was abruptly
stopping and starting (FAC ¶¶ 12-13). Brown attempted to pass the white auto but the other
driver accelerated so as to interfere with Brown's attempt to safely pass (FAC ¶¶ 14-15). The
driver of the white auto allegedly gave Brown "the middle finger" and shouted racial epithets at
Brown (FAC ¶ 17). Shortly thereafter, while at the intersection of Airport and Weber Roads,
Brown observed two Romeoville squad cars approaching with their emergency lights flashing
(FAC ¶ 18). The squad cars pulled behind Brown's car and Officers Zakula and Sloup exited

their respective squad cars (FAC ¶¶ 19-20). The two officers informed Brown that the driver of the white auto had called in a complaint against him and they informed Brown that he was going to be arrested for disorderly conduct (FAC ¶¶ 21-23). The officers searched the interior of Brown's car, and the car was then towed and impounded (FAC ¶ 25). .

After being booked, Brown was required to pay a $100 cash bond (FAC ¶ 37), as well as a $400 administrative towing fee (FAC ¶ 38). Brown was afforded an administrative hearing on November 20, 2007 to contest the towing charges (FAC ¶¶ 41-42). The hearing officer, a Romeoville police Lieutenant, found that the arresting officers had acted properly and that Brown would therefore not be reimbursed the $400 administrative towing fee (FAC ¶ 43; Exhibit 8 attached to the FAC).

The disorderly conduct case against Brown was set for a preliminary hearing on December 10, 2007 and for trial on January 14, 2008 (FAC ¶ 44). Prior to December 10, 2007, Brown submitted written Freedom of Information Act ("FOIA") requests seeking the police report authored in connection with his arrest (FAC ¶ 46). Defendant Showers sent Brown a letter denying Brown's request (FAC ¶ 46; Exhibit 9 attached to the FAC). In her letter, Showers stated that Brown is a defendant in a pending court action and that the Romeoville police report would be produced upon the receipt of a proper court order (Exhibit 9 attached to the FAC). Brown subsequently submitted a request to produce documents in his criminal case, seeking *inter alia* a copy of the police report and the criminal complaint filed against him (FAC ¶ 48). On January 14, 2008, the attorney assigned by Romeoville to handle the ordinance violation case, Lawrence Kaschak, sent Brown a copy of the police report, arrest report, complaint and bail bond (FAC ¶ 49; Exhibit 10 attached to the FAC). On January 14, 2008, neither Officers Zakula and Sloup nor the driver or occupant of the white automobile appeared at court and attorney Kaschak voluntarily dismissed the charges (FAC ¶¶ 50-51). Ten days later, Brown received a $100 check as reimbursement for the $100 cash bond (FAC ¶ 52). Brown never received his $400 administrative towing fee back (FAC ¶ 53).

2

## ARGUMENT

## I.   PLAINTIFF'S EXCESSIVE BAIL CLAIM (COUNT IV) SHOULD BE DISMISSED

In Count IV, Brown alleges under 42 U.S.C. § 1983 that Officer Zakula's allegedly wrongful arrest led to Brown having to pay a $100 bail in violation of the Eighth Amendment's prohibition on excessive bail (FAC ¶¶ 52, 81). Though there is no absolute right to be released on bail or bond, a governmental body cannot demand excessive bail under the United States Constitution. U.S. Const, Art. VIII; Broussard v. Parish of Orleans, 318 F.3d 644 (5th Cir. 2003), cert. denied, 539 U.S. 915 (2003). Bail may not be used to oppress a criminal defendant since the constitutional prohibition against excessive bail exists to protect a defendant's right to prepare his defense and to protect his presumption of innocence. 8 C.J.S. Bail § 10. To determine whether bail is excessive in a particular case, the amount of bail must be compared against the nature of the offense and the interest the government is seeking to protect. Id.

In Payton v. County of Carroll, 473 F.3d 845 (7th Cir. 2006), the Seventh Circuit rejected an Eighth Amendment claim brought by arrestees challenging an Illinois statute which allowed sheriffs to charge an administrative fee for posting bond above and beyond the bond itself. The Court discussed the "modern practice of requiring a bail bond" and how that practice "serves as additional assurance of the presence of the accused." 473 F.3d at 848. Since imposing a cash bond helps assure that an accused will later appear at trial, the Eighth Amendment is only violated when bail is set at a figure higher than an amount reasonably calculated to fulfill this purpose. Id.

Numerous courts have held that the Eighth Amendment is not violated by the imposition of a relatively nominal bail, such as that set by Romeoville in this case. See e.g. Lyman v. City of Albany, 536 F.Supp.2d 242 (N.D.NY. 2008) ($400 bail was constitutionally reasonable for alleged violation of a restraining order); Granger v. Slade, 361 F.Supp.2d 588 (S.D. Mis.. Jackson. Div. 2005) (bail not excessive where an arrestee was able to secure his release on bond for $125 on the night of his arrest and was released from jail after an hour or two); Roberts v. City of Forest Acres, 902 F.Supp. 662 (D.S.C. Columbia. Div. 1995) (bail of $726 for speeding and disorderly conduct was not unconstitutionally excessive, despite claim that bail was set by police officers instead of magistrate). In this case, Brown was charged with disorderly conduct

3

for alarming and disturbing the two purported victims in the white auto, and the police required only a mere $100 as bail (Exhibit 5 attached to the FAC). Since the government may impose a reasonable bail to ensure a criminal defendant's appearance at trial, and since the government officials in this case imposed only minimal bail, Brown's Eighth Amendment claim cannot stand and should be dismissed.

**II.   PLAINTIFF'S CONSPIRACY CLAIM (COUNT V) SHOULD BE DISMISSED DUE TO PLAINTIFF'S FAILURE TO PROVIDE SUFFICIENT ALLEGATIONS SUPPORTING THIS CLAIM AND ALSO BECAUSE PLAINTIFF'S CONSPIRACY CLAIM IS BARRED BY THE INTRA-CORPORATE CONSPIRACY DOCTRINE**

In Count V, Brown alleges that the two arresting officers, Zakula and Sloup, conspired to intimidate and oppress him in violation of 42 U.S.C. § 1985(3). Section 1985(3) prohibits racially motivated conspiracies to interfere with a citizen's civil rights. To prevail on a § 1985 conspiracy claim, a plaintiff must allege: (1) the existence of an agreement; (2) the agreement must be overt or "the alleged acts must be sufficient to raise the inference of mutual understanding"; and (3) there must be "a whiff of the alleged conspirators' assent." Amundsen v. Chicago Park District, 218 F.3d 712, 718 (7th Cir. 2000). The second element above essentially means that a § 1985 claim must be supported by factual allegations suggesting a "meeting of the minds" and that the conspirators' actions were "unlikely to have been undertaken without an agreement. " Id. quoting Kunick v. Racine County, Wisconsin, 946 F.2d 1574, 1580 (7th Cir. 1991). Additionally, to state a claim under 42 U.S.C. § 1985(3), a plaintiff must also allege that the conspiracy was "based on some class based animus." Malsh v. Austin, 901 F.Supp. 757, 763-64 (S.D.N.Y. 1995). In § 1985 cases, vague and conclusory allegations of conspiracy do not state a claim upon which relief can be granted. Amundsen, 218 F.3d at 718.

In this case, however, Brown's allegations of conspiracy are conclusory at best. First, there are no substantive allegations that Officer Sloup did anything improper, other than to inform Brown that the driver of the other vehicle had complained about his conduct and to then search the interior of his vehicle (FAC ¶¶ 23, 25). Similarly, there are no factual allegations in the FAC which show that there was ever a "meeting of the minds" between Zakula and Sloup to falsely arrest and maliciously prosecute Brown, let alone to do so for racial reasons. To call

4

Brown's allegations of conspiracy "meritless" is to be charitable and Brown's conspiracy claim is the sort of claim "that does not come within shouting distance of a constitutional grievance." George v. Smith, 507 F.3d 605, 608 (7th Cir. 2007).

Even if the FAC contained sufficient factual allegations to support a conspiracy claim, Brown's claim would still be barred under the intra-corporate conspiracy doctrine, which holds that a conspiracy cannot exist between members of the same entity. Payton v. Rush-Presbyterian-St. Luke's Med. Ctr., 184 F.3d 623, 632 (7th Cir. 1999). The intra-corporate conspiracy doctrine applies to municipal employees except in "egregious circumstances." Kaupas v. Village of University Park, 2003 WL 22048173 (N.D. Ill.), citing Payton, 184 F.3d at 633. The Seventh Circuit has explained that such egregious circumstances do not include every instance of invidiously discriminatory motivation but rather exist only when employees had an independent personal stake in the outcome of a matter and thereby were "motivated *solely* by personal bias." Id. citing Hartman v. Bd. of Trustees of Cmty. College, 4 F.3d 465 (7th Cir. 1993). Since the two named conspirators in this case are both Romeoville police officers and there are no allegations that suggest that the officers had any personal stake in Brown's plight or were otherwise motivated by a personal bias against Brown, the intra-corporate conspiracy doctrine compels the dismissal of Count IV.

## III.   PLAINTIFF'S "ABUSE OF PROCESS" CLAIM (COUNT VII) IS NOT A RECOGNIZED CONSTITUTIONAL CLAIM

In Count VII, Brown alleges that the two Defendant officers abused legal process in violation of 42 U.S.C. § 1983, when they commenced legal proceedings to intimidate and oppress Brown. Abuse of process (sometimes also referred to as malicious abuse of process) is the misuse of proper process[1] to effect an object not within its proper scope. Doyle v. Shlensky, 120 Ill.App.3d 807, 458 N.E.2d 1120 (1st Dist. 1983). Abuse of process differs slightly from

---

[1] "Process" for purposes of an abuse of process claim is defined as "any means used by the court to acquire or to exercise its jurisdiction over a person or over specific property." Doyle, supra. Process is issued by a court, under its official seal and must be distinguished from pleadings, which are created and filed by the litigants.

malicious prosecution in that a malicious prosecution is process without probable cause, essentially a prosecution upon an accusation that has no foundation in fact. Id. at 815. On the other hand, an action for abuse of process lies for the improper *use* of process after process has been issued. Id. citing Ammons v. Jet Credit Sales, Inc., 34 Ill.App.2d 456, 181 N.E.2d 601 (1st Dist. 1962). The mere institution of a legal proceeding, even with a malicious motive, does not constitute an abuse of process. Id.

Two elements are necessary to plead a cause of action for abuse of process: (1) the existence of an ulterior purpose or motive for instituting court proceedings and (2) an act in the use of the process not proper in the regular prosecution of the proceedings. Id. Essentially, the defendants must intend to use a legal action to accomplish a result which could not have otherwise been accomplished through the suit itself and the process must accomplish the intended result or result in a party doing something collateral to the process which he otherwise would not have been legally compelled to do. Id. at 817.

Count VII should be dismissed. While Brown alleges in a conclusory manner that the ordinance violation proceedings against him were designed to "intimidate and oppress" him (FAC ¶ 93), Brown acknowledges that these proceedings were voluntarily dismissed by Romeoville (FAC ¶ 51). More importantly, there are no factual allegations in the FAC indicating that the prosecution against Brown was instigated for an ulterior purpose or motive or that the prosecution forced Brown to do something that he otherwise would not have done. In short, Brown is not really asserting an abuse of process claim but rather a garden variety malicious prosecution claim, which no longer exists under Seventh Circuit precedent as a viable claim under 42 U.S.C. § 1983. Newsome v. McCabe, 256 F.3d 747 (7th Cir. 2001).

Even if Brown had properly alleged all of the elements necessary to support an abuse of process claim, Newsome suggests that such a claim is no longer viable in the Seventh Circuit. In Newsome, the Seventh Circuit held that no malicious prosecution claim can lie under § 1983 since a plaintiff can properly assert such a claim in state court and due process does not require the "constitutionalization" of such a claim. 256 F.3d at 751. In fact, there is no reason to believe that the Seventh Circuit would treat a federal abuse of process claim any differently than a federal malicious prosecution claim and Newsome therefore requires the dismissal of Count VII.

See also Koch v. Schneider, 550 F.Supp. 846, 850-52 (N.D. Ill. 1982) (common law torts for which there are adequate state court remedies are not ordinarily cognizable under § 1983).

## IV. PLAINTIFF'S FALSE ARREST (COUNT VIII) AND FALSE IMPRISONMENT (COUNT IX) CLAIMS ARE DUPLICATIVE AND THEREFORE THE LATTER CLAIM SHOULD BE DISMISSED

The tort of false arrest is the unlawful violation of the liberty of another without lawful privilege; false imprisonment is the unlawful restraint of another's personal liberty or freedom of movement. Schroeder v. Lufthansa German Airlines, 875 F.2d 613 (7th Cir. 1989). However, courts in Illinois and in several other jurisdictions have recognized that false arrest and false imprisonment are essentially just different names for the same tort. Schroeder, 875 F.2d at 621 (in Illinois, a false arrest is one way of committing a false imprisonment); Dutton v. Roo-Mac, Inc., 1001 Ill.App.3d 116, 426 N.E.2d 604 (2nd Dist. 1981) (same); Waskey v. Municipality of Anchorage, 909 P.2d 342 (Ala. 1996) ("false arrest and false imprisonment are not separate torts"); Earles v. Perkins, 788 N.E.2d 1260, 1265 (Ind.Ct.App. 2003) (Indiana courts treat false arrest and false imprisonment claims interchangeably). A false arrest is one way to commit false imprisonment; since an arrest invariably involves restraint, it always involves imprisonment. Waskey, 909 P.2d at 345.

While it is at least theoretically possible to have a false imprisonment without a false arrest in cases that don't involve the police, "in cases involving police officers, there is no distinction between false arrest and false imprisonment. False imprisonment is always the result of a false arrest, since the individual is placed under restraint by the false arrest and there can be no imprisonment without an arrest by a peace officer." Evans v. Smith, 97 Ohio App.3d 59, 69, 646 N.E.2d 217, 224 (1994) (the tort of false imprisonment is reserved for those situations in which detention is purely a matter between private persons). In this case, Plaintiff's false imprisonment claim (Count IV) should be dismissed since it is wholly duplicative of his false arrest claim (Count VIII).

V.    **PLAINTIFF'S STATE LAW FOIA CLAIM AGAINST RECORDS**
      **SUPERVISOR KARYN SHOWERS (COUNT VI) SHOULD BE DISMISSED**

The only count in the FAC against Romeoville records supervisor Karen Showers is
Count VI.  In Count VI, Brown alleges that Showers discriminated against him on account of his
race, therein violating 42 U.S.C. 1981(a), when she failed to provide a police report and the
ordinance violation complaint in response to Brown's FOIA request (FAC ¶¶ 46-47).

Count VI should be dismissed for several reasons.  First, § 1981 prohibits discrimination
on the basis of race in the making and enforcement of contracts.  In this case, there is no contract
whatsoever.  Second, there are no factual allegations that suggest that Showers refused to provide
Brown with records on account of his race.  While federal courts require only "notice pleading,"
the Supreme Court made clear in Bell Atlantic v. Twombley, 127 S.Ct. 1955 (2007), that Rule
8(a) of the Federal Rules of Civil Procedure still requires that a plaintiff must plead enough
factual matter to show that his claim is "plausible."  In this case, there are no allegations in the
FAC which plausibly suggest that Showers handled Brown's FOIA request differently on account
of his race.

Third, a failure to comply with a state FOIA request does not ordinarily create a
constitutional violation, under either § 1981(a) or any other federal provision.  "Federal courts do
not enforce state law by characterizing violations of state law as offenses against the
Constitution."  Saukstelis v. City of Chicago, 932 F.2d 1171, 1174 (7th Cir. 1991); see also Paul
v. Davis, 424 U.S. 693, 96 S.Ct. 1155 (1976) (the Fourteenth Amendment should not be made a
font of tort law).  Thus, the handling of an Illinois FOIA request by a local government official is
a matter properly left to state courts, not federal courts.  To be sure, Illinois' FOIA statute does
provide a mechanism for appealing the denial of a FOIA request (5 LCS 140/10) and Brown has
not alleged in the FAC that he ever availed himself of this remedy.

Even if Illinois FOIA violations could be remedied in a federal suit, Brown has still pled
himself out of court with respect to Count VI.  While FOIA provides the public with access to
certain public records for inspection or copying, 5 ILCS 140/3(a), FOIA also includes several
exemptions, which are outlined under § 7 of FOIA (5 ILCS 140/7).  Specifically, § 7(1)(b)(v)
exempts from disclosure information which reveals the identity of individuals who have filed

8

complaints with law enforcement.  Moreover, § 7(1)( c) exempts law enforcement records when disclosure of the records could interfere with ongoing legal proceedings.

In this case, Brown's allegations do not support a FOIA claim, constitutional or otherwise, against records supervisor Showers.  Brown merely alleges in the FAC that Showers informed him that he was a defendant in a pending court action and that the records sought by Brown in his FOIA request would be produced upon receipt of a court order (Exhibit 9 attached to the FAC).  In any event, Brown admits that he subsequently tendered a request to produce documents on Romeoville's prosecutor in his ordinance violation case and that he in fact obtained the documents that he was seeking from the prosecutor on January 14, 2008, prior to his court case proceeding to hearing (FAC ¶¶ 48- 49; Exhibit 10 attached to the FAC).  Given these allegations, Brown does not have a proper FOIA claim and Count VI should be dismissed.

## VI.    PLAINTIFF'S ALLEGATIONS DO NOT SUPPORT HIS CLAIM FOR THE INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (COUNT XI)

Brown alleges in Count XI that Defendants' conduct was extreme and outrageous, exceeding all bounds of human decency, and thus constituted the tort of outrage, also known as the intentional infliction of emotional distress ("IIED").  Under Illinois law, an IIED claim requires (1) extreme and outrageous conduct, (2) the defendant must have intended or know that there is a high probability that his or her conduct would inflict severe emotional distress, and (3) the conduct must, in fact, have caused severe emotional distress.  Lopacich v. Falk, 5 F.3d 210, 212 (7th Cir. 1993) (citing McGrath v. Fahey, 126 Ill.2d 78, 533 N.E.2d 806, 809 (Ill. 1988)).  To support an IIED claim, the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency," Public Finance Corp. v. Davis, 66 Ill.2d 85, 360 N.E.2d 765 (1976), and the distress must be so severe that no reasonable person could be expected to endure it.  McGrath, supra, 126 Ill.2d at 86.  Liability arises for IIED only where the conduct complained of was "atrocious, and utterly intolerable in a civilized community." Schiller v. Mitchell, 357 Ill.App.3d 435, 447, 828 N.E.2d 323 (2nd Dist. 2005).

Not all seemingly serious conduct is sufficient to support an IIED claim in Illinois.  For example, in Layne v. Builders Plumbing Supply Co., 210 Ill.App. 3d 966, N.E.2d 1104, 1109 (2d Dist. 1991), a plaintiff alleged that his employer falsely reported to police that he had threatened,

9

harassed, and assaulted a co-worker. The court nevertheless held that the employer's conduct was not sufficiently outrageous to support an IIED claim. Id. Similarly, in Schroeder v. Lufthansa German Airlines, 875 F.2d 613, 623-24 (7th Cir. 1989), the Seventh Circuit rejected an IIED claim, even though the plaintiff was falsely accused of having bomb on plane, leading to the plaintiff being interrogated and detained in the plane cockpit. In Schiller, supra, an Illinois Appellate Court held that the defendants had not acted in a sufficiently outrageous manner when they had a video camera continuously videotape their neighbor's house (looking for lighting violations and dogs running at large). Finally, in Adams v. Sussman & Hertzberg, Ltd., 292 Ill.App.3d 30, 40, 684 N.E.2d 935 (1997), an Illinois Appellate Court held that the filing of a false complaint of criminal trespass which resulted in a plaintiff's arrest was not extreme and outrageous conduct. Since these cases suggest that an individual is not liable for IIED when he submits a false claim with the police, it follows that an IIED claim does not exist when police officers arrest an individual pursuant to a citizen's false or erroneous claim.

Certainly, the allegations here do not suggest extreme and outrageous conduct by any of the Defendants. Brown alleges in this case that he was wrongfully arrested by Officers Zakula and Sloup and charged with disorderly conduct after the officers were dispatched to investigate a complaint pressed by two women that Brown had threatened them and driven his vehicle in such a manner so as to cause an accident (Exhibit 10 attached to the FAC; FAC ¶¶ 21-25). Brown further alleges that he posted bail immediately after his arrest and that the ordinance violation case was voluntarily dismissed when the two complainants did not appear in court (FAC ¶¶ 36-37). While Brown undoubtedly may have been frustrated by the filing of what he believed to be improper charges against him, there is simply nothing extreme or outrageous about what happened to him nor is there any reason to conclude that the distress inflicted on Brown was "so severe that no reasonable person could be expected to endure it." To the contrary, it appears that Brown ably handled his ordinance violation case and there is certainly no basis to conclude that Brown suffered any severe emotional distress as a result of Defendants' conduct. Accordingly, this Court should also dismiss Count XI of the FAC.[2]

---

[2] Additionally, while Brown is seeking punitive damages on his IIED claim, punitive damages are not recoverable under Illinois law on an IIED claim. Frazier v. Harris, 266 F.Supp.2d 853 (C.D. Ill..

**VII.  PLAINTIFF CANNOT RECOVER ON HIS DEFAMATION CLAIM (COUNT XII) SINCE ROMEOVILLE IS PROTECTED BY THE TORT IMMUNITY ACT AND THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO ABSOLUTE IMMUNITY FOR THE STATEMENTS MADE IN THEIR POLICE REPORTS**

In Count XII, Brown has sued Romeoville and Officers Zakula and Sloup for allegedly false statements contained in Zakula's incident reports regarding the events giving rise to this litigation (Exhibit 10 attached to the FAC). However, under § 2-107 of the Tort Immunity Act, a local public entity is not liable for any injury caused by any action of its employees that is libelous or slanderous. 745 ILCS 10/2-108; Ramos v. City of Peru, 333 Ill.App.3d 75, 775 N.E.2d 184 (3rd Dist. 2002) (trial court correctly dismissed defamation and false light claims against city police department who disseminated mug shot photo to newspaper). Accordingly, the Village of Romeoville is clearly immune from Brown's defamation claim. Additionally, while Officer Sloup is a named defendant in Count XII, the police reports in this case were written by Officer Zakula, not Officer Sloup, and therefore Officer Sloup should also be dismissed as a defendant in Count XII.

With respect to Officer Zakula, Brown does not indicate in the FAC what specific factual statements in Zakula's police report were false and therefore Count XII also fails against Officer Zakula. Additionally, numerous courts in various jurisdictions have held that statements made in police reports are "absolutely privileged" against defamation claims. For example, in Bullock v. San Rafael, 1994 WL 621975 (N.D. Cal. 1994), a district court held that police officers were absolutely immune from liability in a defamation action for statements made in their arrest report. In so holding, the Court noted that any other ruling would lead to a situation where police officers could be sued for defamation whenever a criminal defendant disagreed with any factual assertions made in a police officer's report. Id. at *3.

In Carradine v. State, 511 N.W.2d 733 (Minn. 1994), an arrested person sued a state trooper and the state for allegedly false statements made in the trooper's arrest report. The Minnesota Supreme Court upheld the dismissal of the defendants and held that an arresting officer was absolutely immune from civil suit for allegedly defamatory statements made in his

---

2003); Knierim v. Izzo, 22 Ill.2d 73, 88, 174 N.E.2d 157, 165 (1961). Accordingly, Brown's request for punitive damages should also be dismissed.

11

arrest report. The Court surveyed the long history of "absolute immunity for defamatory statements made by participants in the course of a judicial proceeding" and reviewed how absolute immunity applies to all kinds of statements made by members of a government's executive branch. Id. at 735. While observing that state courts have generally agreed that "high level" executive officers are absolutely immune from suit for defamatory statements made in the course of their duties, the Court concluded that there is no reason why "inferior governmental officers" (such as police officers) should not be afforded the same type of immunity since absolute immunity is not "a badge or emolument of exalted officer but an expression of a policy designed to aid in the effective functioning of government." Id. The Court also noted that, if a police officer is not immune from defamation claims for the statements made in his official reports, "the officer will timorously, instead of fearlessly, perform" his duties and the public will ultimately be the loser in such instances. Id. citing Barr v. Matteo, 360 U.S. 564, 79 S.Ct. 1335 (1959). The Court further observed that arrest reports are supposed to accurately summarize certain events and are regularly used by police departments and prosecutors alike both before and during criminal trials. To subject a police officer to potential liability for his arrest and incident reports would tempt an officer "to leave out certain details, saving those for trial, when any testimony by the officer is absolutely privileged under the judicial privilege." Id. at 736; see also Delaney v. Ashcraft, 2007 WL 1322146 (W.D.Ark.) (police chief and investigating officer found absolutely immune from allegedly defamatory statements made in the performance of their duties).

While perhaps not being as explicit as the other state courts cited above, Illinois courts have implied that police officers are, in fact, immune for the statements made in their police reports. For example, in Geick v. Kay, 236 Ill.App.3d 868, 875, 603 N.E.2d 121 (2nd Dist. 1992), an Illinois Appellate Court found absolute privilege barred a former employee's libel claim against a village president, since "absolute privilege is a defense in a defamation action against government officials." Id. citing Morton v. Hartigan, 145 Ill.App.3d 417, 495 N.E.2d 1159 (1986). While acknowledging that absolute privilege impairs a person's right to be secure in his reputation, the court in Geick observed that this restriction is justified by the countervailing policy that officials of the executive branch (at the federal, state and local government level)

12

should be free to make statements within the scope of their official duties without fear of being subjected to defamation claims. Id. at 876. See also People v. McDonnell, 104 Ill.App.3d 929, 434 N.E.2d 71 (2nd Dist. 1982) (police officer is a member of a government's executive branch).

In sum, the Tort Immunity Act bars Brown's defamation claim against Romeoville and the doctrine of absolute privilege dooms Brown's claim against Officers Zakula and Sloup. Accordingly, this Court should also dismiss Count XII.

## VIII.  PLAINTIFF'S NEGLIGENCE CLAIM (COUNT XIII) AGAINST ROMEOVILLE AND CHIEF BARTO IS FORECLOSED BY THE TORT IMMUNITY ACT

Brown has also asserted a state law claim for negligence, Count XIII, against Romeoville and Chief Barto. The nature of this count, however, is murky to say the least. Brown alleges in Count XIII that Defendants "owed Brown a legal duty to act with reasonable and due care" to allow Brown to keep his vehicle and but that Brown's vehicle was nevertheless towed, pursuant to Romeoville's general order, G.O. 4-605, which governs when Romeoville police officers should tow vehicles after an arrest (FAC ¶¶ 112-119; Exhibit 1 attached to FAC). In short, Brown alleges in Count XIII that Romeoville negligently towed Brown's vehicle.

The Tort Immunity Act (745 ILCS 10/2-201) requires the dismissal of Count XIII. First, pursuant to § 2-201 of the Act, a public employee serving in a position involving the determination or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when exercising such discretion, even though the employee may have abused that discretion. To the extent that Brown is claiming that Chief Barto's adoption of G.O. 4-605 was negligent or that the police department's decision to follow this general order led to Brown's vehicle being wrongfully towed, § 2-201 immunizes Chief Barto for his decisions in that regard. See e.g. Maguire v. Municipality of Old Orchard Beach, 783 F.Supp. 1475 (D. Me. 1992) (a police officer's conduct in impounding a person's vehicle and in seizing a plaintiff from his residence were "discretionary functions" for purposes of that state's tort claims act). Second, to the extent that Brown may be alleging in Count XIII that Defendants negligently enforced the law, Defendants are immune pursuant to § 2-202 of the Act, which provides that public employees are not liable for their negligent actions in executing or enforcing the law.

13

IX.   **CHIEF BARTO SHOULD BE DISMISSED AS A DEFENDANT FROM THIS CASE IN ITS ENTIRETY**

Chief Barto, who is sued only in his individual capacity, is only named as a defendant in two of the thirteen counts in the FAC:  Count I–Monell claim and Count VIII– State law negligence claim.  As explained above, Brown's negligence claim (Count VIII) should be dismissed under the Tort Immunity Act, leaving only Count I against Chief Barto.

In Count I, Plaintiff is suing Romeoville and Chief Barto for the allegedly improper policies adopted by the Romeoville police department.  While a municipality can be sued pursuant to Monell v. Dept. of Soc. Servs. Of the City of New York, 436 U.S. 658, 692, 98 S.Ct. 2018 (1978), for its allegedly improper policies, a police chief is not a proper defendant in a Monell claim; rather, only the municipality itself is a proper defendant in a Monell case. Cannon v. Burge, 2007 WL 2278265, at *6 (N.D. Ill..) (City of Chicago is only proper defendant in a Monell claim filed by arrestee).  Moreover, while Brown may have intended to sue Chief Barto in his official capacity for his actions taken as police chief, such claims would be duplicative of the claims already being asserted by Brown against Romeoville. See e.g. Kentucky v. Graham, 473 U.S. 159, 165-66, 105 S.Ct. 3099 (1985) (official capacity suits brought against individuals are simply "another way of pleading an action against an entity of which an officer is an agent."); Pond v. Board of Trustees, 2003 WL 23220730 (S.D. Ind.) (claim against police chief in his official capacity is redundant of claim against the entity that employs the chief and thus is properly dismissed).  Accordingly, Count I, like Count VIII, does not state a cause of action against Chief Barto and therefore Chief Barto should be dismissed from this litigation in its entirety.

## CONCLUSION

For all of the above reasons, Defendants respectfully request that this Court dismiss Counts IV-VII, IX, and XI-XIII of the First Amended Complaint. Defendants further ask that Defendants Barto and Showers be dismissed from this case in its entirety and that Brown's request for punitive damages against Romeoville be stricken.

S/JASON W. ROSE
Jason W. Rose, Bar Number 06208130
Michael D. Bersani, Bar Number 06200897
HERVAS, CONDON & BERSANI, P.C.
333 Pierce Road, Suite 195
Itasca, IL 60143-3156
Phone: 630-773-4774
Fax: 630-773-4851
jrose@hcbattorneys.com
mbersani@hcbattorneys.com

15

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| WILLIE BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 08 CV 1577 |
| | ) | |
| VILLAGE OF ROMEOVILLE, et al., | ) | Judge James F. Holderman |
| | ) | Magistrate Judge Martin C. Ashman |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on August 8, 2008, I electronically filed the foregoing **Memorandum of Law in Support of Defendants' Motion to Dismiss Counts IV-VII, IX and XI-XIII of Plaintiff's First Amended Complaint** with the Clerk of the Court using the CM/ECF system, and that I have mailed by United States Postal Service, certified mail, return receipt requested, the document to the following non CM/ECF system participant:

> Willie Brown, *Pro Se*
> 601 Theodore Avenue
> Joliet, IL 60435

> s/JASON W. ROSE
> Jason W. Rose, Attorney Bar Number, 06208130
> Michael D. Bersani, Bar Number 06200897
> Attorney for Defendants, Village of Romeoville,
> Daniel Zakula, James Sloup and Chief Andrew Barto
> HERVAS, CONDON & BERSANI, P.C.
> 333 Pierce Road, Suite 195
> Itasca, IL 60143-3156
> Phone:  630-773-4774
> Fax:  630-773-4851
> jrose@hcbattorneys.com
> mbersani@hcbattorneys.com