IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

WILLIE BROWN,                )
                             )
         Plaintiff,          )
                             )
    v.                       )    No. 08 C 1577
                             )
VILLAGE OF ROMEOVILLE, et al., )
                             )
         Defendants.         )

## MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

After being arrested for and acquitted of disorderly conduct, *pro se* plaintiff Willie Brown ("Brown") filed this multi-claim civil lawsuit against the Village of Romeoville ("Romeoville"), Chief of Police Andrew Barto ("Barto"), Officer Daniel Zakula ("Zakula"), Officer James Sloup ("Sloup"), and Records Clerk Karyn Showers.[1] Brown's remaining claims include a claim under 42 U.S.C. § 1983 and *Monell v. Dept. of Social Servs.*, 436 U.S. 658 (1978), against Romeoville and Chief Barto (Count I), federal and state false arrest claims and a state malicious prosecution claim against Romeoville, Officer Zakula, and Officer Sloup (Counts II, VIII, and X), improper search and seizure claims against Officer Zakula and Officer Sloup (Counts II and III), and a defamation claim against Officer Zakula (Count XII). Currently before the court is the remaining defendants' jointly filed Motion for Summary Judgment. (Dkt. No. 64.) For the reasons stated below, defendants' Motion for Summary Judgment is granted.

---

[1] Brown's allegations against Romeoville Records Clerk Karyn Showers were dismissed on January 16, 2009. (Dkt. No. 50.)

## BACKGROUND

The key background facts are simple and arise out of an occurrence on October 30, 2007, in Romeoville, Illinois, a community in Will County, southwest of Chicago.

Brown was arrested by Romeoville police officers Zakula and Sloup on the afternoon of October 30, 2007, for disorderly conduct, based on the sworn complaints of two witnesses, Mary Sanders ("Sanders") and her adult daughter, Amy Bova ("Bova"). Brown was then taken to the Romeoville Police Station and the car Brown had been driving was towed.

When the disorderly conduct case against Brown was called for trial on January 14, 2008, Brown appeared in court, but witnesses Sanders and Bova did not appear. The charges against Brown were dismissed.

Brown filed this lawsuit on March 18, 2008.

## UNDISPUTED FACTS

In the late afternoon of October 30, 2007, Brown was driving a blue 1991 Honda Civic wagon eastbound on Airport Road in Romeoville, Illinois. (Dkt. No. 66 ("Defs.' Stmt. Undisputed Facts") ¶ 7.) At the same time, Sanders was driving her white 2007 Chevy Malibu Maxx eastbound on Airport Road with Bova in the front passenger seat. (*Id.* ¶¶ 5-6.) Neither Sanders nor Bova had ever met Brown before encountering him on Airport Road that day. (*Id.* ¶ 10.) Although the details of their encounter are highly contested, it is undisputed that Brown became involved in some type of altercation with Sanders and Bova while driving. (Dkt. No. 27 ("1st Am. Compl.") ¶¶ 12-17.)

About the time Brown's and Sander's cars arrived at the west side of the intersection of Airport Road and Weber Road, a north-south road that runs through Romeoville, Officers Zakula

and Sloup arrived in their respective squad cars with police emergency lights activated. (Defs.' Stmt. Undisputed Facts ¶¶ 12-13.) The officers were responding to a 911 call complaining about a man who had been slamming on his brakes and trying to cause a crash. (*Id.* ¶ 11.)[2] Brown made a right turn from Airport Road onto Weber Road and headed southbound. (*Id.* ¶ 12.) In response to the police cars' lights, Brown pulled his car over on the west shoulder of Weber Road, just south of Airport Road. (*Id*. ¶¶ 12-13.) One of the officers approached Brown's vehicle and explained to Brown that two women were filing a complaint against him. (*Id.* ¶¶ 13-14; *see also* Dkt. No. 66-1, Ex. A ("Brown Dep.") 40:22-42:3.) When the officer asked Brown, "What went on?," Brown said, "Well, she stopped in front of me and I just got around her." (Brown Dep. 42:22-24.) At some point at the scene, Officer Zakula informed Brown that Sanders and Bova had accused Brown of exiting his vehicle and approaching them. (Defs.' Stmt. Undisputed Facts ¶ 15.) Officer Zakula took Brown's driver's license and then went to speak further with Sanders and Bova. (*Id.* ¶ 16.)

Brown cannot, and does not, dispute that Sanders and Bova told Officer Zakula that Brown swung his vehicle around Sanders' vehicle while putting his middle finger up, and then Brown stopped his vehicle directly in front of Sanders' vehicle. (*Id.* ¶ 17.) Sanders and Bova further told Officer Zakula that Brown then exited his vehicle and called Sanders and Bova "fucking bitches"

---

[2] Brown disputes this fact on the grounds that no tape of the 911 call has been produced by the defendants. However, Sanders and Bova both testified at their depositions that Bova called 911 in response to Brown's actions (Dkt. No. 66-6, Ex. E ("Sanders Dep.") 19:10-15; Dkt. No. 66-7, Ex. F ("Bova Dep.") 20:13-16), and Officer Zakula and Officer Sloup both attested that they received word of the 911 call through the dispatcher (Dkt. No. 66-8, Ex. G ("Zakula Aff.") ¶ 2; Dkt. No. 66-9, Ex. H ("Sloup Aff.") ¶ 2). The defendants have further explained that the 911 tape was erased ("taped over") after 30 days as part of the routine course of business. (Dkt. No. 77 ("Pl.'s Resp."), Ex. 1 at 1.) Brown has produced no evidence that would cause the court to question the defendants' explanation and, under Federal Rule of Evidence 1004, other evidence of the contents of a recording is admissible.

as he approached Sanders' vehicle. (*Id.* ¶ 18.) Bova was shaking as she spoke with Officer Zakula. (*Id.* ¶ 20.) Bova and Sanders also told Officer Zakula that they were fearful for their safety. (*Id.* ¶ 19.) Sanders and Bova each signed a sworn complaint against Brown for disorderly conduct. (*Id.* ¶ 24; *see also* Dkt. No. 66-10, Ex. I ("Complaint").) Officers Zakula and Sloup returned to Brown's vehicle, and placed Brown under arrest for disorderly conduct. (*Id.* ¶¶ 26-27.)

Following Brown's arrest, Officer Sloup searched the interior of Brown's vehicle. (*Id.* ¶ 31.) Officer Zakula advised Brown that his car, which was parked on the western shoulder of Weber Road in a construction zone, was going to be towed. (*Id.* ¶ 30.) Brown asked the officers whether his wife could come to the scene to pick up Brown's vehicle, but Officer Zakula denied his request, and "Heartbreak Towing" towed Brown's vehicle from the scene. (*Id.* ¶¶ 31-32.) Officer Zakula placed Brown in Officer Zakula's squad car and drove to the Romeoville police station, where Brown was told that he would be released upon posting a $100 bond. (*Id.* ¶ 33.) Brown was released from police custody after Brown's wife came to the station and posted Brown's bond. (*Id.* ¶ 35.)

Brown's car was then released from its tow holding after Brown paid a $100 towing fee and a $300 administrative fee. (*Id.* ¶ 40.) Brown requested a hearing regarding the towing of his vehicle. (*Id.* ¶ 42.) Lieutenant Mark Turvey presided over the hearing and concluded that towing Brown's vehicle was proper and that the $300 administrative fee would stand. (*Id.* ¶ 42.)

Officer Zakula wrote an incident/arrest report about the events that transpired surrounding Brown's arrest. (*Id.* ¶ 36; *see also* Dkt. No. 66-12, Ex. K ("Zakula Report").) In the report, Officer Zakula recounted that he was dispatched to the scene in reference to a "road rage incident in progress" and that the 911 dispatcher advised Officer Zakula that the complainants had reported that

Brown had "been slamming his brakes trying to cause a crash." (*Id.*) The report described Bova as "shaking in fear" when Officer Zakula arrived at the scene. (*Id.*) Additionally, the report said that Sanders and Bova told Officer Zakula at the scene that Brown followed closely behind their vehicle, and he pulled around their vehicle in a no-passing zone while giving the women "the finger." (*Id.*) Furthermore, the report stated that Sanders and Bova told Officer Zakula that Brown stopped his vehicle abruptly in the roadway and exited his vehicle. (*Id.*) The report then said that Sanders and Bova told Officer Zakula that, after exiting his vehicle, Brown walked towards Sanders and Bova and called them "fucking bitches." (*Id.* ¶ 37.) The report also indicated that Sanders and Bova told Officer Zakula that Brown returned to his vehicle and subsequently slammed on his brakes several times while the cars approached Weber Road. (*Id.*) Brown does not know if anyone has seen Officer Zakula's police report, and Brown does not know anyone who thinks less of him because of Officer Zakula's report. (*Id.* ¶ 38–39.)

On January 14, 2008, Brown appeared for his trial. (*Id.* ¶ 46.) Sanders and Bova did not appear at Brown's January 14, 2008 hearing, nor did Officer Zakula and Officer Sloup appear at the hearing. (*Id.*; *see also* Pl.'s Resp. at 25-40 ("Pl.'s Local R. 56.1(b)(3) Resp." ¶ 46).) Because neither the witnesses nor the officers were present for the hearing, the judge dismissed the disorderly conduct charges against Brown. (*Id.*) Consequently, Brown was given back his $100 bond, but not the $400 he previously paid in connection with the towing of his vehicle. (*Id.* ¶ 47.)

## **LEGAL STANDARD**

Summary judgment is appropriate only where the record shows "that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In ruling on a motion for

5

summary judgment, this court must consider the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. Fed. R. Civ. P. 56(c); *Woodruff v. Mason*, 542 F.3d 545, 550 (7th Cir. 2008). Once a properly supported motion for summary judgment is made, the nonmoving party cannot rest on its pleadings, but must affirmatively demonstrate by specific factual evidence that there is a genuine issue of material fact requiring trial. *Celotex*, 477 U.S. at 324; *Keri v. Bd. of Tr. of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006). Conclusory allegations, "if not supported by the record, will not preclude summary judgment." *Keri*, 458 F.3d at 628 (citing *Haywood v. N. Am. Van Lines, Inc.,* 121 F.3d 1066, 1071 (7th Cir. 1997)). Furthermore, the failure to prove an essential element of the nonmoving party's case renders all other facts immaterial. *Celotex*, 477 U.S. at 322–23.

## ANALYSIS

**I. Count I - Brown's *Monell* Claim against Romeoville and Chief Barto**

Romeoville and Chief Barto assert that if the court grants the defendants' summary judgment as to Brown's other claims, then the court must also grant summary judgment in favor of Romeoville and Chief Barto as to Brown's *Monell* claim. The court agrees.

A claim under *Monell v. Dept. of Social Services*, 436 U.S. 658, 690-91 (1978), must be dismissed in the absence of an underlying constitutional violation. *Houskins v. Sheahan*, 549 F.3d 480, 494 (7th Cir. 2008). Therefore, the court will address Brown's other remaining claims and counts first before considering the *Monell* claim.

**II. Count II - False Arrest Claim Under § 1983**

Romeoville, Officer Zakula, and Officer Sloup argue that they are entitled to summary judgment on Brown's federal false arrest claim under 42 U.S.C. §1983 for two reasons: (1) Officers

Zakula and Sloup had probable cause to arrest Brown for disorderly conduct; and (2) Officers Zakula and Sloup are entitled to qualified immunity. The court agrees that Officer Zakula and Officer Sloup had probable cause to arrest[3] Brown, so the court does not need to address the issue of qualified immunity. In turn, Brown argues that: (1) whether Officers Zakula and Sloup had probable cause to arrest Brown is a matter of credibility; and (2) the officers were not reasonable in arresting Brown for disorderly conduct because Brown did not "breach the peace." The court disagrees with Brown on this point.

In order to succeed on a false arrest claim under § 1983, an arrestee must show that his or her arrest was made "without probable cause." *Brooks v. City of Chicago*, 564 F.3d 830, 832 (7th Cir. 2009). Therefore, a false arrest claim under § 1983 is barred if a police officer making the arrest had probable cause. *McBride v. Grice*, 526 F.3d 703, 707 (7th Cir. 2009).

---

[3] In Count II of his First Amended Complaint (Dkt. No. 27), Brown further alleges that Officers Zakula and Sloup's actions constituted an unconstitutional stop, detention, and personal search. (1st Am. Compl. ¶¶ 75-76.) The parties have not addressed these claims in any substantive manner, choosing instead to focus their attention on the false arrest claim set forth in Count II. Brown does assert in passing that "it was unreasonable for defendants Zakula and Sloup to believe that Plaintiff Brown had breached the peace *when they curbed his car*," (Pl.'s Mem. at 6 (emphasis added)), but he does not develop this argument. (*Compare id.* at 3-4 ("the existence of probable cause for arresting and charging Plaintiff Brown for disorderly conduct is *the* material fact at issue in this case") (emphasis in original).) "Police may initiate an investigatory stop when the officer has reasonable suspicion that a crime may be afoot." *United States v. Hampton*, 585 F.3d 1033, 1038 (7th Cir. 2009). Reasonable suspicion exists when a caller to 911 reports an ongoing emergency, gives the operator "enough information to identify [the perpetrator] and his location," and this information is conveyed to the officer conducting the stop. *Id.* at 1039 (quoting *United States v. Hicks*, 531 F.3d 555, 560 (7th Cir. 2008). In this case, Officer Zakula has attested that the dispatcher reported a "road rage incident" that was "in progress" at Weber and Airport Roads, where a man was allegedly "slamming on his brakes trying to cause a crash." (Zakula Aff. ¶ 2.) Officer Zakula was given a description of the alleged offender's vehicle, as well as the alleged victim's vehicle. (*Id.* ¶ 3.) No more is required for Officer Zakula to have a reasonable suspicion sufficient to initiate an investigatory stop of Brown's vehicle.

To have probable cause to make an arrest, a police officer must "reasonably believe, in light of the facts and circumstances within their knowledge at the time of the arrest, that the suspect had committed or was committing an offense." *Payne v. Pauley*, 337 F.3d 767, 776 (7th Cir. 2003); *see also Beck v. Ohio*, 379 U.S. 89, 91 (1964). When determining whether an officer's belief was reasonable, the court must look at what the officer knew at the time of arrest, not whether the information known to the officer was true. *Smith v. Lanz*, 321 F.3d 680, 684 (7th Cir. 2003).

A police officer has probable cause to make an arrest when an eyewitness has provided the officer with information indicating that a person has committed a crime. *Jenkins v. Keating*, 147 F.3d 577, 585 (7th Cir. 1998). The question is whether it was reasonable for the police to believe that the eyewitness was telling the truth, not whether the suspect was ultimately found guilty. *Tangwall v. Stuckey,* 135 F.3d 510, 519 (7th Cir. 1998). Unless the witness's complaint would make a reasonable officer suspicious, police are under no duty to investigate further before making an arrest. *Beauchamp v. City of Noblesville*, 320 F.3d 733, 743 (7th Cir. 2003). Furthermore, it is the plaintiff's burden to prove the unreasonableness of the officer's belief in the witness's veracity. *Tangwall*, 135 F.3d at 519.

Brown asserts that a jury must determine the credibility of Bova and Sanders' testimony in this case. The court fully appreciates that it cannot make credibility determinations at this summary judgment stage, *see Washington v. Haupert*, 481 F.3d 543, 550 (7th Cir. 2007) (citing *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003)), and must view the evidence in the light most favorable to Brown, the non-moving party. In *Washington*, cited by Brown, the Seventh Circuit affirmed a denial of summary judgment on a false arrest claim in part because the police officers and the accused presented two vastly different versions of the facts. *Washington*, 481 F.3d at 550-51.

Importantly, the Seventh Circuit in *Washington* emphasized that there were no witnesses offering testimony to support the officer's version of facts. *Id.* at 548. The court further noted that a witness's sworn testimony may provide sufficient support for an officer's decision to make an arrest. *Id.* (citing *Beauchamp*, 320 F.3d at 743 ("The complaint of a single witness or putative victim alone generally is sufficient to establish probable cause to arrest unless the complaint would lead a reasonable officer to be suspicious.")); *see also Woods v. City of Chicago*, 234 F.3d 979, 987 (7th Cir. 2000); *Guzel v. Hiller*, 223 F.3d 518, 519-20 (7th Cir. 2000); *Tangwall*, 135 F.3d at 516; *Gerald M. v. Conneely*, 858 F.2d 378, 381 (7th Cir. 1988); *Gramenos*, 797 F.2d at 439. In this case, Officer Zakula and Officer Sloup's decision was supported by the sworn testimony of two witnesses who signed a complaint. The defendant officers were entitled to rely on this testimony in arresting Brown, as it provided probable cause for the officers to believe that Brown had committed the offense of disorderly conduct. Whether Brown actually committed the offense of disorderly conduct is not a question before this court, therefore the court need not determine whether Sanders and Bova are credible on this point.

A person commits disorderly conduct under Chapter 134.01(B)(1) of the Romeoville Code of Ordinances if he or she "knowingly does any act in such unreasonable manner as to alarm or disturb another and to provoke a breach of the peace."[4] The Illinois Supreme Court has determined that the offense of disorderly conduct is intended to protect people against unjustified mental or physical harassment. *People v. Davis*, 413 N.E.2d 413, 415 (Ill. 1980). In *Davis*, the court further noted that the defendant need not perform the act in public in order to breach the peace. *Id.*

---

[4] The Romeoville ordinance's definition of "disorderly conduct" is identical to the Illinois Criminal Code's definition. *See* 720 ILCS 5/26-1 ("A person commits disorderly conduct when he knowingly: (1) Does any act in such unreasonable manner as to alarm or disturb another and to provoke a breach of the peace. . . .").

In this case, it is undisputed that Sanders and Bova provided Officers Zakula and Sloup sworn testimony that Brown exited his vehicle and used profanity toward Sanders and Bova as he approached them. (Pl.'s Local R. 56.1(b)(3) Resp. ¶¶ 17-18.) Furthermore, Officer Zakula observed Bova shaking as she and Sanders spoke with him regarding the incident, and Bova and Sanders told Officer Zakula that they were fearful for their safety. (Defs.' Stmt. Undisputed Facts ¶¶ 19–20.) Therefore, Officers Zakula and Sloup had probable cause to arrest Brown based on the information that Sanders and Bova had provided.

Brown makes several arguments in an attempt to show that the acts Bova and Sanders accused him of performing did not constitute disorderly conduct. First, Brown asserts that profane language is not enough to constitute a breach of the peace. (Dkt. No. 77 at 3-24 ("Pl.'s Mem.") at 10-12.) However, Brown ignores the fact that Bova and Sanders also told Officer Zakula that Brown stopped his vehicle in front of Sanders, got out of his vehicle, and approached Sanders and Bova while using the profane language. Brown's reported actions, along with the profane language, are sufficient to establish probable cause that Brown committed disorderly conduct.

Next, Brown asserts that Officers Zakula and Sloup did not have probable cause to arrest him for disorderly conduct because Brown's actions did not "directly and intentionally" cause a disturbance. (Pl.'s Mem. at 12.) Brown cites to *People v. Gentry*, 363 N.E.2d 146, 150 (Ill. App. Ct. 1977) to support his argument. However, *Gentry* is wholly distinguishable from this matter. In *Gentry*, the plaintiff was arrested for disorderly conduct after he yelled profanities at a police officer, causing a crowd to gather. *Gentry*, 363 N.E.2d at 148. The court held that arguing loudly with a police officer does not constitute a breach of the peace. *Id.* at 150. Conversely, in this case, Bova and Sanders told Officers Zakula and Sloup that Brown not only was profane in his remarks to them,

but, as stated above, Brown's profanity occurred after he stopped his car in front of Sanders' car, got out of his car, and approached Sanders and Bova. Additionally, Brown's conduct in this case was aimed at civilians, not a police officer. These additional factors escalated Brown's behavior, such that it was reasonable for Officer Zakula and Officer Sloup to believe Brown had engaged in disorderly conduct.

Finally, Brown contends that he could not have committed disorderly conduct because Brown "did not create a crowd." (Pl.'s Mem. at 12.) However, the existence of a crowd is irrelevant to a finding of whether a person has breached the peace. *See Davis*, 413 N.E.2d at 415 ("A breach of the peace may as easily occur between two persons fighting in a deserted alleyway as it can on a crowded public street."). Moreover, Brown's conduct, as sworn to by Sanders and Bova, happened on a public street.

For the reasons set forth above, this court finds as a matter of law Brown cannot succeed on his federal false arrest claim against the defendant officers. Additionally, although Brown has also alleged Count II against Romeoville, this claim is redundant of the *Monell* claim asserted in Count I against Romeoville. Consequently, the motion by Romeoville, Officer Zakula, and Officer Sloup for summary judgment on Count II is granted.

### III. Count III - Claim of Improper Search and Seizure

Officers Zakula and Sloup next argue that they should be granted summary judgment as to Brown's Count III improper search and seizure claim because, at the time of the arrest, the officers were entitled to search Brown's vehicle incident to a lawful arrest and tow Brown's vehicle on public safety grounds. The court agrees.

11

Before April 2009, the United States Supreme Court interpreted the Fourth Amendment to categorically permit an officer to search the passenger compartment of a vehicle incident to the lawful arrest of a recent occupant of that vehicle. *Thorton v. United States*, 541 U.S. 615, 620-21 (2004); *New York v. Belton*, 453 U.S. 454, 460 (1981). The law in this regard changed in April 2009. In *Arizona v. Gant*, 129 S. Ct. 1710, 1721 (2009), the Court held that, incident to a lawful arrest, an officer may only "conduct a vehicle search when an arrestee is within reaching distance of the vehicle or it is reasonable to believe that the vehicle contains evidence of the offense of the arrest." Nonetheless, as relevant to this case, the Supreme Court specifically noted that "because a broad reading of *Belton* has been widely accepted, the doctrine of qualified immunity will shield officers from liability for searches conducted in reasonable reliance on that understanding." *Gant*, 129 S. Ct. at 1723 n.11. This court has already determined that Officer Zakula and Officer Sloup had probable cause to lawfully arrest Brown for disorderly conduct. Relying on the broad interpretation of *Belton* that prevailed at the time of Brown's arrest, on October 30, 2007, Officer Sloup lawfully searched Brown's vehicle incident to that arrest. Thus, Officers Zakula and Sloup are shielded from liability for their search of Brown's vehicle under the doctrine of qualified immunity.

Brown also asserts that the towing of his car constitutes an unlawful seizure under the Fourth Amendment. The impoundment of a vehicle by the police is permissible if the impoundment is in furtherance of public safety or "community caretaking functions." *United States v. Duguay*, 93 F.3d 346, 352 (7th Cir. 1996). Police may impound vehicles that violate parking ordinances or vehicles that "jeopardize both the public safety and the efficient movement of vehicular traffic." *Id.* Furthermore, law enforcement officers need not necessarily give the arrestee the opportunity to

make alternative arrangements to avoid impoundment. *Colorado v. Bertine*, 479 U.S. 367, 373-74 (1987). Brown's vehicle was parked on the western shoulder of Weber Road, which at the time was a construction zone. (Defs.' Stmt. Undisputed Facts ¶ 30.) Therefore, Officers Zakula and Sloup could permissibly tow Brown's vehicle, and they did not have to accept Brown's request to have his wife pick up the car. *See Duguay*, 93 F.3d at 354 n.2 ("Impoundments by Illinois police have been affirmed in many cases where the arrestee could not provide for the speedy and efficient removal of the car, such as where the driver is the sole occupant and is legitimately arrested.") Consequently, Officer Zakula and Officer Sloup's motion for summary judgment on Count III is granted.

## IV. Count VIII - Illinois False Arrest Claim

Romeoville, Officer Zakula, and Officer Sloup assert that Brown's false arrest claim brought under Illinois state law fails because Officers Zakula and Sloup had probable cause to arrest Brown for disorderly conduct. The court agrees.

False arrest claims under Illinois law involve essentially the same elements as false arrest under 42 U.S.C. § 1983. To establish a false arrest claim under Illinois law, a plaintiff must prove that: (1) the defendant arrested the plaintiff and (2) the defendant acted without probable cause. *Meerbrey v. Marshall Field & Co.*, 564 N.E.2d 1222, 1231 (Ill. 1990). Courts evaluate probable cause "not on the facts as an omniscient observer would perceive them but on the facts as they would have appeared to a reasonable person *in the position of the arresting officer*—seeing what he saw, hearing what he heard." *Mahoney v. Kersery*, 976 F.2d 1054, 1057 (7th Cir. 1992) (emphasis in original).

As discussed above, Officer Zakula and Officer Sloup had probable cause to arrest Brown for disorderly conduct. Consequently, Brown cannot establish a claim for false arrest under Illinois

law. The claim against Romeoville also fails because a public entity cannot be liable for an injury resulting from the act of its employee when the entity's employee is not liable. 745 ILCS 10/2-109. Therefore, Romeoville, Officer Zakula, and Officer Sloup's motion for summary judgment on Count VIII is granted.

## V. Count X - Malicious Prosecution Claim

Romeoville, Officer Zakula, and Officer Sloup assert that Brown cannot establish a prima facie case for malicious prosecution. The court agrees, because probable cause existed to arrest Brown for disorderly conduct.

> To establish a malicious prosecution claim under Illinois law, a plaintiff must prove: (1) the commencement or continuation of an original criminal or civil judicial proceedings by the defendant, (2) the termination of the proceedings on the merits in favor of the plaintiff, (3) the absence of probable cause for such a proceeding, (4) the presence of malice on the part of the defendant, and (5) damages resulting to the plaintiff."

*Turner v. City of Chicago*, 415 N.E.2d 481, 484 (Ill. App. Ct. 1980).

This court has found that Officers Zakula and Sloup had probable cause to arrest Brown for disorderly conduct. Therefore, Brown's malicious prosecution claim against the defendant officers fails as a matter of law. Once again, the claim fails against Romeoville because a public entity cannot be liable for an injury resulting from the act of its employee when the entity's employee is not found liable. 745 ILCS 10/2-109. Consequently, Romeoville, Officer Zakula, and Officer Sloup's motion for summary judgment on Count X is granted.

## VI. Count XII - Defamation Claim

Officer Zakula argues that summary judgment should be granted as to Brown's defamation claim for three reasons: (1) the factual statements in the police report were not false; (2) police reports are entitled to an absolute privilege; and (3) the police report was not defamatory per se.

14

Brown fails to respond to any of the arguments presented by Officer Zakula. Based upon the undisputed material facts, the court finds that Brown cannot establish a prima facie case for defamation.

To establish a claim for defamation under Illinois law, a plaintiff must show: (1) that a defendant has made a false statement about the plaintiff; (2) that there was an unprivileged publication to a third party by the defendant; and (3) the publication damaged the plaintiff. *Krasinski v. United Parcel Service, Inc.*, 530 N.E.2d 468, 471 (Ill. 1988). Putting aside the issues of falsity and privilege, Brown has presented no evidence that the police report was published to a third party. In fact, Brown admits that he does not know of anyone who has seen Officer Zakula's police report. (Pl.'s Local R. 56.1(b)(3) Resp. ¶ 38.) Accordingly, Officer Zakula's motion for summary judgment on Count XII is granted.

## VII.   Count One - *Monell* Claim

Brown argues in his sur-reply that the *Monell* claim in this case was bifurcated for purposes of discovery, and is therefore not properly before the court at this point in the litigation. (Dkt. No. 84 at 1-2; *see also* Dkt. No. 49 (staying *Monell* discovery).) However, because summary judgment has been granted in favor of the defendant officers on each of Brown's § 1983 claims, Brown's *Monell* claim necessarily fails as a matter of law. *See Marion v. City of Corydon, Ind.*, 559 F.3d 700, 706 (7th Cir. 2009) ("[M]unicipalities or counties cannot be liable under § 1983 absent an underlying constitutional violation by one or more of their officers."). Because further briefing on this issue would be futile, Romeoville and Chief Barto's motion for summary judgment on Count I is granted.

## CONCLUSION

For the foregoing reasons, the remaining defendants' jointly filed Motion for Summary Judgment (Dkt. No. 64) is granted. Judgment is entered in favor of defendants the Village of Romeoville, Chief of Police Andrew Barto, Officer Daniel Zakula, and Officer James Sloup on all remaining claims and this case is terminated.

ENTER:

*James F. Holderman*
JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: February 1, 2010